IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Salim Said,                                         )
     Detainee,                                   )
     Guantanamo Bay Naval Station                )
     Guantanamo Bay, Cuba;                       )
                                                 )
Anwar Handan Al Shimmiri,                           )
     Detainee,                                   )
     Guantanamo Bay Naval Station                )
     Guantanamo Bay, Cuba   ;                    )
                                                 )
Suliman Honaheem Alowaidah,                         )
     as the Next Friend of Anwar Handan          )
     Al Shimmiri                                 )
                                                 )
Saad Al Qahtaani,                                   )
     Detainee,                                   )
     Guantanamo Bay Naval Station                )       PETITION FOR WRIT
     Guantanamo Bay, Cuba;                       )       OF HABEAS CORPUS
                                                 )
Sami Muhyideen,                                     )       No. _____
     as the Next Friend of Saad Al Qahtaani;     )
                                                 )
Bandar Al Jaabir,                                   )
     Detainee,                                   )
     Guantanamo Bay Naval Station                )
     Guantanamo Bay, Cuba;                       )
                                                 )
Jamal Kiyemba,                                      )
     as the Next Friend of Bandar Al Jaabir,     )
                                                 )
Mohammed Zahrani                                    )
     Detainee,                                   )
     Guantanamo Bay Naval Station                )
     Guantanamo Bay, Cuba                        )
                                                 )
Omar Deghayes,                                      )
     as the Next Friend of Mohammed              )
     Zahrani,                                    )
                                                 )
     *Petitioners*,                              )
                                                 )
v.                                                  )
                                                 )
GEORGE W. BUSH,                                     )

President of the United States )
The White House )
1600 Pennsylvania Ave., N.W. )
Washington, D.C. 20500; )
)
DONALD RUMSFELD, )
    Secretary, United States )
    Department of Defense )
    1000 Defense Pentagon )
    Washington, D.C. 20301-1000; )
)
ARMY BRIG. GEN. JAY HOOD, )
    Commander, Joint Task Force - GTMO )
    JTF-GTMO )
    APO AE 09360; and )
)
ARMY COL. MIKE BUMGARNER, )
    Commander, Joint Detention )
       Operations Group, JTF - GTMO )
    JTF-GTMO )
    APO AE 09360, )
)
*Respondents.* )

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioners Salim Said, Anwar Handan Al Shimmiri, Saad Al Qahtaani, Bandar Al Jaabir, and Mohammed Zahrani ("Petitioners") seek the Great Writ. Citizens of Saudi Arabia, Petitioners Salim Said acts on his own behalf, and Petitioners Anwar Handan Al Shimmiri, Saad Al Qahtaani, Bandar Al Jaabir, and Mohammed Zahrani act on their own behalf and through their Next Friends: Suliman Honaheem Alowaidah, as the Next Friend of Anwar Handan Al Shimmiri; Sami Muhyideen, as the Next Friend of Saad Al Qahtaani; Jamal Kiyemba, as the Next Friend of Bandar Al Jaabir; and Omar Deghayes, as the Next Friend of Mohammed Zahrani. Petitioners are civilians wrongly classified as "enemy combatants" by the President of the United States, and are being held virtually *incommunicado* in military custody at the United States Naval Station in Guantánamo Bay, Cuba ("Guantánamo"). Their detention is without lawful basis, without charge, and without access to counsel or any fair process by which they

might challenge their detention. Petitioners are being held under color and authority of the Executive, in violation of the Constitution, laws, and treaties of the United States, in violation of the fundamental due process principles of the common law, and in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioners or to establish in this Court a lawful basis for Petitioners' detention. This Court should also order injunctive and declaratory relief.

## I.
## JURISDICTION

1.      Petitioners bring this action under 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3), and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth and Sixth Amendments to the United States Constitution. Because they seek declaratory relief, Petitioners also rely upon Fed. R. Civ. P. 57.

2.      This Court is empowered to declare the rights and other legal relations of the parties in this matter by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## PARTIES

3.      Petitioner Salim Said is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo. Petitioner desires counsel to challenge the legality of his detention. *See* Exhibit 1, Declaration of Gitanjali S. Gutierrez, at ¶2.

3

4.    Anwar Handan Al Shimmiri is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo.  Upon information and belief, Petitioner desires undersigned counsel to file this petition directly on his behalf.  *See* Exhibit 2, Declaration of Tina Monshipour Foster.

5.    Petitioner Suliman Honaheem Alowaidah is Petitioner Al Shimmiri's Next Friend.  He is a Saudi Arabian citizen and has known Petitioner Al Shimmiri and his family for twenty years.  *See* Exhibit 2, Declaration of Tina Monshipour Foster.  Because Petitioner Al Shimmiri has been denied access to legal counsel and to the courts of the United States, Petitioner Alowaidah acts as his Next Friend.  *Id.*  Upon information and belief, on his own and through the help of friends, Petitioner Al Shimmiri has tried repeatedly to contact his family and speak to authorities about his condition and unlawful custody. Petitioner Alowaidah acts as Next Friend in order to assist Petitioner Al Shimmiri in seeking redress for these grievances.

6.    Saad Al Qahtaani is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo.   Upon information and belief, Petitioner desires undersigned counsel to file this petition directly on his behalf. *See* Exhibit 1, Declaration of Gitanjali S. Gutierrez, at ¶3.

7.    Petitioner Sami Muhyideen is Petitioner Al Qahtaani's Next Friend and a detainee familiar with Petitioner Al Qahtaani during their incarceration in Guantánamo.  *See* Exhibit 1, Declaration of Gitanjali S. Gutierrez, at ¶3.  Petitioner Muhyideen is a Sudanese citizen.  Because his friend and co-detainee has been denied access to legal counsel and to the courts of the United States, Petitioner Muhyideen acts as his Next Friend.  *Id.* Upon information and belief, on his own and through the help of friends, Petitioner Al Qahtaani has tried repeatedly to contact his family and speak to authorities

about his condition and unlawful custody. Petitioner Muhyideen acts as Next Friend in order to assist Petitioner Al Qahtaani in seeking redress for these grievances.

8.    Bandar Al Jaabir is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo. Upon information and belief, Petitioner desires undersigned counsel to file this petition directly on his behalf. *See* Exhibit 1, Declaration of Gitanjali S. Gutierrez, at ¶4.

9.    Petitioner Jamal Kiyemba is Petitioner Al Jaabir's Next Friend and a detainee familiar with Petitioner Al Jaabir during their incarceration in Guantánamo. *See* Exhibit 1, Declaration of Gitanjali S. Gutierrez, at ¶4. Petitioner Kiyemba is resident of the United Kingdom. *Id.* Because his friend and co-detainee has been denied access to legal counsel and to the courts of the United States, Petitioner Kiyemba acts as his Next Friend. *Id.* Upon information and belief, on his own and through the help of friends, Petitioner Al Jaabir has tried repeatedly to contact his family and speak to authorities about his condition and unlawful custody. Petitioner Kiyemba acts as Next Friend in order to assist Petitioner Al Jaabir in seeking redress for these grievances.

10.   Mohammed Zahrani is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo. Upon information and belief, Petitioner desires undersigned counsel to file this petition directly on his behalf. *See* Exhibit 1, Declaration of Gitanjali S. Gutierrez, at ¶5.

11.   Petitioner Omar Deghayes is Petitioner Zahrani's Next Friend and a detainee familiar with Petitioner Zahrani during their incarceration in Guantánamo. *See* Exhibit 1, Declaration of Gitanjali S. Gutierrez, at ¶5. Petitioner Deghayes is resident of the United Kingdom. *Id.* Because his friend and co-detainee has been denied access to legal counsel and to the courts of the United States, Petitioner Deghayes acts as his Next

Friend. *Id.* Upon information and belief, on his own and through the help of friends, Petitioner Zahrani has tried repeatedly to contact his family and speak to authorities about his condition and unlawful custody. Petitioner Deghayes acts as Next Friend in order to assist Petitioner Zahrani in seeking redress for these grievances.

12. Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioners are being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Petitioners' unlawful detention and is sued in his official capacity.

13. Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war or, alternatively, pursuant to the Executive Order, Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioners. He is sued in his official capacity.

14. Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioners and is sued in his official capacity.

15. Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioners are presently held. He is the immediate custodian responsible for Petitioners' detention and is sued in his official capacity.

16.    Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.
### STATEMENT OF FACTS

17.    Upon information and belief, Petitioners have not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind under any definition adopted by the government in any civil or military proceeding.

18.    Upon information and belief, Petitioners are not, nor have they ever been an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 524 U.S. __, 124 S. Ct. 2633, 2639 (plurality) (2004).

19.    Petitioners seek to enforce their right to a judicial determination by an appropriate and lawful authority as to whether there is a lawful and factual basis for Respondents' determination that they are either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

20.    Upon information and belief, at the time of their seizures and detention, Petitioners were not members of the Taliban Government's armed forces or Al Qaeda. Prior to their detention, they did not commit any violent act against any American person or property. They had no involvement, direct or indirect, in the terrorist attacks on the United States

7

on September 11, 2001, the ensuing international armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda. They remain incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

21. Petitioners have not been afforded any procedures that would satisfy their rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

22. Upon information and belief, Petitioners desire to pursue in United States courts every available legal challenge to the lawfulness of their detention.

### The Joint Resolution

23. In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

24. As Petitioners did not participate in the armed conflict at any point in time, they are not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or the Joint Resolution.

**The Executive Order**

25.     On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

  i.     is or was a member of the organization known as al Qaeda;
  ii.    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
  iii.   has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001).  President Bush must make this determination in writing.  The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

26.     The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  It establishes no standards governing the exercise of his discretion.  Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face.  The Executive Order authorizes detainees to be confined indefinitely without charges.  It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor rights to notice of consular protection or to consular access at the detainee's request.  It provides no right to appear before a neutral tribunal to review the basis for or the legality of a detainee's continued detention and contains no provision for recourse to an Article III court.  In fact, the Executive Order expressly bars review by any court.  The Executive Order authorizes indefinite and

unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

27.     The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioners was made by Respondents in the United States and in this judicial district, the decision to detain Petitioners at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioners was, and is, being made by Respondents in the United States and in this judicial district.

28.     Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioners are subject to the Executive Order.

29.     Petitioners are not properly subject to the Executive Order.

30.     Petitioners have not been, and are not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, and/or the laws and usages of war in that Petitioners have been denied the process due to them under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, and international law.

### Guantánamo Bay Naval Station

31.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba.  In April 2002, prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo.  Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

32.  Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 524 U.S. __, 124 S. Ct. 2686, 2698 (June 28, 2004).

33.  On a date unknown to counsel, but known to Respondents, the United States military transferred Petitioners to Guantánamo, where they have been held ever since, in the exclusive custody and control of Respondents.

**The Conditions of Detention at Guantánamo**

34.  Since gaining control of Petitioners, the United States military has held them virtually *incommunicado.*

35.  Upon information and belief, Petitioners have been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though they have not been charged with an offense and have not been notified of any pending or contemplated charges. They have not appeared before a lawful military or civilian tribunal, and have not been provided access to counsel or the means to contact and secure counsel. They have not been adequately informed of their rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioners should not be informed of these rights. As a result, Petitioners lack any ability to protect or to vindicate their rights under domestic and international law.

36.  Upon information and belief, Petitioners have been forced to provide involuntary statements to Respondents' agents at Guantanamo.

11

37.    Upon information and belief, Petitioners have been held under conditions that violate their constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.,* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); Physicians for Human Rights, "Break Them Down: Systematic Use of Psychological Torture by US Forces," Ch.3 (2005); United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

38.    Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, forced nudity and humiliation, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See e.g.,* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism:*

*Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

39.  In a confidential report to the United States government, the ICRC charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4.

40.  Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving beatings, temperature extremes, dogs, prolonged isolation, and loud music. *See, e.g.,* Carol D. Leonnig, "Guantanamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land," *Wash. Post*, Aug. 13, 2005, at A18; Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); Amnesty International, *Guantánamo: An Icon of Lawlessness*, Jan. 6, 2005, at 3-5; Neil A. Lewis, "Fresh Details Emerge on Harsh

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19.

41. In fact, many of the egregious interrogation techniques used in the Abu Ghraib detention center and other detention facilities in Iraq—such as the use of aggressive dogs to intimidate detainees, sexual humiliation, stress positions, and sensory deprivation—were pioneered at Guantánamo. *See* Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo; Testimony Further Links Procedures at 2 Facilities," *Wash. Post*, July 27, 2005, at A14; *and* Josh White, "Abu Ghraib Tactics Were First Used at Guantanamo," *Wash. Post*, July 14, 2005 at A1.

42. The unlawful interrogation techniques used by Respondents at Guantánamo include not only direct physical and psychological abuse but also impermissible conduct intended to undermine the detainees' due process rights, such as representing to detainees that government agents are their habeas lawyers for the express purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

43. In addition, military defense lawyers have been instructed to limit their representation of detainees in a manner that would operate to the detriment of their clients in violation of due process requirements. *See* David Johnston & Neil Lewis, "Lawyer Says Military Tried To Coerce Detainee's Plea," *NY Times*, June 16, 2005, at A25 (Late Ed.).

44.    Respondents, acting individually or through their agents, have stated that the humanitarian limitations which normally apply to the U.S. military's use of coercive interrogation techniques under the auspices of the Department of Defense, *do not apply* to interrogations conducted by CIA agents or other specially-designated government officers assigned to such work. *See* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 27-43, Ch. 5, AMR 51/063/2005 (13 May 2005); Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

45.    In published statements, President Bush and Secretary Rumsfeld, and the predecessors of Hood and Bumgarner, respectively, Lehnert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.,* Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held 'We have to look at Camp X-ray as a work in progress [...]' Lehnert told CNN.    Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards.'"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002 ("As the Bush Administration nears completion of new rules for conducting military trials of

foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

46. According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited August 24, 2005).

47. Counsel for Respondents have also consistently maintained that the United States may hold the detained Petitioners under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Motion to Dismiss at 22-24, Statements of Principle Deputy Associate Attorney Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1.

48. In fact, the Government has failed to release a number of Guantánamo detainees even after it has determined that the detainees are "no longer enemy combatants." *See* Robin Wright, "Chinese Detainees Are Men Without a Country; 15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With Nowhere to Go," *Wash. Post*, August 24, 2005, at A1 (Final Ed.); Ben Fox, "U.S. to Ease Conditions for Some Detainees," *Chicago Trib.*, Aug. 11, 2005, at C4.

49. The Government has acknowledged its plan to begin constructing a new, more permanent detention facility at Guantánamo. Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo Takes on the Look of Permanency," Jan. 9, 2005.

**Rendition**

50.    During interrogations, detainees have also been threatened with rendition or transfer to
       countries that permit indefinite detention without charge or trial and/or routinely practice
       torture. Upon information and belief, the United States has secretly transferred detainees
       to such countries without complying with the applicable legal requirements for
       extradition. This practice, known as "extraordinary rendition," is used to facilitate
       interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture:
       The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*,
       Feb. 14, 2005, at 106.

51.    The U.S. government's "extraordinary rendition" program has been well documented by
       key American and international news organizations, including the *Washington Post*, *The
       Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to
       news accounts:

> Since September 11, the U.S. government has secretly transported dozens
> of people suspected of links to terrorists to countries other than the United
> States bypassing extradition procedures and legal formalities, according to
> Western diplomats and intelligence source. The suspects have been taken
> to countries . . . whose intelligence services have close ties to the CIA and
> where they can be subjected to interrogation tactics -- including torture
> and threats to families -- that are illegal in the United States, the sources
> said. In some cases, U.S. intelligence agents remain closely involved in
> the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects,"
*Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for
Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,'
depend on arrangements between the United States and other countries, such as Egypt . . .
that agree to have local security services hold certain suspects in their facilities for
interrogation by CIA and foreign liaison officers.").

52.   In fact, the Government has recently announced its intention to render many Guantánamo detainees to countries which have a documented record of human rights violations, including state-sponsored torture. *See, e.g.,* Matthew Waxman, "Beyond Guantanamo," *Wash. Times,* Aug. 20, 2005, at A17; Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Times,* Aug. 9, 2005, at A13; Neil Lewis, "Guantanamo Detention Site Is Being Transformed, U.S. Says," *NY Times,* Aug. 6, 2005, at A8 (Late Ed.); Paul Richter, "U.S. to Repatriate 110 Afghans Jailed at Guantanamo Bay," *LA Times,* Aug. 5, 2005, at A18.

53.   Moreover, upon information and belief, the Government is conditioning the transfer or rendering of detainees to their countries of origin on the requirement that the home country imprison the detainee without regard to the detainee's individual factual or legal situation. *See* Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Post,* August 9, 2005, at A13; BBC Worldwide Monitoring, "USA to release 107 Yemenis from Guantanamo Bay," August 10, 2005 (available from LEXIS, MWP90 file) ("The US authorities declared few days ago that they would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the condition [that they are] to be put in jail.").

54.   In August 2005, the United States State Department concluded that "the United States remains concerned about human rights conditions in Saudi Arabia." Dep't of State, Bureau of Near Eastern Affairs August 2005, Background Note: Saudi Arabia, at http://www.state.gov/r/pa/ei/bng/3584.htm. In a report released on February 28, 2005, the U.S. State Department found that "Security forces continued to abuse detainees and

prisoners, arbitrarily arrest, and hold persons in incommunicado detention . . . [A]uthorities reportedly at times abuse detainees, both citizens and foreigners. Ministry of Interior officials were responsible for most incidents of abuse of prisoners, including beatings, whippings, and sleep deprivation.  In addition, there were allegations of beatings with sticks and suspension from bars by handcuffs. There were allegations that these practices were used to force confessions from prisoners." Dep't of State, *Country Report on Human Rights Practices, Saudi Arabia, 2004,* http://www.state.gov/g/drl/rls/hrrpt/2004/41731.htm, § 1(c).

55.    Upon information and belief, Petitioners are at risk of being rendered, returned or transferred without lawful process to a country that permits indefinite detention without process and/or engages in torture or abuse during interrogation.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

56.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

57.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals including Petitioners, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia,* the Uniform Code of Military Justice,  Army Regulation 190-8,

19

Articles 3 and 5 of the Third and Fourth Geneva Conventions, the common law, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

58. To the extent that Petitioners' detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioners, and therefore also violates 28 U.S.C. § 2241 (c)(3).

59. To the extent that Petitioners' detention is without basis in law and violates the common law principles of due process embodied in 28 U.S.C. § 2241 (c)(1), Petitioners' detention is unlawful.

60. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

61. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

62. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioners to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

63. Accordingly, Petitioners are entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

64. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65.   By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

66.   Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

67.   Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

68.   Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

69.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

70.   By the actions described above, Respondents have denied and continue to deny Petitioners the process due to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

71.   Because Respondents are detaining Petitioners "under or by color of the authority of the United States," they are violating 28 U.S.C. § 2241(c)(1), and because Respondents are detaining Petitioners "in violation of the Constitution or laws or treaties of the United

States," they are also violating 28 U.S.C. § 2241(c)(3). Petitioners are therefore entitled to habeas relief.

72.   Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FIFTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - TORTURE)

73.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.   By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioners in order to obtain coerced information or confessions from them, punish or intimidate Petitioners or for other purposes. Among other abuses, Petitioners have been held in and surrounded by conditions of isolation; constant vulnerability to repeated interrogation and severe beatings; the threat or reality of being kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement or the threat of solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

75.   The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other

22

international instruments, international and domestic judicial decisions, and other authorities.

76. Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioners.

77. Petitioners are forced to suffer severe physical and psychological abuse and agony and are entitled to habeas, declaratory, and injunctive relief and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - WAR CRIMES)

78. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

79. By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioners constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

80. As a result of Respondents' unlawful conduct, Petitioners have been and are forced to suffer severe physical and psychological abuse and agony, and are therefore entitled to declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE –
CRUEL, INHUMAN OR DEGRADING TREATMENT)

81. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65. The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioners, forcing them to act against their will and conscience, inciting fear and anguish, and breaking their physical or moral resistance.

66. The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

67. Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioners.

68. Petitioners were forced to suffer severe physical and psychological abuse and agony and are entitled to declaratory and injunctive relief as well as other relief to be determined at trial.

EIGHTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE -
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

69. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

70. The acts described herein constitute arbitrary arrest and detention of Petitioners in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected,

24

expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioners in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

72.    As a result of Respondents' unlawful conduct, Petitioners have been and are deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse, and are therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

NINTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - ENFORCED DISAPPEARANCE)

73.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioners in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.    As a result of Respondents' unlawful conduct, Petitioners have been and are deprived of their freedom, separated from their families, and forced to suffer severe physical and

mental abuse, and are therefore entitled to habeas, declaratory and injunctive relief and such other relief as the court may deem appropriate.

**TENTH CLAIM FOR RELIEF**
**(ARTICLE II OF THE UNITED STATES CONSTITUTION -**
**UNLAWFUL DETENTION)**

76. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

77. Petitioners are not, nor have they ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind. The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 524 U.S. __, 124 S. Ct. 2633, 2642 n.1 (2004).

78. By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioners and transfer them to military detention, and by authorizing and ordering their continued military detention at Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioners.

79. The military seizure and detention of Petitioners by the Respondents is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution. To the extent that the Executive asserts that Petitioners' detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioners.

80. To the extent that Respondents assert that their authority to detain Petitioners derives from a source other than the Executive Order, including without limitation the

Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

81. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS
UNLAWFUL DETENTION)

82. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83. Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

84. By arbitrarily and capriciously detaining Petitioners in military custody for nearly four years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

85. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TWELFTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS
DENIAL OF DUE PROCESS)

86. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

87. By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

88. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF
## (VIOLATION OF THE APA - TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

89. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

90. By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioners to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

91. Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF
## (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

92. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

93. Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioners' right to consult with counsel by conditioning counsel's access to Petitioners on unreasonable terms, including classification/declassification procedures, all in violation of Petitioners' attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

94. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

**FIFTEENTH CLAIM FOR RELIEF**
**(DUE PROCESS CLAUSE - RENDITION)**

95.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

96.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of Petitioners' rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

97.    Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

**SIXTEENTH CLAIM FOR RELIEF**
**(CONVENTION AGAINST TORTURE AND**
**CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)**

98.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

99.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a direct violation of Petitioners' rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

100.    Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

**SEVENTEENTH CLAIM FOR RELIEF**
**(ALIEN TORT STATUTE- RENDITION)**

29

101.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

102.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of Petitioners' rights under customary international law, which may be vindicated under the Alien Tort Statute.

103.    Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## V.

## STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(B)(3)

104.    Under the unique and extraordinary circumstances of this case, the factual allegations made above upon information and belief are made pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure on the basis that those allegations "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Upon information and belief, Petitioner desires undersigned counsel to file this petition on his behalf.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.    Grant the Writ of Habeas Corpus and order Respondents to release Petitioners from their current unlawful detention;

2.    Order that Petitioners be brought before the Court or before a Magistrate Judge assigned by the Court at a convenient facility to conduct proceedings under the supervision of the Court to vindicate their rights;

3.   Order that Petitioners cannot be transferred to any other country without the specific, written agreement of Petitioners and Petitioners' counsel while this action is pending;

4.   Order that Petitioners cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petitioners will be subject to torture;

5.   Order Respondents to allow counsel to meet and confer with Petitioners, in private and unmonitored attorney-client conversations;

6.   Order Respondents to cease all interrogations of Petitioners, direct or indirect, while this litigation is pending;

7.   Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioners;

8.   Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

9.   Order and declare that the prolonged, indefinite, and restrictive detention of Petitioners without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

10.  Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the common law, the United States Constitution, federal statutory law, and international law, including, if necessary, designating Petitioner Suliman Honaheem Alowaidah to act as the Next Friend of Anwar Handan Al Shimmiri; Petitioner Sami Muhyideen to act as the Next Friend of Saad Al Qahtaani; Petitioner Jamal Kiyemba to act as the Next Friend of Bandar Al Jaabir; and Petitioner Omar Deghayes to act as the Next Friend of Mohammed Zahrani.

Dated:  December 11, 2005                    Respectfully submitted,

                                             Counsel for Petitioners:

                                             *Barbara Olshansky*

                                             Barbara J. Olshansky (NY0057)
                                             Director Counsel
                                             Tina Monshipour Foster (TF5556)
                                             Gita Gutierrez
                                             CENTER FOR CONSTITUTIONAL RIGHTS
                                             666 Broadway, 7th Floor
                                             New York, New York 10012
                                             Tel: (212) 614-6439
                                             Fax: (212) 614-6499

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner hereby certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner without compensation.

Dated: December 11, 2005

*[signature]*

**[counsel information]**

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLUMBIA

SAILM SAID, *et al.*,                                    )
                                                        )
                         Petitioners,                   )
                                                        )
                                                        )    Civil Action No. _____
v.                                                      )
                                                        )
GEORGE W. BUSH,                                         )
      President of the United States, *et al.*          )
                                                        )
                         Respondents.                   )


## DECLARATION BY GITANJALI S. GUTIERREZ

I, Gitanjali S. Gutierrez, under penalty of perjury declare that the following statements are true to the best of my knowledge, information and belief:

1.    I am an attorney with the Center for Constitutional Rights (CCR), duly licensed to practice law in the State of New York and am counsel for Petitioners in the above-captioned matter. I make this declaration in support of Petitioners' Petition for Writ of Habeas Corpus.

2.    Attorneys from the law firm of Allen & Overy sent CCR a letter written by Petitioner Salim Said, a prisoner at Guantanamo and citizen of Saudi Arabia, seeking legal representation to challenge his detention, attached as Exhibit A. Allen & Overy asked that attorneys at CCR provide Petitioner Said with legal representation in response to his request, which we have agreed to do.

3.    Clive Stafford Smith, Esq., sent CCR an authorization from Sami Muhyideen to file a habeas petition as a Next Friend on behalf of Saad Al Qahtaani, a citizen of

Saudi Arabia imprisoned in Guantanamo, to challenge the legality of his detention, attached as Exhibit B. Mr. Muhyideen is imprisoned at Guantanamo with Petitioner Al Qahtaani and the authorization evidences Petitioner's Al Qahtaani's desire for direct legal representation. Alternatively, Mr. Muhyideen also understands the meaning of "Next Friend" and understands that Petitioner Al Qahtaani seeks legal assistance to challenge his detention. If Petitioner Al Qahtaani is unable to secure legal representation on his own, based upon Mr. Muhyideen's close relationship with Petitioner Al Qahtaani, Mr. Muhyideen seeks to act as Petitioner Al Qahtaani's Next Friend. Mr. Stafford Smith has also requested that attorneys at CCR provide legal representation to Petitioner Al Qahtaani, which we have agreed to do.

4.    Clive Stafford Smith, Esq., also sent CCR a Notification to represent Petitioner Bandar Al Jaabir directly and, alternatively, a Next Friend Authorization from Jamal Kiyemba to file a habeas petition on behalf of Petitioner Al Jaabir, attached as Exhibit C. Petitioner Al Jaabir is a citizen of Saudi Arabia imprisoned in Guantanamo who seeks to challenge the legality of his detention. The Notification is evidence of Petitioner Al Jaabir's desire for direct legal representation. Alternatively, Mr. Kiymeba is imprisoned at Guantanamo with Petitioner Al Jaabir. Mr. Kiyemba understands the meaning of "Next Friend" and understands that Petitioner Al Jaabir seeks legal assistance to challenge his detention. If Petitioner Al Jaabir is unable to secure legal representation on his own, based upon Mr. Kiyemba's close relationship with Petitioner Al Jaabir, Mr. Kiyemba seeks to act as Petitioner Al Jaabir's Next Friend. Mr. Stafford Smith

has also requested that attorneys at CCR provide legal representation to Petitioner Al Jaabir which we have agreed to do.

5.    Clive Stafford Smith, Esq., also sent CCR a Next Friend Authorization to from Omar Deghayes to file a habeas petition on behalf of Petitioner Mohammed Zahrani, attached as Exhibit D.  Petitioner Zahrani is a citizen of Saudi Arabia imprisoned in Guantanamo who seeks to challenge the legality of his detention. The Authorization is evidence of Petitioner Zahrani's desire for direct legal representation.  Alternatively, Mr. Deghayes is imprisoned at Guantanamo with Petitioner Zahrani.  Mr. Deghayes understands the meaning of "Next Friend" and understands that Petitioner Zahrani seeks legal assistance to challenge his detention.  If Petitioner Zahrani is unable to secure legal representation on his own, based upon Mr. Deghayes's close relationship with Petitioner Zahrani, Mr. Deghayes seeks to act as Petitioner Zahrani's Next Friend.  Mr. Stafford Smith has also requested that attorneys at CCR provide legal representation to Petitioner Zahrani which we have agreed to do.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on December 10, 2005.

Gitanjali Gutierrez

Gitanjali S. Gutierrez

**Exhibit A**

Country where posted

Name of Camp    GTMO

Date and Place of Birth

Internment Serial Number    lll ABC

Name (Last, First, M.I.)    Salid Salim

SENDER:

*MAIL    LETTER*

Language    English

To    Neha singh Gokil  Allen & overy LL P

Street    1221 Avenue of the Americas

City    New York 10020

Country    U.S.A

Province or Department

DO NOT WRITE HERE

DA FORM 2667-R, May 82    EDITION OF 1 JUL 60 IS OBSOLETE.

DO NOT WRITE BEYOND HEAVY LINES

I hope you are doing well , really I do not
know what I have to wrote here but first thing
consider my English is not very well . maybe you
will be wonder when you read my letter and maybe you
will open your eyes but after that you will smile --
I am sure about the smile . . . . before few days
I found me a lawyer

ther , I thought how I can give you my adress but after
that I decided to send a letter to you through the military
mail and I hope you get it . you will find my home
adress last letter but I hope you will to me just
me unless if that is not enough for you , you can talk
to my father , but when he is not , yet that , the law firm
of filler & akers to represent me . let me know about
that I hope you get my letter in short time . and I will
writing for the answer .

Sincerely .

Salem

my father adress in saudi
Abdullah said Al-Shihri
P.O BOX 50974
city  Khames musheit 61311
King dom of saudi arabia
tell : 07 250 1729
mobile : 055 4747 829

**Exhibit B**

I, SAMI MUHYIDEEN, UNDERSTAND THE TERM
"NEXT FRIEND" AND THE FOLLOWING PEOPLE WANT
LAWYERS AND WANT ME ALTERNATIVELY TO ACT
AS THEIR NEXT FRIEND AND HAVE CLIVE STAFFORD-
SMITH OR AN ATTORNEY DESIGNATED BY HIM ASSERT
ALL THEIR LEGAL RIGHTS:

| | | | |
|---|---|---|---|
| SALEH MOHAMMED ALI AZOBA | (501) | YEMEN | (ARABIC) |
| MANSOR AL PALESTINI | (519) | PALESTINE | (ENGLISH) |
| MOHAMMED AL PALESTINI | (684) | PALESTINE | (ARABIC) |
| AHMAD ADERBI | (768) | YEMEN / KSA | (ARABIC) |
| SAAD AL QAHTANY | (200) | KSA | (ENGLISH) |

JULY 1, 2005

Sami MOHYeldin Mohamed

Witness:

FOUO

**Exhibit C**

## AUTHORIZATION & NOTIFICATION

I, JAMAL KIYEMBA ▉▉▉ ), UNDERSTAND THE LEGAL TERM "NEXT FRIEND" AND FIRMLY BELIEVE THAT THE FOLLOWING PEOPLE, (AS ATTACHED) WHO I HAVE COME TO KNOW DURING MY CAPTIVITY SINCE MARCH 2002, WANT ME TO ACT AS THEIR "NEXT FRIEND" AND AUTHORIZE Clive Stafford Smith TO SEEK ANY LEGAL REDRESS ON THEIR BEHALF THAT IS POSSIBLE, AND I SO AUTHORIZE HIM I ALSO SUBMIT THIS DOCUMENT AS EVIDENCE, INDEPENDENT OF THEIR RELIANCE UPON ME AS "NEXT FRIEND", OF THEIR SPECIFIC DESIRE FOR A LAWYER AND FOR A LEGAL CHALLENGE TO THE ILLEGALITY OF THEIR DETENTION BY THE UNITED STATES OF AMERICA.

THIS AUTHORIZATION & NOTIFICATION APPLIES TO ALL PERSONS LISTED ON THE ATTACHED LISTS, AS INITIALED BY ME.

MARCH 10ᵗʰ, 2005.

NAMES OF DETAINEES

| # | Name | Nationality | Camp | Notes |
|---|------|-------------|------|-------|
| 1 | ALI | UZBEKISTAN | CAMP I | |
| 2 | ABDULLAH | UZBEKISTAN | CAMP I | |
| 3 | KHALID | TURKISTAN | CAMP 4 | (UIGUR) |
| 4 | ABDULAZIZ | " | " | " |
| 5 | ABDUSAMAD | " | " | " |
| 6 | HAMMAD | " | " | " |
| 7 | ABDU NASIR | " | " | " |
| 8 | JALAAL | " | " | " |
| 9 | BILAL | SYRIAN | CAMP I | (ARABIC) |
| 10 | FAISAL | SAUDI | CAMP I | " |
| 11 | BANDAR ALJAABIR | " | " | |
| 12 | AHMAD | TURKISTAN | CAMP 4 | (UIGUR) |
| 13 | SAADIQ | " | " | " |
| 14 | WALIID | SUDAN | CAMP I | |
| 15 | HAMMAD | " | CAMP 4 | |
| 16 | MAHMOOD | SUDANI | CAMP I | |
| 17 | SAIFULLAH | TUNISIAN | CAMP II | ITALIAN? ARABIC |
| 18 | YUSUF ASSHIHRI | SAUDI | CAMP III | |
| 19 | YUSUF ARIBESH | SAUDI | CAMP I | |
| 20 | ABDALLAH | TUNISIAN | CAMP II | ITALIAN? |
| 21 | ADIL BATH | TUNISIAN | CAMP IV | ITALIAN? |
| 22 | ABU RAWDAH | SYRIAN | CAMP I | |
| 23 | SAABIR | TURKISTAN | CAMP IV | (UIGUR |
| 24 | SAALIH | TURKISH | CAMP IV | |
| 25 | DR ABU MUHAMMAD | ALGERIAN | CAMP IV | (ENG ARAB |
| 26 | VERY ILL SALMAN ALBAHRI | SAUDI | CAMP I | |
| 27 | JAABIR ALQAHTAANI | SAUDI | CAMP II | |

J.K.    Kisambi

**Exhibit D**

### Next Friend Authorization

I, _OMAR LEGHAMES_ , understand what the U.S. legal term 'next friend' means, and the following people who I know from being held in the custody of the U.S. have expressed the desire to have the legal assistance of counsel. I therefore act as their next friend, and authorize Clive Stafford Smith and counsel associated by him to act to secure the legal rights of those listed below:

SAMIR NAJI HASSAN (034)    YEMEN         ARABIC

MOHAMMED ABDURRAHMAN (894)    TUNISIA       ITALIAN, ARABIC

GHALIB FAHANI (128)    YEMEN         ARABIC, ENGLISH

MOHAMMED ZAHRANI (  )    K.S.A. (CAMP V)    ARABIC

MOHAMMED QAHTANY (  )    KSA (CAMP V)    ARABIC

SOHANE AL HAWARI (1006)    Algeria         FRENCH? ARABIC.
                              (KSA)        ARABIC, ENGLISH

ABDULLAH HAMID MOSLEH QAHTANY             ARABIC

FADL DAHMI         Yemen            ARABIC

AHMED OMAR         Yemen (CAMP A)    ARABIC (ENGLISH)

YOUSEF RUBAISH      KSA.             ENGLISH/ARABIC

DR. ABDULLAH ASSARI   KSA           ARABIC.

ALI WAILI KHAVIMI    Yemen

_____
Name:

Witness

_____

## FOUO

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLUMBIA

SAILM  SAID, *et al.*,                          )
                                                )
                   Petitioner,                  )
                                                )
                                                )   Civil Action No. _____
v.                                              )
                                                )
GEORGE W. BUSH,                                 )
    President of the United States, *et al.*    )
                                                )
                   Respondents.                 )

## DECLARATION BY TINA  MONSHIPOUR FOSTER

I, Tina Monshipour Foster, under penalty of perjury declare that the following statements are true to the best of my knowledge, information and belief:

1.     I am an attorney with the Center for Constitutional Rights, duly licensed to practice law in the States of New York and Massachussetts, and am counsel for Petitioner Detainee Anwar Handan Al Shimmiri and Petitioner Next Friend Suliman Honaheem Alowaidah.  I make this declaration in support of Petitioners' Petition for Writ of Habeas Corpus.

2.     I met with Petitioner Next Friend Suliman Honaheem Alowaidah in June 2005 and discussed his desire to act as the Next Friend for Anwar Handan Al Shimmiri, who is imprisoned at Guantanamo Bay.  Petitioner Next Friend Alowaidah has known Petitioner Detainee Al Shimmiri and his family for approximately twenty years.  Petitioner Next Friend Alowaidah has discussed Mr. Al Shimmiri's detention in Guantanamo with Mr. Al Shimmiri's family, and the family supports

Mr. Alowaidah's interest in acting as Next Friend for Petitioner Detainee Al Shimmiri.

3.     Based upon Petitioner Detainee Al Shimmiri's inability to secure legal representation on his own, and Mr. Alowaidah's close relationship with Mr. Al Shimmiri and his family, I obtained an Authorization to provide legal representation to Petitioner Detainee Al Shimmiri to challenge the legality of his detention in Guantanamo from Petitioner Next Friend Alowaidah, which is attached hereto as Exhibit A.

I declare, under penalty of perjury under the laws of the United States that the foregoing

is true and correct.  Executed this 10th day of December, 2005, New York, New York.

Tina Monshipour Foster (NY 5556)

**Exhibit A**

Date: _June 26_, 2005

### Authorization

I am _Sulaiman Ibraheem Alruwaidah_, and I have had the concept of 'next friend' explained to me in my native language. I wish to act as next friend for my _friend_, who is a prisoner being held in Guantanamo Bay, and whose name is _Anwar Haadan Al Shamiri_ (the 'prisoner'). I hereby authorize Tina Foster (and the Center for Constitutional Rights), as well as Clive Stafford Smith (and Justice In Exile), and any person assigned by these lawyers, to act on my behalf and on the prisoner's behalf, to secure any documents and information concerning the prisoner that are necessary for his defense, and to seek whatever redress they believe to be in his best interests, in the courts of the United States, and in any other legal forum available. I am sure that he would want me to assert these rights. He is a citizen of _Saudi Arabia_.

Next Friend _____

Witnessed: _____

_Tina M. Foster_

Print Name: