## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SALIM SAID, et al.,** | ) | |
| | ) | |
| **Petitioners,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GEORGE W. BUSH, DONALD RUMSFELD,** | ) | **No. 1:05 CV 02384 (RWR)** |
| **ARMY BRIG. GEN. JAY HOOD, and ARMY** | ) | |
| **COL. MIKE BUMGARNER,** | ) | |
| | ) | |
| **Respondents.** | ) | |

### PETITIONERS' REPLY TO RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONERS' MOTION FOR ENTRY OF PROTECTIVE ORDERS AND UNREDACTED FACTUAL RETURNS

Petitioners Salim Said, Anwar Handan Al Shimmiri, Saad Al Qahtaani, Bandar Al Jaabir and Mohammed Zahrani ("Petitioners"), by their counsel, hereby respectfully submit this reply to Respondents' Memorandum in Opposition to Petitioners' Motion for Entry of Protective Order and Petitioners' Motion for Factual Returns ("Opp.").

### A.  *The Detainee Treatment Act ("DTA") Does Not Negatively Affect The Relief Requested By Petitioners.*

The Protective Order was crafted to provide a general guideline for attorney-client access in light of security concerns related to the representation of prisoners at Guantánamo Bay.  *Al Odah v. U.S.*, 346 F. Supp. 2d 1, 13-15 (D.D.C. 2004) (Kollar-Kotelly, J.)   As explained in Thomas P. Sullivan's attached affidavit

(Exhibit 1), in moving for the Protective Order, Petitioners and their lawyers seek to be able to communicate face-to-face and through correspondence, in order to prepare for very important forthcoming legal proceedings.  Their desire and need to do so does not depend on whether the DTA will apply.  In either forum, habeas corpus here or DTA elsewhere, there is and will be a need for personal attorney/client contact and consultation.  This will permit Petitioners to enjoy the full benefits of the right to counsel that many other prisoners at Guantánamo Bay already enjoy, and afford us (the undersigned lawyers and their partners) the ability to consult with and advise Petitioners about the facts of their cases, and their legal rights in the proceedings – whether in this habeas corpus case or under DTA procedures – in which Petitioners will eventually be involved.

Higher courts are currently considering the effect of the DTA on pending habeas corpus cases, but that issue has yet to be determined.  Respondents contend that the DTA deprives this Court of jurisdiction to order the relief requested by Petitioners because the DTA grants the Court of Appeals exclusive judicial jurisdiction over appeals by prisoners from rulings of the administrative tribunals. Opp. at 1-2.

Respondents' argument involves a *non sequitur*.  As we explain below, granting Petitioners' motions will present no danger of infringement on the potential future jurisdiction of the Court of Appeals.

*Petitioners' Motion for Entry of Protective Order*

The DTA sets forth three types of procedures to which Guantánamo Bay prisoners are to be subject: the Combatant Status Review Tribunals ("CSRTs"), review before the Administrative Review Boards ("ARBs"), and appeal to the Court of Appeals for the District of Columbia Circuit for review of final decisions by CSRTs.[1]  Section 1005 of the DTA specifies that the Secretary of Defense shall, within 180 days of the enactment of the Act, present a report to various committees of Congress on "the procedures of the Combatant Status Review Tribunals and the Administrative Review Boards established by direction of the Secretary of Defense that are in operation at Guantanamo Bay, Cuba, for determining the status of the detainees held at Guantanamo Bay or to provide an annual review to determine the need to continue to detain an alien who is a detainee[.]"  The Court of Appeals for this Circuit is given exclusive but limited jurisdiction to review those determinations.

---

[1] The DTA also provides for review in the Court of Appeals of final decisions of military commissions.  To our knowledge, none of these Petitioners has been charged with an offense triable by a military commission.

CHICAGO_1390611_5

The Protective Order Petitioners seek is vital to protect their right to have access to us as their lawyers, whether or not the proceedings arise under the habeas corpus petition or the procedures contemplated by the DTA. In either event, Petitioners require advice of counsel with respect to the original "trial" proceedings, prior to potential review in the Court of Appeals.

Even under the narrowest reading of the DTA, Petitioners will retain the right to appear in person (and perhaps with a lawyer) before the CSRTs and ARBs, and to have a lawyer represent them before the Court of Appeals for the District of Columbia Circuit. In preparation for these proceedings, Petitioners need and have a right to consult with lawyers. This is a fundamental tenet of our jurisprudence. Petitioners' need for and entitlement to assistance of counsel exist regardless of whether it is ultimately determined that they may proceed before this Court based upon their petitions for habeas corpus, or under the DTA.

In *Al-Odah*, Judge Kollar-Kotelly found "that Petitioners cannot be expected to exercise" their right to pursue legal proceedings "without the assistance of counsel." 346 F. Supp. 2d at 8. Judge Kollar-Kotelly held that "Petitioners are entitled to counsel, in order to properly litigate the habeas petitions presently before the Court and in the interest of justice." *Id.*

Respondents argue that *Al Odah* allows a court to appoint counsel to Guantánamo prisoners, but "does not compel the relief requested by petitioners,"

4

because Judge Kollar-Kotelly was ruling with respect to court-appointed counsel in habeas corpus proceedings.  Opp. at 3.  This reading of *Al Odah* confuses the specific relief granted by Judge Kollar-Kotelly (appointment of counsel) with the underlying legal principle that "Petitioners have the right to bring their claims before [the federal district] Court . . . and . . . Petitioners cannot be expected to exercise this right without the assistance of counsel." *Al Odah*, 346 F. Supp. 2d at 8.  The relief requested here is essential if Petitioners are to have assistance of counsel in whatever proceedings they may be involved in the future.  *See also Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) (noting that alleged enemy combatant "unquestionably has the right to access to counsel in connection with the proceedings on remand").  Petitioners seek to enforce this same right, and we are ready and willing to provide them counsel, as explained in the affidavit of Thomas P. Sullivan (Exhibit 1).

Other Judges of this Court have entered Protective Orders since the passage of the DTA in the cases listed below, the first four by agreement of the parties, and the last two over Respondents' objections:

1.  *Khiali-Gul v. Bush*, No. 05-CV-877 (JR) (D.D.C. Jan. 6, 2006);

2.  *Bostan v. Bush*, No. 05-CV-883 (RBW) (D.D.C. Jan. 9, 2006);

3.  *Mohammad v. Bush*, No. 05-CV-879 (RBW) (D.D.C. Jan. 9, 2006);

4.  *Wahab v. Bush*, No. 05-CV-886 (EGS) (D.D.C. Jan. 10, 2006);

CHICAGO_1390611_5

5. *Razakah v. Bush*, No. 05-CV-2370 (EGS) (D.D.C. Mar. 17, 2006); and

6. *Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C. Mar. 21, 2006).

### *Petitioners' Motion for Factual Returns*

In their opposition to Petitioners' motion for factual returns, Respondents argue (Opp. at 2):

". . . Indeed, because the Act vests 'exclusive' jurisdiction in the D.C. Circuit 'to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant,' id. § 1005(e)(1), it would be inappropriate for the Court to order relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction. See Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals)."

The first paragraph of the footnote to this sentence states (Opp. at 2, n.3):

"Thus, the Court should not accept petitioners' argument that, notwithstanding the Act's withdrawal of the Court's jurisdiction over this case, factual returns should be produced in these proceedings because counsel for petitioners 'will still need the factual return[s] to represent Petitioners in the proceedings provided by the [Act].' Pets' Mem. in Support of Mot. for Factual Returns at 4. Whether and to what extent 'factual returns' as they have been produced in the District Court will be required by the D.C. Circuit is a matter subject to the exclusive jurisdiction of the Court of Appeals. See Act, § 1005(e)(1) (vesting 'exclusive' jurisdiction in the D.C. Circuit 'to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant'); Telecommunications Research and Action Center, 750 F.2d at 75, 78-79."

CHICAGO_1390611_5

Contrary to Respondents' contention, Petitioners' motion for factual returns does not threaten the jurisdiction of the Court of Appeals. Even if it is eventually determined that the DTA precludes habeas jurisdiction in this Court, we will still need the factual returns to properly advise Petitioners concerning the proceedings to be held under the DTA. Petitioners, and we as their lawyers, seek basic information relevant to the legal justification for their continued detention. That information will be needed no matter where jurisdiction is ultimately found, and is part and parcel of the Petitioners' established and protected right to be represented by lawyers, to be informed why they are being held in custody, and to prepare their defenses and explanations why they do not present a threat to the United States or its allies and should no longer be considered enemy combatants, and therefore should be released from the Guantánamo Bay prison. *See* Second Declaration of Frank Sweigart, ¶3 and Exhibit A, attached to Respondents' Opposition.

We realize that this Court may choose to stay *substantive* motions in these habeas corpus cases pending anticipated guidance from the Court of Appeals or the Supreme Court regarding the effect of the DTA. But this motion for unredacted factual returns does not depend on the resolution of those cases. Petitioners' and our need to obtain the unredacted factual returns is not dependent upon resolution of the habeas-DTA issue, but is critical to Petitioners' ability to contest their imprisonment, and our ability to provide Petitioners with proper legal advice and

7

assistance.  There is nothing in the DTA which suggests that the Court of Appeals has exclusive jurisdiction to deal with production of unredacted factual returns.

In the second paragraph of footnote 3 on page 3 of Respondents' opposition, they assert that the production and submission of factual returns "is not an inconsequential task."  This contention borders on fatuous.  Respondents have already produced thousands of pages of similar documents, including transcripts from CSRTs, in response to a request under the Freedom of Information Act by the Associated Press.  It is obvious that compliance with Petitioners' motion for the five factual returns will involve little cost or effort.

### B.  Next Friend Standing is Proper for All Petitioners.

Respondents challenge the "next friends standing" of Petitioners Bandar Al Jaabir, Saad Al Qahtaani and Mohammed Zahrani.  (Opp. at 4).  From this we deduce that they do not oppose the standing of Petitioner Salim Said nor do they oppose the next friend standing for Petitioner Anwar Handan Al Shimmiri.

Respondents' objections to the standing of the three next friends is intended to have a dual impact:  (1) it is a basis for preventing us from visiting the three Petitioners so we may obtain their personal authorization to proceed with their habeas petitions and for us to act as their lawyers, because without the Protective Orders we are not permitted to visit prisoners in Guantánamo Bay (Opp. at 13),

8

and (2) it is also raised as the basis for dismissing the three petitions for writs of habeas corpus (Opp. at 4).

Respondents argue that the petitions of Messrs. Al Jaabir, Qahtaani, and Zahrani were not brought by next friends who have established standing to act on their behalf.   Opp. at 3-13.   These petitions were filed by Messrs. Kiyemba, Deghayes and Muhyideen, each acting as next friend to one of the Petitioners. They are fellow Guantánamo Bay prisoners who have come to know the three Petitioners.  We call the Court's attention to the affidavit of Gitanjali S. Gutierrez, and to the written statements of the three next friends, attached to the Petition for Writ of Habeas Corpus as Exhibits 1B, 1C and 1D, typed versions of which are attached to this memorandum as Exhibit 2.  These documents illustrate that each of the Petitioners has expressed a desire to be represented by a lawyer, and to have the named fellow prisoner act on his behalf.

The next friend statement for Petitioner Qahtaani states that he is one of a group of prisoners who "want lawyers and want . . .an attorney [to] assert all their legal rights."  Exhibit 2.  The next friend statement for Petitioner Al Jaabir states that he is one of a group of prisoners who have a "specific desire for a lawyer and for a legal challenge to the illegality of their detention by the United States of America."  Exhibit 2.  The next friend statement for Petitioner Zahrani states that Omar Deghayes, acting as next friend to Petitioner Zahrani as well as for other

9

prisoners, "authorize[s] . . .counsel . . .to secure the legal rights" of Petitioner Zahrani, as well as the rights of other specified prisoners. Exhibit 2. The next friend statements of Petitioners Qahtaani and Zahrani were witnessed by Mr. Stafford-Smith. The Court may take judicial notice that Mr. Stafford-Smith has filed a number of prisoners' habeas corpus petitions in this Court.

In addition, the affidavit of Gitanjali S. Gutierrez, an attorney with the Center for Constitutional Rights in New York City, declares that Petitioners Qahtaani, Al Jaabir, and Zahrani all seek legal representation to challenge their imprisonment. Exhibit 2. ¶¶ 3, 4, 5. Her affidavit emphasizes that in the event that the Petitioners are unable to secure legal representation on their own, they have authorized these next friends to act on their behalf. *Id.* Ms. Gutierrez states that Mr. Stafford-Smith has requested that attorneys at the Center for Constitutional Rights provide legal representation to Petitioners Qahtaani, Al Jaabir, and Zahrani.

Mr. Sullivan's affidavit (Exhibit 1) shows that we undertook to represent the five Petitioners through Ms. Gutierrez and that we lawyers are ready, willing and able to travel to Guantánamo Bay to consult with and provide legal counsel to all five Petitioners.

Respondents' challenge to the next friends' standing fails to recognize the limited, provisional but necessary nature of next friend standing in these cases, and their position directly contradicts legal notices Respondents sent to the prisoners.

10

In June 2004, the Supreme Court ruled that the District Court had jurisdiction to consider alien prisoners' "*habeas corpus* challenges to the legality of their [executive] detention at the Guantánamo Bay Naval Base." *Rasul v. Bush*, 542 U.S. 466, 484 (2004). What then occurred is succinctly summarized in the Second Declaration of Frank Sweigart, Deputy Director of the Office for the Administrative Review of the Detention of Enemy Combatants at the Guantánamo Bay Naval Base, Cuba, attached to Respondents' Opposition. We ask the Court to read Mr. Sweigart's Declaration and the attached Exhibits, particularly Exhibits A and E. Those documents show that after *Rasul*, Respondents sent written notices to the prisoners that they had "the right to challenge the legality of their detention by filing habeas corpus petitions in federal court." Sweigart Decl. ¶¶2-5. The notification states that prisoners may challenge their detention "through a process called a petition for a writ of habeas corpus," and that they may either file a petition themselves or they "may ask a friend or family member or a lawyer to file such a petition with the court." There is nothing in the notices sent to the three Petitioners that excludes a fellow prisoner from the category of "friend" who may file a petition for writ of habeas corpus on their behalf.

After a *habeas* petition is docketed and the Protective Order entered, the lawyers who have filed appearances may meet with their prisoner-clients. *See* Protective Order, Ex. A ¶ III.C. Thus, after *Rasul* and the adoption of the

11

Protective Order procedures, the legal fiction of "next friend" became a means of identifying prisoners who seek to challenge their imprisonment, and affording lawyers (chiefly volunteers acting without compensation) to visit them at the prison and obtain authority from the prisoners to represent them.

The three Petitioners did exactly what Respondents informed them they should do to challenge their imprisonment. Respondents should not now be allowed to question the standing of next friends who acted in accordance with the procedures Respondents devised.[2]

Respondents cite several Guantánamo *habeas* cases in which they have challenged the standing of fellow prisoners to act as next friends (Opp. at 4, n. 5), but the cases are not on point. In *Idris v. Bush*, 05-CV-1555 (JR) (dkt. no. 8), Judge Oberdorfer dismissed the next friend as petitioner because the prisoner for whom *habeas* relief was sought had also filed a *pro se* petition for *habeas corpus*. In *Zakirjan v. Bush*, No. 05-CV-2053 (HHK) (dkt. no. 24) and *Muhammed v. Bush*, No. 05-CV-2087 (RMC) (dkt. no. 17), Judge Oberdorfer dismissed Respondents' motions for order to show cause as moot, because after the filing of the next friend

---

[2] Magistrate Judge Kay has ruled that the next friend for purposes of filing a petition for habeas corpus may be a fellow prisoner at Guantánamo Bay. *Adem v. Bush*, No. 05-CV-723, (RWR) (AK) (dkt. no. 36) (March 21, 2006). Respondents have appealed this ruling to the District Court Judge (Motion For Stay, etc., filed April 4, 2006) (dkt. no. 36).

CHICAGO_1390611_5

petitions, the prisoners filed papers showing their personal authorization of the petitions.

## Conclusion

We respectfully ask this Court to grant Petitioners' two motions.

Dated:  April 10, 2006

Respectfully submitted,

/s/David W. DeBruin
One of the Attorneys for Petitioner

Thomas P. Sullivan                      David W. DeBruin
JENNER & BLOCK LLP                      JENNER & BLOCK
One IBM Plaza                           919 Thirteenth Street, N.W.
Chicago, IL  60611                      Suite 1200 South
Tel: (312) 923-2928                     Washington, DC 20005-3823
Fax: (312) 840-7328                     Tel: (202) 639-6015
                                        Fax: (202) 639-6066

*Of Counsel*
Barbara Olshansky (BO3635)
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

13

CHICAGO_1390611_5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the Petitioners' Reply to Respondents' Memorandum in Opposition to Petitioners' Motion for Entry of Protective Orders and Unredacted Factual Returns was served upon the following person by e-mail on April 10, 2006:

> Preeya M. Noronha
> Trial Attorney
> Civil Division
> Federal Programs Branch
> 20 Massachusetts Ave., NW
> Washington, DC  20530
> email: preeya.noronha@usdoj.gov

> <u>/s/ David W. DeBruin</u>
> David W. DeBruin

CHICAGO_1390611_5