IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALIM SAID, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-2384 (RWR) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO
PETITIONERS' EMERGENCY MOTION FOR ORDER DIRECTING
RESPONDENTS TO COMPLY WITH PROTECTIVE ORDER AND
TO FACILITATE ATTORNEY MEETINGS WITH PETITIONERS**

Respondents hereby respectfully submit this memorandum in opposition to petitioners'

motion for an order directing respondents to comply with the Protective Order entered in this

case and to facilitate attorney meetings with petitioners (dkt. no. 19) ("Petrs' Motion").

Petitioners' motion appears to comprise two separate, but related requests for relief.

First, petitioners ask the Court to compel respondents to permit counsel a requested, week-long

visit to Guantanamo Bay beginning June 5, 2006, to meet with five petitioners in this case as

well as three petitioners in other cases being handled by counsel. Second, petitioners ask the

Court to compel, as part of the requested visit, meetings with three petitioners in this case (one of

whom is not even positively identified) with respect to whom counsel has failed to provide

appropriate evidence of authority to represent them.

Petitioners' motion should be denied. As an initial matter, the Detainee Treatment Act of

2005 withdraws jurisdiction from the Court to grant the relief requested by petitioners. In any

event, counsel are not entitled to their requested week-long visit as a scheduling and logistical matter because the visit has not yet been formally vetted and approved as appropriate and supportable by authorities at Guantanamo, as is required under standard practices with respect to habeas counsel visits to Guantanamo. As explained further below, however, the vetting process is continuing, and it is likely that a visit with less than all the detainees requested in this and the other cases will be approved shortly, though we are awaiting a final decision on that matter.

Furthermore, aside from the logistical issue and notwithstanding the withdrawal of the Court's jurisdiction under the Detainee Treatment Act, petitioners' request for a visit with respect to three of the petitioners in this case for whom counsel have failed to present adequate evidence of authority to represent the detainees in a habeas case, should be denied because respondents have complied and continue to comply with the Protective Order. The Protective Order does not require respondents to permit a visit by counsel with any particular petitioner in this case. While the Revised Procedures for Counsel Access to Detainees annexed to the Protective Order operate under the assumption of counsel visits occurring in that they set certain terms, conditions and limitations applicable to any such visits, they do not order respondents to provide a visit on demand of counsel in the first place. Also, another provision of the Protective Order confirms that respondents acted appropriately in declining to schedule a visit with the three detainees where counsel has not yet provided appropriate evidence of his or her authority to represent the detainees.

For these reasons, petitioners' motion should be denied.

## BACKGROUND

On December 13, 2005, counsel for petitioners filed a petition for writ of *habeas corpus* on behalf of five individuals alleged to be detained at Guantanamo Bay.  See Petition (dkt. no. 1).  As to three of these individuals — Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani[1] — the petition was submitted through fellow detainees acting as putative next friends to these individuals.  See id.  On March 15, 2006, petitioners filed a motion for entry in this case of the Protective Order that has been entered in many other Guantanamo detainee cases pending before other Judges of this Court, in this case.  See Pets' Mot. for Protective Order (dkt. no. 6).  On April 12, 2006, the Court issued a Minute Order that entered the Protective Order in this case.[2]

---

[1]  The Department of Defense has been unable to identify petitioner Mohammed Zahrani as a detainee at Guantanamo Bay.  Although petitioners' counsel maintain that they "believe his Internment Serial Number ("ISN") is 713 . . . based on the list of Guantanamo Bay prisoners produced by the government on April 19, 2006, which identifies Muhammed Murdi Issa Al Zahrani as prisoner 713 from Saudi Arabia," Pets' Mot. at 3, n.2, given the similar names and aliases among the detainee population at Guantanamo Bay, respondents are unable to confirm this guess without additional identifying information.  For example, this list of detainees also reflects that ISN 234, another detainee from Saudi Arabia, has a similar name — Khalid Mohammed Al Zaharni — and that ISN 204, another detainee from Saudi Arabia, is named — Said Ibrahim Ramzi Al Zahrani.  See Pets' Mot., Ex. D.  Notwithstanding respondents' challenge to the authorization of the petition filed on behalf of Mohammed Zahrani, therefore, until counsel for petitioners provide respondents with additional identifying information about this petitioner that will enable the Department of Defense to confirm his identity, respondents are unable to provide counsel access to whichever of these detainees may be the purported petitioner in this case.  Counsel certainly are not entitled merely to choose one of the detainees without appropriate evidentiary support or explanation.

[2]  Respondents opposed entry of the Protective Order because the Detainee Treatment Act of 2005 withdrew the Court's jurisdiction to grant the relief requested by petitioners, and also because petitioners had not yet demonstrated why the petitions in this case, not directly authorized by three of the putative detainees at Guantanamo Bay for whom habeas relief is sought, but instead brought by other detainees claiming to act as their "next friends," should not be dismissed for lack of proper next friend standing.  See Resps' Opp. to Mot. for Protective Order (dkt. no. 9).

<u>See</u> Protective Order and Procedures for Counsel Access to Petitioners at the United States Naval

Base in Guantanamo Bay, Cuba (dkt. no. 15).  The first two paragraphs of the Protective Order

set forth its premises, function, and scope:

> 1.     This case likely involves classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know."  This case may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.

> 2.     The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in this case, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with this case, including the privilege team as defined in Exhibit A.

<u>Id.</u>, ¶¶ 1, 2.

To serve this overarching function of "prevent[ing] the unauthorized disclosure or

dissemination of classified national security information and other protected information," <u>id.</u> at

1, the Protective Order further provides that "*Petitioners' counsel* are bound by the terms and

conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S.

Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents

brought into and out of counsel meetings, attached hereto as Exhibit A."  <u>Id.</u>, ¶ 6 (emphasis

added).  Moreover, "[t]his Protective Order specifically incorporates by reference all terms and

conditions established in the procedures contained in Exhibit A *to the extent they place*

*limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information*." Id. (emphasis added).

The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and limitations for habeas counsel's access to properly represented detainees and sets out procedures and requirements for the handling of information obtained from and delivered to detainees. For example, it requires that visiting counsel obtain a security clearance, see id., Ex. A, § III.A, and must sign an affirmation acknowledging his or her agreement to comply with the counsel access procedures. See id., Ex. A, § III.B. Further, it provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." Id., Ex. A, § III.C.1. In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees. In a proper "next friend" case, because the detainee "remains the real party in interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the access procedures further require a second, subsequent type of authorization, directly from the detainee, once counsel in a proper next friend case is provided access to the detainee.[3] See Protective Order, Ex. A, § III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as

_____

[3] This two-layer requirement regarding counsel's authority to bring and then maintain the lawsuit was appropriately established in light of the fact that the Guantanamo habeas cases pending at the time the access procedures were negotiated and established were uniformly "next friend" cases.

soon as practicable and in any event no later than ten (10) days after the conclusion of a second

visit with a detainee").

Upon entry of the Protective Order in this case, and after being placed on notice of

respondents' challenge to the authorization of the petitions purportedly filed on behalf of

petitioners Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani, counsel for petitioners

contacted respondents' counsel to request a meeting with petitioners in this case and three

petitioners in other habeas cases handled by counsel for the week of June 5, 2006. See Pets'

Motion, Ex. A, Affidavit of Jeffrey D. Colman, ¶¶ 4-5. Although at the time of the initial contact

counsel for respondents informed petitioners' counsel that their requested dates tentatively

looked available based on the schedule of counsel visits at Guantanamo Bay at that time, counsel

were informed, per standard practice with respect to counsel visit requests in the Guantanamo

habeas litigation, that they needed to submit a formal visit request form and that the scheduling

of the visit was subject to the approval of authorities at Guantanamo. Such approval is necessary

because the dates and other logistics of any visit, including lodging of counsel and interpreters

and movements of detainees involved in visits from their normal detention areas to counsel

meeting facilities, understandably are subject to and must be coordinated with other operational

needs of the military facility and those associated with military commission matters and with any

other habeas counsel visits. Counsel submitted the visit request form, encompassing almost a

week of visits and involving four attorneys, two interpreters, and eight detainees. Counsel for

respondents did not notify counsel for petitioners that their requested visits and dates had been

approved by Guantanamo Bay, nor have they been approved at this time. Further, on May 9,

2006, during a conference call with Judge Roberts's law clerk, and again on May 10, 2006, via e-

mail, counsel for respondents reminded counsel for petitioners that no formal approval of the

visit had issued.  Respondents' counsel also reminded petitioners' counsel that, pursuant to the

Protective Order, the petition in this case filed purportedly on behalf of Bandar Al Jaabir, Saad

Al Qahtaani, and Mohammed Zahrani (if he can be identified) had yet to be properly authorized

— either through direct authorization by these detainees, or by establishing proper next friend

standing of the putative next friend petitioners under Whitmore v. Arkansas, 495 U.S. 149

(1990).  See Pets' Motion, Ex. A, Affidavit of Jeffrey D. Colman ¶¶ 4-5.  Thus, pursuant to the

Protective Order, respondents would not permit counsel to visit petitioners Bandar Al Jaabir,

Saad Al Qahtaani, and the yet-to-be-identified Mohammed Zahrani at Guantanamo Bay until

sufficient evidence of counsel's authority to represent petitioners is provided.

## ARGUMENT

I.    **The Detainee Treatment Act of 2005 Withdraws District Court Jurisdiction to Grant the Relief Requested by Petitioners.**

On December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X,

119 Stat. 2680 ("the Act"), became law.  The Act, among other things, amends 28 U.S.C. § 2241

to remove court jurisdiction to hear or consider applications for writs of *habeas corpus* and other

actions brought in this Court by or on behalf of aliens detained at Guantanamo Bay, Cuba.

Section 1005(e)(1) of the Act amends 28 U.S.C. § 2241 to provide that "no court, justice, or

judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by

the Department of Defense at Guantanamo, or (2) any other action relating to any aspect of the

detention of such aliens.  In addition, the Act creates an exclusive review mechanism in the D.C.

Circuit to address the validity of the detention of such aliens held as enemy combatants;

section 1005(e)(2) of the Act states that the D.C. Circuit "shall have exclusive jurisdiction to

determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review. Section 1005(e)(1), which eliminates the jurisdiction of the courts to consider habeas and other actions brought by Guantanamo detainees, was made immediately effective without reservation for pending cases, and section 1005(e)(2), which establishes the exclusive review mechanism in the D.C. Circuit, was made expressly applicable to pending cases. Id. § 1005(h). In light of the statutory withdrawal of this Court's jurisdiction, and the creation of an exclusive review mechanism in the D.C. Circuit, the Court has no jurisdictional basis to order the relief requested by petitioners.

The effect of the Act was addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C. Circuit,[4] and our understanding is that it is the sense of the Court that it wishes to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before deciding any pending motions. In light of this and given the new, statutory withdrawal of the Court's jurisdiction, at a minimum a stay of all proceedings in this case, including with respect to petitioners' request for relief, is appropriate pending the resolution of the effect of the Act.[5] Indeed, because the Act vests "exclusive" jurisdiction in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly

---

[4] Oral argument before the D.C. Circuit was held on March 22, 2006.

[5] In this vein, four other Judges of the Court have recently entered orders in Guantanamo detainee habeas cases pending before them denying without prejudice or holding in abeyance all pending motions and staying "all action" in the cases pending resolution of the effect of the Act. See January 11, 2006 Order in Gherebi v. Bush, No. 04-CV-1164 (RBW), et al.; January 27, 2006 Order in Begg v. Bush, No. 04-CV-1137 (RMC), et al.; March 16, 2006 Order in Anam v. Bush, No. 04-CV-1194 (HHK), et al.; March 31, 2006 Order in Ahmed Doe v. Bush, No. 05-CV-1458 (ESH), et al.

detained as an enemy combatant," id. § 1005(e)(1), it would be inappropriate for the Court to order relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction. See Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).[6]

Furthermore, as explained infra § II, the requested relief in this matter is not merely for enforcement of an extant court order. The Protective Order regime in this case does not itself require or compel a counsel visit; rather, to award petitioners the relief they are requesting, the Court would be asserting jurisdiction and authority independent of the Protective Order to order a visit or grant access to a detainee. Such an assertion of jurisdiction would be improper in light of the Detainee Treatment Act's withdrawal of habeas jurisdiction of this Court and investment of exclusive jurisdiction in the Court of Appeals, and respondents' argument in this regard is in no way immaterial or premature. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and

---

[6] Respondents previously intended to file a motion to dismiss this case based upon the Act's withdrawal of the Court's jurisdiction, see Notice of Supplemental Authority (dkt. no. 3), but refrained from doing so when they were informed that the sense of the Court was to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding further in the Guantanamo habeas cases. During this interim period, respondents have permitted counsel visits and other privileged access to properly represented detainees in cases where the Protective Order had already been entered, and its requirements satisfied by counsel, pending a decision from the D.C. Circuit. Once the Act's withdrawal of the Court's jurisdiction became effective, however, respondents have consistently opposed entry of the Protective Order in cases where it had not already been entered. In any event, respondents' actions in other Guantanamo habeas cases cannot be construed as a waiver or concession of jurisdiction that permits the Court to order counsel access in this case. See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived").

when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

II.     **Notwithstanding the Act's Withdrawal of the Court's Jurisdiction to Grant the Relief Requested By Petitioners, Petitioners' Request to Meet With Three of the Petitioners Should Be Denied Because Sufficient Evidence of Counsel's Authority to Represent Those Detainees is Lacking and the Protective Order Does Not and Cannot Require Respondents to Permit a Visit in Such Circumstances.**

Notwithstanding the Act's withdrawal of district court jurisdiction in this case, counsel's request for access to Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani should be denied because respondents have not acted contrary to the Protective Order and accompanying counsel access procedures in declining to schedule a visit with these petitioners. First, as explained supra, the primary purpose of the access procedures — which are subsidiary to a Protective Order preventing unauthorized disclosure of classified or protected information, and which are incorporated into the Protective Order "to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information," Protective Order, ¶ 6 — is to set certain terms, conditions and limitations for habeas counsel's access to properly represented detainees. Whether some other authority aside from the access procedures would entitle counsel to visit a properly represented petitioner at Guantanamo, the access procedures do not require respondents to permit a visit by counsel with any particular petitioner in this case. While the access procedures certainly operate with the assumption that counsel visits will occur in that they set the terms and procedures applicable to any such visits, they do not themselves order respondents to provide such visits on demand of counsel in the first place. The access procedures do not order or direct a counsel visit, and petitioners therefore cannot demonstrate a clear violation of the Protective Order in this regard.

- 10 -

Second, respondents are acting appropriately and consistently with the access procedures in deferring the scheduling of a counsel visit to Guantanamo Bay until counsel provide respondents with sufficient evidence of their authority to represent Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani. As explained supra, the access procedures require two types of authorizations of representation from counsel. Initially, "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." See Protective Order, Ex. A, § III.C.1. In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of proper "next friends" who have filed petitions on behalf of detainees, demonstrating that the requirements established by the Supreme Court for next friend standing are met. See infra. Assuming such evidence is produced, and subject to other requirements of the Protective Order and access procedures, in next friend cases, the access procedures further require a second type of authorization, directly from the detainee, once counsel is provided access to the detainee. See id. § III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee."). In this case, counsel for petitioners have yet to provide respondents with appropriate evidence of their authority to represent petitioners Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani. Therefore, respondents acted consistently with the Protective Order in declining to permit counsel to visit these petitioners until such evidence of authority, a prerequisite to being granted access to detainees at Guantanamo Bay, is provided to the government.

Further, given that this case was filed through other detainees acting as putative next friends, and not directly authorized by detainees Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani, respondents are challenging the standing of these so-called "next friends" in this case, making these petitions jurisdictionally improper.[7]  See Resps' Opp. to Pets' Mot. for Entry of Protective Order.  These next friend petitioners — Jamal Kiyemba, Omar Deghayes and Sami Muhyideen — should be required to establish proper next friend status and justify the exercise of the Court's jurisdiction over these petitions.  See Whitmore v. Arkansas, 495 U.S. 149, 163 (1990) ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another.").  To do so, they must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore: (1) they must demonstrate that the detainees on whose behalf they claim to file a petition for writ of *habeas corpus* cannot challenge the legality of their detention themselves; and (2) they must have a significant relationship with these detainees in order to demonstrate that they are truly dedicated to their best interests.  Id. at 163-64.  Petitioners have not yet established that Jamal Kiyemba, Omar Deghayes and Sami Muhyideen satisfy these requirements.  See Resps' Opp. to Pets' Mot. for

---

[7]  Petitioners suggest that the Court rejected respondents' challenge to next friend standing in this case when it granted petitioners' motion for entry of the Protective Order.  See Pets' Mot. at 4 ("Your Honor's Minute Order and the Protective Order make no reservations regarding the authorization or next friend status of any Petitioner.").  Given the serious jurisdictional issues surrounding this case, however, it is difficult to accept that the Court's Minute Order, which simply entered the Protective Order in this case and did not address the arguments raised in respondents' memorandum in opposition, operates as a substantive rejection of respondents' jurisdictional objections.  In any event, as explained supra, now that the Protective Order has been entered in this case, respondents are acting appropriately and consistently with the access procedures in deferring the scheduling of a counsel visit to Guantanamo Bay until counsel provide respondents with sufficient evidence of their authority to represent Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani.

Entry of the Protective Order at 3-13.  If petitioners cannot demonstrate that these detainees meet the <u>Whitmore</u> requirements for next friend standing, the Court cannot exercise jurisdiction over the petitions, and they must be dismissed.  Thus, because respondents dispute whether this case was authorized by legitimate next friends, respondents are acting consistent with the access procedures in deferring scheduling of a counsel visit pending appropriate "evidence of . . . authority to represent the detainee," <u>i.e.</u>, authorization by a next friend who satisfies the requirements of <u>Whitmore v. Arkansas</u>, 495 U.S. at 163-64.

In support of their position, petitioners rely on Magistrate Judge Kay's March 21, 2006 Memorandum Opinion and Order, and Judge Roberts's April 28, 2006 Memorandum Opinion and Order in <u>Adem v. Bush</u>, No. 05-CV-0723 (RWR).  <u>See</u> Pet's Mot. at 4.  The interpretation of the Protective Order set forth in these opinions raises significant interpretive and also jurisdictional issues – jurisdictional issues relating to the effect of the Detainee Treatment Act of 2005, as well as grave jurisdictional issues independent of the Act.  Respondents addressed these serious questions in Respondents' Motion for Stay and Reconsideration of Magistrate Judge's Order and Opinion Docketed on March 21, 2006, which is attached and is incorporated herein. <u>See</u> <u>Adem v. Bush</u>, No. 05-CV-0723 (RWR) (dkt. no. 38) (attached, with motion exhibits 3-5, as Exhibit A).[8]  In sum (and as more fully explained in respondents' attached motion in <u>Adem</u>), the interpretation of the Protective Order reflected in <u>Adem</u> is inconsistent with the history and context of the language of the Protective Order as it was developed in the Guantanamo habeas cases under Senior Judge Joyce Hens Green, <u>see</u> <u>id.</u> at 25-30, cases coordinated pursuant to the

_____

[8] Respondents are presently considering their options regarding appeal or mandamus of the Court's decision in <u>Adem</u>.

order and direction of the Court as a whole, including through a September 15, 2004 Resolution

of the Executive Session – coordination in which this Court participated at the time by

transferring then-pending Guantanamo cases to Judge Green for handling consistent with the

Court's orders.  It is unreasonable in such circumstances for the Court to interpret the Protective

Order inconsistent with that development and long-standing practice, especially in light of the

Detainee Treatment Act and the previously expressed sense of the Court to defer action in the

Guantanamo habeas cases pending guidance from the Court of Appeals on the jurisdictional

issue.  Further, even aside from the Detainee Treatment Act, the interpretation of the Protective

Order reflected in Adem results in the extra-legal assertion of jurisdiction by the Court

inconsistent with the habeas statute, 28 U.S.C. § 2242, which requires that (1) the individual who

is seeking habeas relief must sign and verify the petition, i.e., the petition must be directly

authorized; or (2) the petition must be signed and verified by another person acting on that

individual's behalf – a "next friend" – who satisfies certain requirements per Whitmore in order

to properly serve in this capacity.  Neither of these requirements need be satisfied under the

interpretation of the Protective Order reflected in Adem, which also ignores respondents' efforts

to provide reasonable mechanisms for detainees to contact the Court or counsel directly.  The

interpretation of the Protective Order in Adem also raises significant separation of powers issues

by requiring respondents to provide direct, privileged access to wartime detainees in a military

detention facility by counsel merely purporting to represent a detainee, without any showing by

counsel of proof of appropriate authority to represent the detainee directly or through a next

friend meeting appropriate standing requirements.  Such an arrangement flies in the face of

fundamental standing and jurisdictional concepts in the law of *habeas corpus*.

Given the serious interpretive and jurisdictional questions raised in the Adem decision, and for the reasons set forth in Exhibit A attached hereto and incorporated herein, this Court should not apply the interpretation of the Protective Order set forth in Adem to this case.

In addition, the Court should not apply its reasoning in Adem to this case because the authorizations submitted in this case are distinguishable from the authorization submitted in support of the petition filed in Adem. Relying on a sworn declaration by detainee Bisher Al-Rawi, the Court in Adem determined that the detainee on whose behalf habeas relief is sought in that case "specifically requested that [Al Rawi] try to get him an attorney." Adem v. Bush, No. 05-CV-0723 (RWR) (dkt. no. 36), at 3. Based on this representation, the Court concluded that Bisher Al-Rawi was not a "'next friend' in the traditional sense, but [was] simply passing on another detainee's request for help." Id. at 10. In this case, however, the putative next friend petitioners submitted boilerplate "authorizations" in which they claim that they understand what it means to act as a "next friend," and that they believe that the multiple detainees on whose behalf they claim to seek habeas relief want legal representation to challenge their detention, without stating any legitimate basis for this belief beyond the fact that they have also been detained at Guantanamo Bay. See, e.g., Petition, Ex. B (stating, "the following people want lawyers and want me alternatively to act as their next friend . . ." without explaining the basis for this knowledge).[9] Without specific information regarding the circumstances of how these purported next friends became aware that other detainees wanted or requested legal

---

[9] Although the authorization submitted by detainee Omar Deghayes on behalf of unidentified petitioner Mohammed Zahrani claims that a dozen detainees "have expressed the desire to have the legal assistance of counsel," Petition, Ex. D, this general form language does not rise to the level of specificity that the Court counted as sufficient direct authorization in Adem.

representation, these "authorizations" cannot be reasonably construed as "passing on another detainee's request for help," which was the foundation of the Court's decision in <u>Adem</u>.[10]  Thus, because the facts in this case are distinguishable from those in <u>Adem</u>, and given the serious jurisdictional questions raised by the Court's decision in <u>Adem</u>, the Court should not apply its decision in <u>Adem</u> to the deficient petitions in this case.

**III.  Petitioners' Motion Should Be Denied Because the Visit They Seek Has Not Been Approved by Guantanamo Authorities.**

As noted above, upon entry of the Protective Order in this case, and after being placed on notice of respondents' challenge to the authorization of the petitions purportedly filed on behalf of petitioners Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani, counsel for petitioners contacted respondents' counsel to request a meeting with petitioners in this case and three petitioners in other habeas cases for the week of June 5, 2006.  <u>See</u> Pets' Motion, Ex. A, Affidavit of Jeffrey D. Colman, ¶¶ 4-5.  Although at the time of the initial contact counsel for respondents informed petitioners' counsel that their requested dates tentatively looked available based on the schedule of counsel visits at Guantanamo Bay at that time, counsel were informed, per standard practice with respect to counsel visit requests in the Guantanamo habeas litigation, that they needed to submit a formal visit request form and that the scheduling of the visit was subject to the approval of authorities at Guantanamo.  Such approval is necessary because the dates and other logistics of any visit, including lodging of counsel and interpreters and

---

[10]  The insufficiency of the "authorizations" is also highlighted by the lack of adequate identifying information withe respect to petitioner Zahrani.  <u>See</u> <u>supra</u> note 1.  Further, petitioners' counsel should not be permitted merely to choose from a multiple choice list a detainee they may think is the Mr. Zahrani at issue in the "authorization" without convincing evidence regarding the actual identity of that detainee.  <u>See</u> <u>supra</u> at 14 (noting separation of powers concerns with such an arrangement of compelled access to detainees).

movements of detainees involved in visits from their normal detention areas to counsel meeting facilities, understandably are subject to and must be coordinated with other operational needs of Guantanamo, of military commission matters, and any other habeas counsel visits. Counsel submitted the visit request form, encompassing almost a week of visits and involving four attorneys, two interpreters, and eight detainees. Counsel for respondents did not notify counsel for petitioners that their requested visits and dates had been approved by Guantanamo Bay, nor have they been approved at this time.

While formal approval remains pending, it appears at this time that of the six detainees that remain at Guantanamo with whom counsel have requested visits,[11] Guantanamo will be in a position to accommodate visits with three detainees, two in this case and one in another case, over four days. Again, this is not certain as Guantanamo is still considering whether this schedule can be fully accommodated in light of potential needs associated with military commission proceedings and other counsel visits. We hope to be able to update the Court and counsel at the hearing in this matter scheduled for May 23, 2006.

In light of this situation, the Court should not force a visit with the three additional detainees, involving double the number of detainees subject to likely approval for visits plus additional visit days at Guantanamo, over Guantanamo's objection. Even if the Court rejects the government's arguments as to why counsel are not and should not be permitted access to these detainees under the Protective Order, see supra § II, (and if petitioner Zahrani can be positively

---

[11] Two petitioner-detainees in other cases with whom counsel requested a visit were released from United States custody and transferred to the control of the Kingdom of Saudi Arabia yesterday. Counsel have been informed of this fact.

identified), petitioners are not entitled to a visit on specific dates merely because they requested it and without regard to legitimate scheduling and logistical concerns.

Given these circumstances, even if the Court rejects the government's arguments as to why counsel are not and should not be permitted access to these detainees, the Court should not order that any visit by counsel with the detainees be included in any visit the week of June 5. Respondents position is that any order requiring a visit with the disputed petitioners at issue should be stayed outright. This case has been pending for several months, and Congress has now by statute withdrawn the jurisdiction of this Court to proceed in the case. Maintenance of the status quo with respect to the three petitioners at issue through a stay of any order requiring a counsel visit pending guidance of the Court of Appeals on the Detainee Treatment Act would be appropriate in light of the potential harms to the government implicated by the absence of a stay, including with respect to jurisdictional and separation of powers concerns. At a minimum, however, the Court should not order that the detainees be included in any visit the week of June 5, when a subsequent visit can be arranged if appropriate.

## CONCLUSION

For these reasons, petitioners' emergency motion for order directing respondents to comply with the Protective order and to facilitate attorney meetings with petitioners should be denied.

Dated: May 19, 2006                        Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           DOUGLAS N. LETTER
                                           Terrorism Litigation Counsel

      /s/ Terry M. Henry

JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 514-4107
Fax: (202) 616-8470

Attorneys for Respondents