UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————
)
SALIM SAID, *et al.*,                    )
)
                Petitioners              )
)
        v.                               )         Civil Action No. 05-2384 (RWR)(AK)
)
GEORGE W. BUSH, *et al.*,                )
)
                Respondents.             )
———————————————————)

## MEMORANDUM ORDER

Pending before the Court is Petitioners' Emergency Motion for an Order Directing

Respondents to Comply with Protective Order and To Facilitate Attorney Meetings with

Petitioners (Mot.) [19], Respondents' Opposition (Opp'n) [21] and Petitioners' Reply [22].[1]

Petitioners claim that Respondents have refused to permit counsel access to Petitioners as

required by the Protective Order.  Petitioners further claim that Respondents denied counsel's

request to meet with their clients at the eleventh hour, after initially indicating that the meetings

would be permitted and allowing Petitioners' counsel to incur over $20,000 in non-refundable

airfare and translator fees.  Respondents insist that counsel provide written evidence of their

---

[1]On November 2, 2005, in recognition of "the need to promote orderly and efficient case management of all *habeas* petitions . . . relating to the rights of [Guantanamo] detainees," Judge Kessler, acting as Chair of the Calendar and Case Management Committee referred all motions "pertaining to interpretation or construction of any protective order" entered in any of the Guantanamo *habeas* cases to the undersigned for resolution pursuant to LCvR 72.2(a).  A party may seek reconsideration of a ruling by a magistrate judge within 10 days after being served with the magistrate judge's order.  LCvR 72.2(b). Rulings issued by a magistrate judge pursuant to LCvR 72.2 are reviewed by the district court judge, in this case Judge Roberts, on a "clearly erroneous" or "contrary to law" standard. LCvR 72.2(c).

authorization to represent the Petitioner before counsel will be allowed to meet with their clients.

Upon consideration of the parties' filings to the Court, Petitioners' Motion is hereby

GRANTED.

## Background

The Petitioners in this case are Saudi nationals presently held by the United States

Government at the Guantanamo Bay Naval Station.  They have been detained without charge and

held virtually incommunicado for more than four years.  Three of the five Petitioners in this case

- Saad Al Qahtaani, Bandar Al Jaabir, and Mohammed Zahrani - initiated their *habeas* petitions

through a fellow detainee acting as a 'next friend,' Sami Muhyideen, Jamal Kiyemba and Omar

Deghayes, respectively.  (Petition, Exs. B-D.)  Petitioners sought the help of fellow detainees in

initiating a challenge to the legality of their detention and in finding counsel, until such time as

the detainees could meet with their own counsel directly.  (*Id.*)

The "next friends" in this case - Muhyideen, Kiyemba and Deghayes - forwarded

Petitioners' names to their attorney, Clive Stafford Smith.  (*Id.*)  Smith then forwarded

Petitioners' names to the Center for Constitutional Rights, a national public interest organization

that has coordinated *pro bono* representation for the majority of Guantanamo detainees.

Attorneys with the law firm of Jenner & Block volunteered to represent Petitioners on a *pro bono*

basis and filed a *habeas* petition on their behalf on Dec. 13, 2005.

On March 15, 2006, Petitioners' filed a motion for entry of the Protective Order.[2]  (See

---

[2]In recognition of the security concerns attendant to the Guantanamo *habeas* cases, the
Protective Order sets procedures that counsel must follow in order to meet and communicate
with their clients.  The Protective Order was initially approved and entered by Judge Joyce Hens
Green in *In re Guantanamo Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), following intense

Dkt. No. 6.)  Respondents opposed entry of the Protective Order, in part on the grounds that

Muhyideen, Kiyemba and Deghayes lacked standing to file as 'next friends.'  (*See* Resp'ts' Mem.

in Opp'n to Pet'rs' Mot. for Entry of Protective Order at 3-4, March 30, 2006, Dkt. No. 9.)  On

April 12, 2006, Judge Roberts granted Petitioners' motion for entry of the Protective Order, over

Respondents' objection, in order "[t]o permit counsel access to petitioners."  *See* Minute Order

of April 12, 2006.

On April 13, 2006, immediately after receiving notice that the Protective Order had been

entered, counsel for Petitioners contacted one of Respondents' counsel, Andrew Warden, to find

out if a visit to Guantanamo could be accommodated for the week of June 5, 2006.  (Mot. at 2.)

Mr. Warden told Petitioners' counsel that the Guantanamo Bay schedule was clear for that week

and that "Jenner & Block attorneys should have no problem making the visits the week of June

5."  (*Id.*)  On April 18, counsel for Petitioners provided Respondents with the "Habeas Visitation

Coordination Sheets . . . specifically setting forth the requested dates and a schedule to meet with

each of the eight" detainees, including the three Petitioners at issue in this dispute.  (*Id.*)

Between April 18 and May 9, counsel for Petitioners also retained the services of two translators,

and booked tickets and hotel rooms, at a non-refundable cost of over $20,000.  (*Id.* at 2-3.)

According to Petitioners, "at no time between April 18 and May 9 did Respondents raise any

question about whether the planned June visit would be permitted."  (*Id.* at 3.)

On May 10, 2006, Respondents notified Petitioners' counsel that they "'cannot consent to

---

negotiation and litigation over its terms.  *See Adem v. Bush*, __ F. Supp. 2d __, 2006 WL 751309,
at *3-5 (D.D.C. March 21, 2006) (reviewing history of negotiation and entry of Protective
Order), *recons. denied*, No. 05-723, slip op., 2006 WL 1193853 (D.D.C. April 28, 2006).  It has
since been entered in the vast majority of Guantanamo *habeas* cases pending before the District
Court.

counsel meeting with petitioners Al Jaabir, Zahrani[3] . . . and Al Qahtaani' because those

Petitioners had not directly authorized the filing of their habeas petitions, and their purported

next friends . . . had not established proper standing." (*Id.*)  Petitioners now seek an order

compelling Respondents to permit them access to their clients, in part so they may obtain the

very authorization of representation that Respondents insist be provided prior to any visits.

### Analysis

I.      *Interpretation of the Protective Order*

The question presented to the Court is a narrow one, namely, whether a detainee's right to

meet with his counsel is conditioned on counsel providing direct, written "evidence of his or her

authority to represent the detainee" before a visit, or whether counsel may provide such evidence

after meeting with the detainee.  This question has been discussed at length in previous opinions,

which held that the Protective Order, by its plain terms, "manifestly does not require evidence of

authority to represent a detainee as a ***prerequisite*** to counsel meeting with a detainee." *See Adem*

*v. Bush*, __ F. Supp. 2d __, 2006 WL 751309, at \*9-11 (D.D.C. March 21, 2006), *recons. denied*,

No. 05-723, slip op., 2006 WL 1193853, at \*3-6 (D.D.C. April 28, 2006) (affirming magistrate

judge's opinion and rejecting government's argument that evidence of authority to represent a

detainee referred to a "two-step sequential showing"); *see also Kabir v. Bush*, No. 05-1704

(D.D.C. May 11, 2006) (Dkt. No. 33) (order granting motion to compel access to counsel).

The instant case is no different.  In fact, the question presented to the Court is identical to

the question presented in *Adem*.  The only difference between *Adem* and the instant case is that

---

[3]Respondents contend that they have not been able to identify Mohammed Zahrani as a
detainee at Guantanamo.  Petitioners have notified Respondents that they believe Zahrani's
Internment Serial Number ("ISN") is 713.

*Adem* was filed as a direct petition and the instant case was filed as a 'next friend' petition. The Protective Order, however, does not distinguish between cases filed by a 'next friend' and cases filed directly. *See Adem*, 2006 WL 751309, at *10-13 (rejecting government's argument that the Protective Order requires additional authorization solely for *habeas* petitions initiated through a 'next friend').

Respondents persist in arguing that the Protective Order implicitly distinguishes between direct petitions and 'next friend' petitions. (Opp'n at 5, 11.) According to Respondents, the Court may ignore the plain language of the Protective Order because in those cases filed through a next-friend, the phrase "evidence of [counsel's] authority to represent a detainee" was intended to refer to two separate showings of evidence: 1) authorization by the "next friend," and 2) "a second, subsequent type of authorization, directly from the detainee, once counsel in a proper next friend case is provided access to the detainee." (*Id.* at 5.) Upon receiving this "second, subsequent type of authorization," the Court would then convert the "next friend" petition into a direct petition.

This Court already rejected Respondents' implied "two-layer" theory of interpretation in *Adem v. Bush*, which was upheld by Judge Roberts. The Court will not repeat the entirely of that extensive discussion here. Briefly, Respondents' interpretation would require the Court to ignore the plain meaning of the text of the Protective Order and to flaunt the most basic rules of construction. *See Adem*, 2006 WL 751309, at *9-11, *reconsid. denied*, 2006 WL 1193853, at *4-6 (affirming magistrate judge's opinion and rejecting government's argument that evidence of authority to represent a detainee referred to a "two-step sequential showing"). The Court cannot infer a separate two-step requirement applicable solely to 'next friend' petitions out of thin air.

*See id.* at \*7-11 (interpreting protective order); *see also Armstrong v. Executive Office of the President*, 830 F. Supp. 19, 22 (D.D.C. 1993) ("[g]iving plain meaning to [the] language" of the protective order).

Respondents' argument is also belied by the fact that a "proper next friend petition" under *Whitmore v. Arkansas*, 495 U.S. 149, 161-66 (1990) would not need to be converted into a direct petition in order to be litigated. Respondents' theory is tantamount to arguing that unless Petitioners' counsel provides a "second, subsequent authorization, directly from the detainee," neither this court, nor any other court, may entertain even those "next friend" petitions that clearly meet the *Whitmore* standing doctrine. To the contrary, however, a "proper" next friend petition is sufficient by itself to prosecute a case without any additional evidence of authority directly from the real party in interest.

Indeed, as this Court explained in *Adem*, following the Supreme Court's decision in *Rasul* and the negotiation and entry of the Protective Order, the legal fiction of a "next friend" became largely irrelevant except as a mechanism for identifying those detainees who seek to challenge their detention in the first instance. *See Adem*, 2006 WL 751309, at \*3-5 (reviewing history of use of 'next friend' device in Guantanamo *habeas* cases). In those *habeas* cases filed since the creation and entry of the Protective Order, the detainees who initiate a *habeas* petition on behalf of a fellow detainee generally do not seek to serve procedurally as a "next friend" in the traditional sense, but are simply passing on another detainee's request for help, a fact that can be confirmed once counsel meets directly with the detainee. *See id.*, at \*4-5; *see also Hamily v. Bush*, No. 05-763 (Oct. 31, 2005) (Dkt. No. 19) (Order of J. Bates dismissing Shaker Aamer as next friend and substituting Adel Hamily as sole petitioner); *Zakirjan v. Bush*, No. 05-2053 (Dec.

12, 2005) (Dkt. No. 24) (Order of Oberdorfer, J. dismissing as moot government's "Motion to

Show Cause Why Case Should Not Be Dismissed for Lack of Proper 'Next Friend' Standing"

because detainee who was real party in interest authorized counsel to represent him directly);

*Muhammed v. Bush*, No. 05-2087 (Dec. 16, 2005) (Dkt. No. 17) (same); *Idris v. Bush*, No. 05-

1555 (Nov. 1, 2005) (Dkt. No. 8) (same).

As was the case in *Adem*, the alleged 'next friends' in this case are not seeking to serve as

next friends in the traditional sense, but are merely passing on another detainee's request for help

in challenging his detention.[4]  *See Adem*, 2006 WL 751309, at *3-7.   Notwithstanding

Petitioners' use of a 'next friend' to initiate the petition, Petitioners have provided prima facie

evidence that they ***personally*** authorized the challenge to the legality of their detention and

sought the assistance of counsel by communicating those requests through a fellow detainee.

Omar Deghayes, the detainee who communicated Mohammed Zahrani's request for counsel,

submitted a signed statement, witnessed by his attorney Clive Stafford Smith, listing the names

of twelve detainees who had personally "expressed the desire to have the assistance of counsel."

(Petition, Ex. D.)  Sami Muhyideen, the detainee who filed on behalf of Saad Al Qahtaani,

similarly submitted a signed statement, witnessed by his lawyer, stating that "the following

people want lawyers" and listing the names of five detainees, including their detainee

identification number, nationality and the language they spoke.  (Petition, Ex. B.)

Finally, Jamal Kiyemba, who filed on behalf of Petitioner Bandar Al Jaabir, submitted a

---

[4]This is not to say that Respondents' challenge to Petitioners' next friend standing will necessarily be moot.   Petitioners' challenge to their detention may ultimately need to proceed through a "next friend" if, for example, they are incapacitated or otherwise unable to personally verify their intent to challenge their detention within 10 days of a second visit.

signed statement listing the names of the detainees who had come to him seeking help, and

asserting that, "[i]ndependent of their reliance upon [him] as 'Next Friend,'" each of the named

detainees had a "specific desire for a lawyer and for a legal challenge to the illegality of their

detention by the United States of America." (Petition, Ex. C.)  Kiyemba lists the names of 27

detainees, their nationalities, the camps in which they are held, and for most, the languages they

speak.  In the margin by the name of one detainee, Kiyemba noted that he was "very ill." (*Id.*)

Respondents argue that the Court should deny Petitioners' request for a meeting with

their lawyers because the purported 'next friends' have not supplied sufficient information for the

Court to trust that the Petitioners in fact made such a request. (Opp'n at 15.)  Respondents

argument boils down to an assertion that the 'next friends' might be lying.[5]  However,

---

[5]Notably, one of the detainees listed by Kiyemba as wanting counsel is Dr. Abu
Muhammed, a/k/a Fethi Boucetta, a non-enemy combatant (NEC).  Respondents previously
challenged Kiyemba's standing to serve as Boucetta's 'next friend' and similarly prohibited
Boucetta from meeting with his counsel. (*See* Motion for Order to Show Cause, *Muhammed v.
Bush*, 05-2087, Nov. 18, 2005, Dkt. No. 8.)  Respondents made the exact same arguments in
Boucetta's case as they now make in opposition to allowing Petitioners access to their counsel.
Considering the circumstances under which Respondents' challenge to Kiyemba's next friend
standing was resolved, the implication that Petitioners' requests are not sincere rings somewhat
hollow.
      Respondents' challenge to Kiyemba's next friend standing was rendered moot when
Boucetta was able to communicate with counsel in person and confirm his desire for
representation purely by accident.  Susan Baker Manning, who is counsel for other non-enemy
combatant detainees, was in Guantanamo meeting with her clients. (*See* Decl. of Susan Baker
Manning, *attached as* Ex. A to Pet.'s Mem. in Opp'n to Mot. for an Order to Show Cause,
*Muhammed v. Bush*, No. 05-2087, Dec. 2, 2005, Dkt. No. 14).  During a break between meetings
with her clients, Boucetta approached Ms. Baker Manning and asked her for help finding a
lawyer. (*See id.*, ¶¶ 3-9.)  Upon learning that Boucetta had personally requested counsel, Judge
Oberdorfer dismissed Kiyemba as 'next friend' and converted the case into a direct petition. *See
Muhammed*, No. 05-2087 (Dec. 16, 2005) (Dkt. No. 17).
      Ms. Baker Manning was able to speak directly with Boucetta because he speaks passable
English and because he is an NEC being held in Camp Iguana, a fortuity virtually guaranteed not
to repeat itself.  In August of 2005, Respondents began housing non-enemy combatants detainees
in a separate detention facility called "Camp Iguana." (*See* Brigadier General Jay W. Hood Decl.

Respondents have provided no evidence to contradict the signed, witnessed statements that

Petitioners want to challenge their detention and that they asked Muhyiheen, Kiyemba and

Deghayes, respectively, to help them get a lawyer. *See Adem*, 2006 WL 1193853, at *3 (D.D.C.

April 28, 2006) (rejecting government's argument that petition should be dismissed for lack of

next friend standing where government provided no evidence to contradict prima facie evidence

that detainee desired to challenge his detention).

Respondents insist that, absent Petitioners' signatures on a form, the alleged lack of

proper next friend standing precludes this Court from further inquiring into the truth of

Petitioners' request to challenge their detention.[6] It is inconceivable that the Court's authority to

investigate Petitioners' request would be so constrained. Petitioners are "entitled to present the

facts surrounding their confinement to the Court. It is equally clear that the Court is authorized

to craft the procedures necessary to make this possible, in order that the Court might fully

consider Petitioners' challenge to their detention." *Al Odah v. United States*, 346 F. Supp. 2d 1,

---

¶ 5, *attached as* Ex. 1 to Resp'ts' Mem., *Qassim v. Bush*, 05-497, Aug. 8, 2005, Dkt. No. 27.)
Camp Iguana is a "communal living facility." (*Id.*) NEC detainees housed in Camp Iguana have
significantly greater freedom of movement than detainees held as enemy combatants. They have
a common bunk room, a recreation room and a recreation yard. (*Id.* ¶¶ 5-6.) There is a fence
around the facility and guards posted, but detainees in Camp Iguana are otherwise free to move
about the grounds within the confines of the Camp. (*Id.*) At the time, counsel meetings with
NEC detainees took place in Camp Iguana, which meant that Boucetta was able to walk up to
Ms. Baker Manning and personally ask her for help getting a lawyer, something detainees in
other parts of Guantanamo could never do. All counsel meetings, including NEC counsel
meetings, now take place in Camp Echo, a solitary confinement facility.

[6]Respondents assert that by allowing detainees to meet with their counsel in-person, the
Court ignores "respondents' efforts to provide reasonable mechanisms for detainees to contact
the Court or counsel directly" in compliance with *Rasul v. Bush*, 542 U.S. 466, 484 (2004).
(Opp'n at 14.) To the contrary, the Court is well aware of these efforts. Unfortunately, the steps
taken by Respondents to notify detainees of their right to contact counsel and the court have been
largely ineffective. *See Adem*, 2006 WL 751309 at *5-7 & nn.18-22.

7 (D.D.C. 2004). As Judge Roberts explained, not only does the plain language of the Protective

Order not require a showing of direct evidence of authorization to represent a detainee as a

prerequisite to an in-person meeting, but "[r]equiring a Guantanamo detainee to identify a

specific lawyer from among all the volunteer lawyers -- most of whom are unknown to the

detainee before a meeting -- is a meaningless exercise. It would be unconscionable to tether a

detainee's access to counsel to such an unworkable prerequisite." *Adem*, 2006 WL 1193853, at

\*7 (D.D.C. April 28, 2006).

The Protective Order remains in effect, and the Court has inherent power to enforce its

own lawful orders. *See Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006). Absent

evidence that Petitioners' requests are not genuine, they are entitled to meet with their lawyers.

II.      *Jurisdiction*

Respondents also contend that the Detainee Treatment Act of 2005 (the "DTA") divests

this Court of jurisdiction to decide the instant motion.[7]  The retroactive effect of the DTA is a

question presently pending before the D.C. Circuit and the Supreme Court.[8]  Respondents note

that "the sense of the Court was to await anticipated guidance from the D.C. Circuit regarding the

effect of the Act before proceeding further in the Guantanamo habeas cases." (Opp'n at 9 n.6.)

Allowing Petitioners to meet with their lawyers, however, is not the type of interim relief that

even remotely risks infringing on the Court of Appeals' possible exclusive jurisdiction. *Cf.*

---

[7]On December 30, 3005, President Bush signed into law the Detainee Treatment Act of
2005, Pub. L. No. 109-148, Tit. X, 119 Stat. 2680 (the "DTA"). Respondents argue that the DTA
divests the District Court of jurisdiction over the Guantanamo *habeas* petitions, including those
already filed prior to the DTA's passage.

[8]Oral argument before the D.C. Circuit was held on March 22, 2006, and before the
Supreme Court on March 28, 2006.

*Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 75, 78-79 (D.C. Cir.

1984).  The question of when, and under what circumstances the existing Protective Order

permits Petitioners to meet with their lawyers simply has no bearing on the question of which

Court has jurisdiction to review the merits of Petitioner's challenge to his detention.[9]  *See Adem*,

2006 WL 1193853, at *7-8.  Petitioners have a right to counsel under *Al Odah v. United States*,

346 F. Supp. 2d 1, 7 (D.D.C. 2004).  That right extends to the assistance of counsel in litigating

the very jurisdictional questions pending before the Court of Appeals and the Supreme Court.

Furthermore, it is well-settled that until such time as jurisdiction is determined not to

exist, the District Court has the authority to issues such orders as necessary to preserve its own

jurisdiction and to maintain the status quo.  *See United States v. United Mine Workers of*

*America*, 330 U.S. 258, 290-93 (1947).  The status quo includes the integrity of the Protective

Order, painstakingly negotiated by the parties and approved by the District Court, which remains

binding and in effect in those cases in which it has been entered.  "[A] protective order, like any

ongoing injunction, is always subject to the inherent power of the district court."  *Poliquin v.*

*Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *see also Armstrong v. Executive Office of*

*the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (recognizing courts' "inherent power to

enforce compliance with their lawful orders"); *Broderick v. Donaldson*, 437 F.3d 1226, 1234

(D.C. Cir. 2006) (same); *cf. Gambale v. Deutsche Bank, AG*, 377 F.3d 133, 140-41 (2d Cir.

2004) (recognizing court's jurisdiction to modify protective orders that remain in effect, even

---

[9]Presumably, counsel for Petitioners would also represent them in any proceedings before
the D.C. Circuit.  Thus, the need to resolve questions regarding the logistics of counsel access
will remain an issue, even if the D.C. Circuit and the Supreme Court determine that the DTA
applies to those *habeas* cases currently pending in the District Court.

after dismissal of the underlying litigation); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (same), *cert. denied, American Special Risk Ins. Co. v. Rohm & Haas Co.*, 498 U.S. 1073 (1991).   It would be untenable for the District Court to be put in a position where it is powerless to enforce its own protective order, presently in effect and over which it has continuing control.

The Protective Order  was entered in this case on April 12, 2006, several months after the passage of the DTA and over Respondents' objection, "to permit counsel access to petitioners." *See* Minute Order of April 12, 2006.   Therefore, it is hereby, this _23rd_ day of May, 2006

ORDERED that, pending approval (for scheduling and logistical purposes) of the requested visit dates by the naval base at Guantanamo Bay, Respondents shall comply with the Protective Order and allow counsel to meet with their clients Saad Al Qahtaani, Bandar Al Jaabir, and Mohammed Zahrani in person between June 5 and June 10, 2006, and it is

FURTHER ORDERED that, if the naval base at Guantanamo Bay determines that visits during the requested days cannot be accommodated for logistical and scheduling reasons, Respondents shall permit Petitioners' counsel to meet with them in person as soon as possible.

SO ORDERED.

```
_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE
```