IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| SALIM SAID, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-2384 (RWR) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, | ) | |
| *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**RESPONDENTS' EMERGENCY MOTION FOR STAY AND RECONSIDERATION
OF MAGISTRATE JUDGE'S MAY 23, 2006 MEMORANDUM ORDER**

Respondents hereby object to and seek reconsideration of Magistrate Judge Alan Kay's

May 23, 2006 Memorandum Order (dkt. no. 23) ("Mem. Order")  requiring that respondents

permit counsel to meet during the week of June 5, 2006, with three individuals detained by the

Department of Defense ("DoD") at the United States Naval Base in Guantanamo Bay, Cuba, with

respect to whom the jurisdictional prerequisites for a *habeas* petition have not been established.

Respondents also seek an immediate stay of the Order pending resolution of this motion to

reconsider.  As explained below, the Magistrate Judge's Order is clearly erroneous and contrary

to law for several reasons.

As an initial matter, the Detainee Treatment Act of 2005 withdraws jurisdiction from the

Court to grant the relief the Order provides.  Consequently, the Magistrate Judge has no legal

authority to issue the prospective relief ordered in this case, even with respect to counsel access

issues.  Moreover, the Magistrate Judge clearly erred in concluding that the governing protective

order and counsel access procedures in the Guantanamo *habeas* litigation require that counsel be

permitted access to detainees at Guantanamo without establishing that the jurisdictional requirements for a *habeas* petition have been met in this case.  To the contrary, the language, structure, and history of the counsel access procedures evidence that the Protective Order and Revised Procedures for Counsel Access to Detainees annexed thereto do not require respondents to permit a visit by counsel with any particular petitioner in this case.  While the Access Procedures operate under the assumption of counsel visits occurring in that they set certain terms, conditions and limitations applicable to any such visits, they do not order respondents to provide a visit on demand of counsel in the first place.  Also, another provision of the Protective Order confirms that respondents acted appropriately in declining to schedule a visit with the three detainees where counsel has not yet provided appropriate evidence of his or her authority to represent the detainees through a next friend meeting standing requirements articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S. 149 (1990).  The Magistrate Judge clearly erred in the contrary interpretation of the Access Procedures.  Further, in reaching his conclusion, the Magistrate Judge created an extra-legal scheme for establishing jurisdiction in the Guantanamo *habeas* cases that is contrary to law, including the plain terms of the *habeas* statute and the well-established jurisprudence regarding next friend standing.  Also, by requiring the government to provide direct, privileged access to wartime detainees in a military detention facility for counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend satisfying appropriate standing requirements, the Magistrate Judge's Order offends separation of powers.

In addition, while this Court previously upheld a similar result in another case, <u>Adem v. Bush</u>, 2006 WL 1193853 (Apr. 28, 2006) (dkt. no. 42), the Magistrate Judge erroneously rejected clear differences between this case and <u>Adem</u> that distinguish the current case.

For these reasons, as more fully explained below, respondents move this Court for an immediate stay of the Magistrate Judge's Order to the extent it requires action by respondents pending the Court's resolution of respondents' motion for reconsideration.  Further, because the Magistrate Judge's Order is clearly erroneous and contrary to law, the Order should be vacated and set aside forthwith.

## **BACKGROUND**

On December 13, 2005, counsel for petitioners filed a petition for writ of *habeas corpus* on behalf of five individuals alleged to be detained at Guantanamo Bay.  <u>See</u> Petition (dkt. no. 1). As to three of these individuals — Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani[1] — the petition was submitted through fellow detainees acting as putative next friends to these individuals.  <u>See</u> <u>id.</u>  On March 15, 2006, petitioners filed a motion for entry in this case of the

---

[1]  The Department of Defense has been unable to identify petitioner Mohammed Zahrani as a detainee at Guantanamo Bay.  Although petitioners' counsel maintain that they "believe his Internment Serial Number ("ISN") is 713 . . . based on the list of Guantanamo Bay prisoners produced by the government on April 19, 2006, which identifies Muhammed Murdi Issa Al Zahrani as prisoner 713 from Saudi Arabia," <u>see</u> dkt. no. 19 at 3 n.2, given the similar names and aliases among the detainee population at Guantanamo Bay, respondents are unable to confirm this guess without additional identifying information.  For example, this list of detainees also reflects that ISN 234, another detainee from Saudi Arabia, has a similar name — Khalid Mohammed Al Zaharni — and that ISN 204, another detainee from Saudi Arabia, is named — Said Ibrahim Ramzi Al Zahrani.  <u>See</u> dkt. no. 19, Ex. D.  Notwithstanding respondents' challenge to the authorization of the petition filed on behalf of Mohammed Zahrani, respondents should not be required to provide counsel access to whichever of these detainees may be the purported petitioner in this case.  Counsel certainly should not be entitled merely to choose one of the detainees without appropriate evidentiary support or explanation.

Protective Order that has been entered in many other Guantanamo detainee cases pending before other Judges of this Court, in this case.  See Pets' Mot. for Protective Order (dkt. no. 6).  On April 12, 2006, the Court issued a Minute Order that entered the Protective Order in this case.[2]  See Protective Order and Procedures for Counsel Access to Petitioners at the United States Naval Base in Guantanamo Bay, Cuba (dkt. no. 15).  The first two paragraphs of the Protective Order set forth its premises, function, and scope:

> 1.    This case likely involves classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know."  This case may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.
>
> 2.    The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in this case, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with this case, including the privilege team as defined in Exhibit A.

Id., ¶¶ 1, 2.

To serve this overarching function of "prevent[ing] the unauthorized disclosure or dissemination of classified national security information and other protected information," id. at

---

[2]  Respondents opposed entry of the Protective Order because the Detainee Treatment Act of 2005 withdrew the Court's jurisdiction to grant the relief requested by petitioners, and also because petitioners had not yet demonstrated why the petitions in this case, not directly authorized by three of the putative detainees at Guantanamo Bay for whom habeas relief is sought, but instead brought by other detainees claiming to act as their "next friends," should not be dismissed for lack of proper next friend standing.  See Resps' Opp. to Mot. for Protective Order (dkt. no. 9).

1, the Protective Order further provides that "*Petitioners' counsel* are bound by the terms and conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S. Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents brought into and out of counsel meetings, attached hereto as Exhibit A."  Id., ¶ 6 (emphasis added).  Moreover, "[t]his Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in Exhibit A *to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information*."  Id. (emphasis added).

The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A ("Access Procedures"), in turn, set certain terms, conditions, and limitations for habeas counsel's access to properly represented detainees and sets out procedures and requirements for the handling of information obtained from and delivered to detainees.  For example, it requires that visiting counsel obtain a security clearance, see id., Ex. A, § III.A, and must sign an affirmation acknowledging his or her agreement to comply with the counsel access procedures.  See id., Ex. A, § III.B.  Further, it provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee."  Id., Ex. A, § III.C.1.  In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees.  In a proper "next friend" case, because the detainee "remains the real party in interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the access procedures further require a second, subsequent type of authorization, directly from the

detainee, once counsel in a proper next friend case is provided access to the detainee.[3]  See Protective Order, Ex. A, § III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee").

Upon entry of the Protective Order in this case, and after being placed on notice of respondents' challenge to the next friend standing with respect to the petitions purportedly filed on behalf of petitioners Bandar Al Jaabir, Saad Al Qahtaani, and the yet-to-be-firmly-identified Mohammed Zahrani, see supra note 2, counsel for petitioners contacted respondents' counsel to request a meeting with petitioners in this case and three petitioners in other habeas cases handled by counsel for the week of June 5, 2006.  Respondents declined to permit the visit to the extent it involved the three detainees that  were the subject of respondents' challenge.  On May 11, 2006, petitioners' counsel filed a motion to compel the requested June visit, including with the three detainees subject to respondents' challenge.  See dkt. no. 19.  Respondents opposed the motion, raising all of the issues raised in this motion for reconsideration.  See dkt. no. 21.

On May 23, 2006, Magistrate Judge Kay issued a Memorandum Order essentially granting petitioners' motion.[4]  The Magistrate Judge concluded that this case was "no different"

_____

[3]  This two-layer requirement regarding counsel's authority to bring and then maintain the lawsuit was appropriately established in light of the fact that the Guantanamo habeas cases pending at the time the access procedures were negotiated and established were uniformly "next friend" cases.

[4]  The Memorandum Order requires respondents to permit counsel to meet with Bandar Al Jaabir, Saad Al Qahtaani, and Mohammed Zahrani (who petitioners' counsel have guessed is detainee ISN 713, but see supra note 1), the week of June 5, 2006, or as soon as possible thereafter if the visit is not logistically supportable.  Mem. Order at 12.  Because of the cancellation of military commission proceedings previously scheduled at Guantanamo for that week, it appears the visit may be logistically supportable, although we are awaiting final word on

than the recent case, <u>Adem v. Bush</u>, 2006 WL 751309 (Mar. 21, 2006) (dkt. no. 36), <u>recons.</u> <u>denied</u>, 2006 WL 1193853 (Apr. 28, 2006) (dkt. no. 42), and applied the reasoning in that case to reach the same result in this case, despite the fact that <u>Adem</u> was brought as a direct petition, whereas this case is brought as a next friend petition in which next friend standing requirements under <u>Whitmore</u> have not been met.  At bottom, the Memorandum Order required the government to provide direct, privileged access to wartime detainees in a military detention facility for counsel merely purporting to represent the detainees, one of whom is not firmly identified, without any showing by counsel of proof of appropriate authority to represent the detainees directly or through a next friend satisfying appropriate standing requirements.  <u>See</u> Mem. Order at 4-12.

Respondents now timely move for reconsideration and a stay of the Magistrate Judge's Memorandum Order.  <u>See</u> FED. R. CIV. P. 72(a); LCvR 72.2(b).

## ARGUMENT

Under Federal Rule of Civil Procedure 72(a), when a nondispositive, pretrial matter is referred to a Magistrate Judge for determination, a party may object to the Magistrate Judge's ruling, and "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  FED. R. CIV. P. 72(a); <u>see</u> 28 U.S.C. § 636(b)(1)(A).  Local Civil Rule 72.2(c) similarly provides that upon a motion for reconsideration, a Judge may modify or set aside any portion of a Magistrate Judge's order "found to be clearly erroneous or contrary to law."  LCvR 72.2(c).

---

that issue from authorities at Guantanamo.

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Campbell v. Microsoft Corp., No. 04-CV-2060 (RWR), 2006 WL 463263 at *2 (D.D.C. Feb. 24, 2006) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Questions of law are reviewed de novo under the "contrary to law" standard. See Weekoty v. United States, 30 F. Supp. 2d 1343, 1344 (D.N.M. 1998). The Court, "therefore, owes no deference to the magistrate [judge]'s legal conclusions[,] and it may substitute its own judgment on questions of law." Id.

Respondents respectfully seek reconsideration of the Memorandum Order in this case on essentially the same grounds as argued in Adem.[5] Those grounds are summarized below, along with additional points that should be considered in the circumstances of this particular case. For the reasons explained below, the May 23 Memorandum Order in this case should be set aside as clearly erroneous and contrary to law.

## I. The Magistrate Judge's Order is Contrary to Law Because The Detainee Treatment Act of 2005 Withdraws District Court Jurisdiction To Provide The Relief Called For In The Order.

_____The Magistrate Judge's Order is contrary to law, first of all, because the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), withdraws jurisdiction from the Court to grant the relief the Order provides. The Act, among other things, amends 28 U.S.C. § 2241 to remove court jurisdiction to hear or consider applications for writs of _habeas corpus_ and other actions brought in this Court by or on behalf of aliens detained at

---

[5] See Motion for Reconsideration filed in Adem v. Bush, No. 05-CV-0723 (RWR) (dkt. no. 38) (attached, with motion exhibits 3-5, as Exhibit A). Respondents are presently considering their options regarding appeal or mandamus of the Court's decision in Adem.

Guantanamo Bay, Cuba.  Section 1005(e)(1) of the Act amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the Department of Defense at Guantanamo, or (2) any other action relating to any aspect of the detention of such aliens.  In addition, the Act creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens held as enemy combatants; section 1005(e)(2) of the Act states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.  Section 1005(e)(1), which eliminates the jurisdiction of the courts to consider habeas and other actions brought by Guantanamo detainees, was made immediately effective without reservation for pending cases, and section 1005(e)(2), which establishes the exclusive review mechanism in the D.C. Circuit, was made expressly applicable to pending cases.  Id. § 1005(h).  In light of the statutory withdrawal of this Court's jurisdiction, and the creation of an exclusive review mechanism in the D.C. Circuit, the Court has no jurisdictional basis to order the relief requested by petitioners.

The effect of the Act was addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C. Circuit,[6] and our understanding is that it is the sense of the Court that it wishes to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before deciding any pending motions.  In light of this and given the new, statutory withdrawal of the Court's jurisdiction, at a minimum a stay of all proceedings in this case, including with respect to petitioners' request for relief, is appropriate pending the resolution of the effect of the

---

[6]  Oral argument before the D.C. Circuit was held on March 22, 2006.

Act.[7]  Indeed, because the Act vests "exclusive" jurisdiction in the D.C. Circuit "to determine the

validity of any final decision of a Combatant Status Review Tribunal that an alien is properly

detained as an enemy combatant," id. § 1005(e)(1), it would be inappropriate for the Court to

order relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction.

See Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir.

1984) (request for relief in district court that might affect Court of Appeals' future, exclusive

jurisdiction is subject to the exclusive review of the Court of Appeals).[8]

Furthermore, the relief provided in this matter by the Magistrate Judge's Order is not

merely enforcement of an extant court order.  See Exhibit A at 3-5, 18-19.  The Protective Order

regime in this case does not itself require or compel a counsel visit; neither petitioners' counsel

nor the Magistrate Judge have pointed to any specific language in the Protective Order or Access

---

[7]  In this vein, four other Judges of the Court have recently entered orders in Guantanamo detainee habeas cases pending before them denying without prejudice or holding in abeyance all pending motions and staying "all action" in the cases pending resolution of the effect of the Act. See January 11, 2006 Order in Gherebi v. Bush, No. 04-CV-1164 (RBW), et al.; January 27, 2006 Order in Begg v. Bush, No. 04-CV-1137 (RMC), et al.; March 16, 2006 Order in Anam v. Bush, No. 04-CV-1194 (HHK), et al.; March 31, 2006 Order in Ahmed Doe v. Bush, No. 05-CV-1458 (ESH), et al.

[8]  Respondents previously intended to file a motion to dismiss this case based upon the Act's withdrawal of the Court's jurisdiction, see Notice of Supplemental Authority (dkt. no. 3), but refrained from doing so when they were informed that the sense of the Court was to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding further in the Guantanamo habeas cases.  During this interim period, respondents have permitted counsel visits and other privileged access to properly represented detainees in cases where the Protective Order had already been entered, and its requirements satisfied by counsel, pending a decision from the D.C. Circuit.  Once the Act's withdrawal of the Court's jurisdiction became effective, however, respondents have consistently opposed entry of the Protective Order in cases where it had not already been entered.  In any event, respondents' actions in other Guantanamo habeas cases cannot be construed as a waiver or concession of jurisdiction that permits the Court to order counsel access in this case.  See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived").

Procedures compelling a counsel visit. Rather, to compel a counsel visit over respondents' objection, as here, the Court would be asserting jurisdiction and authority independent of the Protective Order to order the visit or grant access to a detainee.

Such an assertion of jurisdiction would be improper for several reasons.[9] First, in light of the Detainee Treatment Act's withdrawal of habeas jurisdiction of this Court and investment of exclusive jurisdiction in the Court of Appeals, and respondents' argument in this regard is in no way immaterial or premature. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

Second, as explained in respondents' motion for reconsideration in Adem, see Exhibit A at 21-24, no source of authority to order a counsel visit can be found in Al Odah v United States, 346 F. Supp. 2d 1 (D.D.C. 2004), which rested not on any absolute right to counsel, but on a court's now withdrawn (under the Detainee Treatment Act) discretionary, statutory authority in habeas cases to appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted. See id. at 4-5, 7-8 (citing 18 U.S.C. § 3006A). Moreover, Al Odah did not, as here, involve any issue as to whether a habeas case had been properly brought and was properly pending before the Court to begin with so as to support counsel's direct access to a detainee. See

---

[9] In Adem the Court rejected arguments as to the Court's authority to issue the order in that case because, according to the Court, the arguments were not raised before the Magistrate Judge. See 2006 WL 1193853 at *7. In this case, the arguments, including all those raised in the Adem motion for reconsideration, have been raised below and, thus, should be considered by the Court.

346 F. Supp. 2d at 4-5 ("[T]he Court has confined its present inquiry to the attorney access issues that uniquely affect the three named Petitioners in this case.  Accordingly, the Court considers whether the Government can impose real time monitoring on the three Petitioners.").

Nor can any source of authority be found in the fact that the Act provides detainees the opportunity to seek review in the D.C. Circuit of the validity of a Combatant Status Review Tribunal determination that the detainee is an enemy combatant and thus properly detainable. See Exhibit A at 23-24.  That an exclusive review proceeding before the D.C. Circuit is possible, does not authorize the Court to act on petitioner's requested relief; to the contrary, it precludes the Court from acting on the matter.  See Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect the future, exclusive jurisdiction of the Court of Appeals is subject to the exclusive review of the Court of Appeals).

II.    **The Magistrate Judge's Order is Also Clearly Erroneous and Contrary to Law Because It Is Contrary To The Language of the Access Procedures And The Applicable History And Context of The Guantanamo Cases And Because It Results In a Regime Inconsistent With Jurisdictional Principles.**

   A.    **The Magistrate Judge's Interpretation of the Access Procedures Is Contrary to the Language of The Access Procedures and the History and Context of the Litigation, and Thus Is Clearly Erroneous.**

Aside from lacking jurisdiction to order the requested relief, the Magistrate Judge acted in a clearly erroneous fashion in rejecting respondents' position that the Access Procedures require that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee," that is, in a next friend case like this, evidence that the putative next friends are proper ones under the standards articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S. 149 (1990), and then, subsequent to direct access to the detainee

being permitted, provide an additional, direct authorization of representation from the detainee

on whose behalf the *habeas* petition was filed, "no later than then (10) days after the conclusion

of a second visit with the detainee." <u>See</u> Access Procedures § III.C.  As explained in the <u>Adem</u>

motion for reconsideration, <u>see</u> Exhibit A at 26-30, the Magistrate Judge's interpretation of the

Protective Order is inconsistent with the language, history, and context of the Access Procedures

as they were developed in the Guantanamo habeas cases under Senior Judge Joyce Hens Green.

That history and context cannot be ignored for the cases were being coordinated pursuant to the

order and direction of the Court as a whole, including through a September 15, 2004 Resolution

of the Executive Session – coordination in which this Court participated at the time by

transferring then-pending Guantanamo cases to Judge Green for handling consistent with the

Court's orders.  The Court in this case imported for use the Access Procedures developed under

Judge Green that were intended at the time to apply in all Guantanamo *habeas* cases.  It is

unreasonable in such circumstances for the Court to interpret the Access Procedures inconsistent

with or without regard to that development and long-standing practice,[10] especially in light of the

Detainee Treatment Act and the previously expressed sense of the Court to defer action in the

Guantanamo habeas cases pending guidance from the Court of Appeals on the jurisdictional

issue.

      Notably, with respect to this matter, the authorizations submitted in this case are

distinguishable from the authorization submitted in support of the petition filed in <u>Adem</u> – they

---

      [10] In <u>Adem</u> the Court concluded that the final version of the relevant language of the
Access Procedures "show[ed] that the negotiating parties knew of the precusor language [of prior
versions of the Access Procedures] and did not use it in subsequent text."  2006 WL 1193853 at
*6.  As explained in Exhibit A at 28-29, that is simply not the case.

- 13 -

are next friend petitions just as the petitions before Judge Green were when the Access

Procedures were developed.  And distinct from the authorization that was the foundation of the

Court's decision in <u>Adem</u>, <u>see</u> 2006 WL 1193853 at *7, the putative next friend petitioners here

have submitted mere boilerplate "authorizations" in which they claim that they understand what

it means to act as a "next friend," and that they believe that the multiple detainees on whose

behalf they claim to seek habeas relief want legal representation to challenge their detention,

without stating any legitimate basis for this belief beyond the fact that they have also been

detained at Guantanamo Bay.  <u>See</u>, <u>e.g.</u>, Petition, Ex. B (stating, "the following people want

lawyers and want me alternatively to act as their next friend . . ." without explaining the basis for

this knowledge).[11]  Without specific information regarding the circumstances of how these

purported next friends became aware that other detainees wanted or requested legal

representation, these "authorizations" cannot be reasonably construed as sufficient evidence of

counsel's authority to represent the three disputed petitioners in this case.[12]  <u>See</u> Access

Procedures § III.C.  Accordingly, the distinguishable facts in this case support respondents' long-

---

[11]  Although the authorization submitted by detainee Omar Deghayes on behalf of
unidentified petitioner Mohammed Zahrani claims that a dozen detainees "have expressed the
desire to have the legal assistance of counsel," Petition, Ex. D, this general form language does
not rise to the level of specificity that the Court counted as sufficient direct authorization in
<u>Adem</u>.

[12]  The insufficiency of the "authorizations" is also highlighted by the lack of adequate
identifying information withe respect to petitioner Zahrani.  <u>See</u> <u>supra</u> note 1.  Further,
petitioners' counsel should not be permitted merely to choose from a multiple choice list a
detainee they may think is the Mr. Zahrani at issue in the "authorization" without convincing
evidence regarding the actual identity of that detainee.  <u>See</u> <u>infra</u> at 20-21 (noting separation of
powers concerns with such an arrangement of compelled access to detainees).

standing interpretation and application of the Access Procedures, and require that the decision in

Adem not be applied to the deficient petitions in this case.

**B.     The Magistrate Judge's Interpretation of the Access Procedures Results In The Extra-Legal Assertion of Court Jurisdiction And Is Contrary To Law.**

As explained above, the Magistrate Judge's reading of the Access Procedures is that

counsel who purport to represent a detainee through a putative next friend or otherwise need not

provide any evidence of any authority to represent the detainee prior to being entitled to

privileged access to the detainee.  Even if such a reading were possible divorced from

consideration of the history and context of the Guantanamo *habeas* cases, the reading creates a

scheme that is contrary to law, and it can and should be rejected for that reason alone.[13]  The

Magistrate Judge's interpretation of the Access Procedures essentially results in the creation of

court jurisdiction in *habeas* actions that is contrary to the plain language of the *habeas* statute

and requirements for standing under that statute.  Section 2242 of the *habeas* statute requires that

a *habeas* petition must be "signed and verified by the person for whose relief it is intended or by

someone acting in his behalf."  28 U.S.C. § 2242.  Thus, the law provides only two avenues by

which a *habeas* petition may be properly brought: (1) the individual who is seeking *habeas* relief

must sign and verify the petition, i.e., the petition must be directly authorized; or (2) the petition

must be signed and verified by another person acting on that individual's behalf – a "next friend"

– whom the Supreme Court has determined must satisfy certain requirements in order to properly

---

[13] In Adem the Court rejected arguments as to the Court's authority to issue the order in that case because, according to the Court, the arguments were not raised before the Magistrate Judge.  See 2006 WL 1193853 at *7.  In this case, the arguments, including all those raised in the Adem motion for reconsideration, have been raised below and, thus, should be considered by the Court.

serve in this capacity.  See Whitmore, 495 U.S. at 163-64; dkt. no. 9.  The Whitmore

requirements have not been determined to have been satisfied in this case; thus, the Magistrate

Judge's Order in effect invents a new, third option for standing that is not found in the *habeas*

statute or case law.  Under the theory reflected in the Memorandum Order, a court may exercise

jurisdiction over a case simply upon some person acting as a conduit and passing along to an

attorney a purported desire for assistance of counsel by some other individual, without any

demonstration of an attorney-client relationship between counsel and the person on whose behalf

relief is sought or satisfaction of the "next friend" requirements established by the Supreme

Court.  See Mem. Order at 6 ("[T]he detainees who initiated a *habeas* petition on behalf of a

fellow detainee generally do not seek to serve as a 'next friend' in the traditional sense, but are

simply passing on another detainee's request for help, a fact that can be confirmed once counsel

meets directly with the detainee.").[14]   There is simply no basis in the law for such an approach.[15]

---

[14]   Although the Magistrate Judge believed the "next friend" standing doctrine to be
merely a "legal fiction" in the Guantanamo detainee *habeas* cases and largely irrelevant in these
cases, see Mem. Order at 6-7, other Judges of the Court who have addressed the issue of a
detainee's ability to seek *habeas* relief on another detainee's behalf, including Your Honor, have
recognized that the Supreme Court's Whitmore requirements for next friend standing must be
satisfied before the Court may exercise jurisdiction over the case.  See, e.g., Ahmed v. Bush, No.
05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12); Hamlily v. Bush, No. 05-CV-
0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16); Ahmed Doe v. Bush, No. 05-CV-1458
(ESH), et al. (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.).

[15]   Thus, even if respondents' reading of § III.C of the Access Procedures was not
consistent with the plain language of § III.C, as the Magistrate Judge believed, respondents'
application of the Access Procedures to require some demonstration of appropriate representation
authority prior to providing access to the detainee "for purposes of litigating the case[] in which
the . . . [Access Procedures were] issued," Access Procedures § I, is compelled by jurisdictional
considerations.

The next friend petitioners in this case — Jamal Kiyemba, Omar Deghayes and Sami Muhyideen — should be required to establish proper next friend status and justify the exercise of the Court's jurisdiction over these petitions.  See Whitmore, 495 U.S. at 163 ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another.").  Petitioners have not yet established that Jamal Kiyemba, Omar Deghayes and Sami Muhyideen satisfy the standing requirements articulated in Whitmore.  See Resps' Opp. to Pets' Mot. for Entry of the Protective Order at 3-13 (dkt. no. 9).  If petitioners cannot demonstrate that these detainees meet the Whitmore requirements for next friend standing, the Court cannot exercise jurisdiction over the petitions, and they must be dismissed.

The Magistrate Judge's Order attempts to justify the creation of the unprecedented "conduit" theory of establishing standing in *habeas* cases in light of certain concerns about the circumstances of detention at Guantanamo Bay which, in the Magistrate Judge's view, apparently warrant an extra-legal scheme for establishing jurisdiction in these *habeas* cases.  See Mem. Order at 9 n.6.  Not only is the assessment reflected in the Memorandum Order of the factual circumstances involved inaccurate, but the circumstances of detention at Guantanamo Bay in any event do not justify disregarding the plain language of the *habeas* statute and governing case law. See Exhibit A at 30-39.

The Magistrate Judge incorrectly concluded that an analysis of whether proper *habeas* standing exists in this case may be avoided in favor of an extra-legal scheme for establishing jurisdiction because the notifications provided by the Department of Defense to detainees at

- 17 -

Guantanamo Bay regarding their right to file a petition for *habeas* corpus[16] "have been largely

ineffective." Mem. Order at 9 n.6. The Magistrate Judge cited his decision in Adem for this

point, and there he criticized the notifications as "fail[ing] to provide any explanation of what a

petition for *habeas corpus* is or how a detainee would go about getting one," 2006 WL at 751309

at *9, and informing the detainees that they can "ask a friend" to file a petition on their behalf

without also advising them of the jurisdictional requirements of "next friend" standing as

articulated by the Supreme Court, see id. at *12. The Order cites no legal basis for these

critiques. Moreover, the government cannot simply waive jurisdictional requirements mandated

by the *habeas* statute and governing Supreme Court precedent by advising detainees that they

may "ask a friend" to file a *habeas* petition on their behalf, nor was it the government's intent to

do so. See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that

---

[16] Beginning in December 2004, the Department of Defense provided written notifications to all detainees at Guantanamo Bay which informed them of their right to file petitions for writ of *habeas corpus* in federal court if they desired to challenge the lawfulness of their detention. The detainees were informed that they could ask a friend, family member, or lawyer to file a petition on their behalf, and they were also provided with the address of the United States District Court in the event that they desired to submit their own petitions to the Court through the mail system administered by the Department of Defense. See Second Declaration of Frank Sweigart, ¶¶ 3-5 & Exs. A-C (Exhibit A to Resps' Opp. to Petrs' Mot. for Entry of Protective Order, dkt. no. 9).

In addition to these written notifications provided to all detainees at Guantanamo Bay which advised them of their right to file petitions for writ of *habeas corpus* and options for doing so, the Department of Defense also delivered to detainees who indicated a desire to challenge the legality of their detention a notification providing these detainees with a form to complete and mail to the American Bar Association, which agreed to recruit volunteer counsel for detainees desiring representation. Beginning in September 2005 the Department of Defense delivered (and will continue to deliver on an ongoing basis) this notification to detainees who file *pro se* petitions for writ of *habeas corpus* and are not already represented by counsel, as well as other detainees who indicate to Guantanamo personnel that they desire or request the assistance of counsel. See Second Declaration of Frank Sweigart, ¶ 7 & Ex. E.

"jurisdiction cannot be waived" and the Court has "an independent obligation to assure" itself of jurisdiction).

In any event, the record in this case establishes that the Department of Defense's notifications adequately informed detainees how they may challenge the legality of their detention and, as a result, scores of petitions have been filed on behalf of detainees at Guantanamo Bay. The notifications provided beginning in December 2004 notified each detainee at Guantanamo Bay that "you may challenge your detention in a United States court" and "[y]ou may ask a civilian judge to look at the lawfulness of your detention through a process called a *petition for writ of habeas corpus*." See Second Declaration of Frank Sweigart, Ex. A-C (Exhibit A to Resps' Opp. to Petrs' Mot. for Entry of Protective Order, dkt. no. 9). The notifications further explained that detainees may "ask a friend or family member or a lawyer" to file a petition on their behalf, or they may do so themselves by writing to the United States District Court for the District of Columbia at an address provided on the notifications. See id. Thus, although the notifications may not have provided the detainees with a precise legal definition and explanation of a "petition for writ of *habeas corpus*," they clearly explained to the detainees that they may ask a United States judge to review whether they should be detained at Guantanamo Bay and provided them with options on how to do so. As a result of these notifications, 58 petitions for writ of *habeas corpus*, i.e., letters construed as petitions, have already been filed by detainees writing directly to the Court.[17] Further, other detainees have

---

[17] As explained in the record, detainees are afforded the opportunity regularly to send and receive mail through the mail system administered by the Department of Defense and through the International Committee for the Red Cross. See Sweigart Declaration, Ex. D. These systems were developed and operational prior to and independent of the Protective Order in this litigation. See id.; see also, e.g., Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1160 (9th Cir. 2002) (noting, pre-Rasul, that Guantanamo detainees were able to send and

directly authorized petitions by writing to lawyers already representing other detainees, and

scores of additional detainees have filed petitions through family members and friends who

arguably satisfy the Supreme Court's requirements for next friend standing.[18]  Given that

hundreds of detainees have legitimately sought to challenge the legality of their detention by

seeking *habeas* relief in federal court, the Magistrate Judge's conclusion that the notifications

were inherently misleading and insufficient is incorrect,[19] and in any event, does not justify

excusing petitioners from satisfying the necessary jurisdictional requirements in *habeas* cases.

See Whitmore, 495 U.S. at 155-56 ("A federal court is powerless to create its own jurisdiction by

embellishing otherwise deficient allegations of standing.").  DoD has endeavored to provide

reasonable mechanisms, consistent with the jurisdictional requirements in *habeas* cases, for

detainees to contact the Court or a source for counsel directly, should they choose to do so.  Any

dissatisfaction with those mechanisms, however, is not appropriate justification for an

---

receive mail and were permitted to communicate outside Guantanamo through the International
Committee of the Red Cross).  Given that Guantanamo Bay is an overseas military base
operating during a time of war, respondents acknowledge that mail may take some time to be
transmitted to and from Guantanamo Bay through the United States Postal Service (which is
beyond the control of the Department of Defense), however, the processing by the Department of
Defense of incoming and outgoing detainee mail at Guantanamo Bay has consistently taken two
weeks, on average.  See Sweigart Declaration, Ex. D.

[18] In addition, as noted supra, detainees who indicate to Guantanamo personnel that they
desire a lawyer, are provided a form in their own language (or are read the form in their language
if they are illiterate) to request a lawyer from the ABA.  See Second Declaration of Frank
Sweigart ¶ 7 & Ex. E.

[19] The Magistrate Judge characterized respondents' contention as an "unconscionable"
and "unworkable" demand that detainees "identify a specific lawyer from among all the
volunteer lawyers – most of whom are unknown to the detainee before a meeting . . . ."  See
Mem. Order at 10.  That characterization is erroneous, however; as demonstrated above,
respondents make no such demand, but rather have provided reasonable mechanisms, consistent
with the jurisdictional requirements in *habeas* cases, for detainees to contact the Court or a
source for counsel should they desire to do so.

interpretation of the Access Procedures that is inconsistent with the jurisdictional requirements in *habeas* cases.

Furthermore, the prejudicial impact of the Magistrate Judge's interpretation of the Access Procedures is significant. Under the Magistrate Judge's interpretation, which if allowed to stand would be potentially applicable not only in this case but in numerous other Guantanamo cases in which respondents have challenged next friend standing or counsel have failed to present sufficient evidence of their authority to represent a detainee,[20] respondents would be required to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements. Indeed, this interpretation of the Access Procedures could permit virtually any attorney to file suit asserting that they represent a detainee and thereby require the government to provide them privileged access to the detainee. Even if counsel's ability to claim authority to represent a detainee were cabined by having to receive word of a detainee's desire for counsel through a purported "conduit" detainee, that arrangement could lead to detainees effectively initiating *habeas* petitions on behalf of, with concomitant required counsel access to, any detainee they recall once having a conversation with that gave the "conduit" detainee the inkling that the other detainee might want a lawyer or might want to challenge his detention. The separation of powers concerns implicated in such an arrangement of compelled access to wartime detainees in a military detention facility are substantial. Such an

---

[20] Approximately 20 such cases currently exist including those in which respondents have challenged next friend standing.

arrangement flies in the face of fundamental standing and jurisdictional concepts in the law of *habeas corpus*.

Accordingly, the Magistrate Judge's interpretation of the Access Procedures results in an extra-legal assertion of court jurisdiction and, thus, is clearly erroneous and contrary to law and should be set aside.

## III.    The Magistrate Judge's Order Should Be Stayed Pending Reconsideration.

The Court should immediately stay the Magistrate Judge's Order to the extent it requires action by respondents pending the Court's resolution of respondents' motion for reconsideration.[21]  Respondents' counsel have been order to permit petitioners' counsel to visit the disputed petitioners in this case the week of June 5, 2006, subject to logistical feasibility.  See supra note 4.  Respondents, however, should not be required to provide direct, privileged access to a wartime detainee in a military detention facility by counsel merely purporting to represent the detainee, without an appropriate showing by counsel of proof of appropriate authority to represent the detainee through a next friend meeting appropriate standing requirements, as is contemplated by the Magistrate Judge's Order, prior to resolution of this motion for reconsideration.  Aside from the significant jurisdictional issues that exist given the statutory withdrawal of the Court's jurisdiction in the Detainee Treatment Act of 2005 and otherwise, as well as the gravely serious issue of the construction of Access Procedures applicable in the Guantanamo cases, such access raises significant separation of powers concerns.  See supra at 20-21.  Those harms will be incurred in just over one week under the current visit request of

---

[21] A stay of resolution of petitioner's request for relief in this matter would be appropriate pending resolution of the effect of the Detainee Treatment Act on the pending cases, including this one.  If such a course is taken, however, it is imperative that the Magistrate Judge's Order be stayed to preserve the status quo pending resolution of the Detainee Treatment Act issues.

counsel unless the Order is stayed.  <u>Cf.</u> <u>Cuomo v. United States Nuclear Regulatory Comm'n</u>, 772 F.2d 972, 974 (D.C. Cir. 1985) (in deciding stay pending appeal, court balances: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay;" "stay may be granted with either a high probability of success and some injury, or vice versa").

Finally, any potential for harm to petitioners would not outweigh the need for stay. Congress has by statute now withdrawn the jurisdiction of this Court to proceed in the case. Maintenance of the status quo through a stay of the Order pending resolution of the motion for reconsideration would not outweigh the potential harms implicated by allowing the Order it's full effect.

Accordingly, the Court should immediately stay the Magistrate Judge's Order.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Magistrate Judge's Order is contrary to law and clearly erroneous – it is clear from all the circumstances that a mistake has been committed.  The Memorandum Order, accordingly, should be set aside.  Furthermore, the Order should be stayed pending resolution of respondents' motion to reconsider the Order.

Dated: May 25, 2006                    Respectfully submitted,

                                       PETER D. KEISLER
                                       Assistant Attorney General

                                       DOUGLAS N. LETTER
                                       Terrorism Litigation Counsel

_____/s/ Terry M. Henry_____
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents