IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BANDAR AHMAD MUBARAK AL JABARI,    )
                                    )
                                    )
          Petitioner,           )
                                    )
       v.                      )     Civil Action No. 05-2384 (RWR)
                                    )
GEORGE W. BUSH, *et al.,*          )
                                    )
          Respondents.       )
                                    )

## DECLARATION OF TERESA A. McPALMER

      Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

      1.    I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC).  In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

      2.    I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Bandar Ahmad Mubarak al Jabari that are suitable for public release.  The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member.  This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

      I declare under penalty of perjury that the foregoing is true and correct.

Dated: _24 May 2006_                              _____
                                             Teresa A. McPalmer
                                             CDR, JAGC, U. S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

~~FOR OFFICIAL USE ONLY~~

OARDEC/Ser: 76
9 September 2004

From:  Director, Combatant Status Review Tribunal

Subj:  **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR
DETAINEE ISN # 182**

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #182 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final, and the detainee will be scheduled for an Administrative Review Board.

J. M. MCGARRAH
RADM, CEC, USNR

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED

MEMORANDUM                                                8 Sep 04

From: Legal Advisor
To:   Director, Combatant Status Review Tribunal

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
      FOR DETAINEE ISN # 182

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal #4 of 6 August 2004
      (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I find that:

    a. The detainee was properly notified of the Tribunal process and was present for the unclassified portions of the Tribunal proceedings.

    b. The Tribunal was properly convened and constituted by enclosure (1).

    c. The Tribunal complied with all provisions of references (a) and (b). Note that some information in exhibits R-3 through R-5 was redacted. The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant. Additionally, the translator at the initial Tribunal session made two significant errors in translating questions asked of the detainee. The errors were brought to the attention of the Tribunal and they reconvened at a subsequent hearing in the presence of the detainee and a new translator. The detainee was again asked the questions and allowed an opportunity to answer. In my opinion, the Tribunal acted correctly to ensure that the detainee received proper translation of the questions. Finally, exhibits R-3 to R-7 are marked "For Official Use Only - Law Enforcement Sensitive" and were thus handled as classified information in accordance with guidance from the Secretary of the Navy.

    d. The detainee made no requests for witnesses or other evidence.

    e. The Tribunal's decision that detainee # 182 is properly classified as an enemy combatant was unanimous.

UNCLASSIFIED

UNCLASSIFIED

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # 182

    f.  The detainee's Personal Representative was given the opportunity to review the
record of proceedings and declined to submit comments to the Tribunal.

2.  The proceedings and decision of the Tribunal are legally sufficient and no corrective action is
required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

James R. Crisfield Jr.
CDR, JAGC, USN

UNCLASSIFIED

2.



# Department of Defense
## Director, Combatant Status Review Tribunals

6 August 2004
Ser0038/ajs

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #4

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

████████████, Colonel, U.S. Army; President

████████████, Commander, JAGC, U.S. Navy; Member (JAG)

████████████, Lieutenant Colonel, U.S. Marine Corps; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
U.S. Naval Reserve



# HEADQUARTERS, OARDEC FORWARD
GUANTANAMO BAY, CUBA
APO AE 09360

MEMORANDUM FOR DIRECTOR, CSRT                    31 August 2004

FROM:  OARDEC FORWARD Commander

SUBJECT:  CSRT Record of Proceedings ICO ISN# 182

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN █████████.

DAVID L. TAYLOR
Colonel, USAF

~~SECRET//NOFORN//X1~~

## (U) <u>Combatant Status Review Tribunal Decision Report Cover Sheet</u>

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (6).

(U) TRIBUNAL PANEL: ___#4___

(U) ISN#: ___182___

Ref:   (a) (U) Convening Order for Tribunal #4 of 6 August 2004 (U)
       (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
       (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:  (1) (U) Unclassified Summary of Basis For Tribunal Decision (U)
       (2) (U) Classified Summary of Basis for Tribunal Decision (S//NF)
       (3) (U) Summary of Detainee Testimony (U)
       (4) (U) Summary of Witness Testimony (U)
       (5) (U) Summary of Testimony at Unclassified Session on 26 August 2004 (U)
       (6) (U) Copies of Documentary Evidence Presented (S//NF)
       (7) (U) Personal Representative's Record Review (U)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 25-26 August 2004, the Tribunal determined, by a preponderance of the evidence, that Detainee #182 is designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, the Taliban or associated forces that are engaged in hostilities against the United States or its coalition partners, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



COL, USA
Tribunal President

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

## (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#4_____
ISN #: _____182_____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and was part of or supporting Taliban forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The Recorder presented Exhibit R-1, the Unclassified Summary of Evidence, during the unclassified portion of the Tribunal. It indicates the detainee is associated with the Taliban and groups who fought against the U.S. or its coalition partners. It also indicates that the detainee admits to being affiliated with and allied with the Taliban, and that the detainee stayed at a bunker with people who were fighting against the Northern Alliance. Exhibit R-1 also states that the detainee supported Taliban forces in hostilities with the US or its coalition partners. More specifically, it states the detainee traveled to Afghanistan to receive military training; that he was trained on various weapons, including 82mm mortars and 40mm anti-aircraft guns, and received other military training; that he traveled to Konduz with men who were fighting the Northern Alliance; that he traveled to the front lines in the battle against the Northern Alliance; and that he was assigned to a mortar squad approximately one kilometer from the front line north of Kabul, Afghanistan.

The detainee participated actively in the Tribunal process. He read an unsworn statement to the Tribunal, which he subsequently submitted as a signed written statement for the Tribunal's consideration (see Exhibit D-b). In that statement, he addressed each of the points on the Unclassified Summary of Evidence. He denied being or ever admitting to being a member of the Taliban, but admitted using the Taliban's resources for training in order to prepare him to fight in Chechnya. He also stated he never fought or used any weapons against the Northern Alliance, and did not provide any support to the Taliban. The detainee also elected to answer questions posed by the Personal Representative, the Recorder and Tribunal members. During that questioning, the detainee reaffirmed his denials of being a member of or supporting the Taliban, or fighting against the United States or the Northern Alliance. The detainee's testimony, as well as his responses to the

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

questions posed to him, are summarized in Enclosure (3) to the CSRT Decision Report. The detainee called no witnesses and presented no other evidence.

After the Tribunal completed the unclassified portion of the proceeding, Arabic-speaking reporters observing the Tribunal proceedings informed CSRT officials that there were errors made by the translator that could cause confusion for the Tribunal. The CSRT officials notified the Tribunal President of the issue during a recess in the classified proceeding. To remedy the errors, the Tribunal President reopened the unclassified session and called a staff linguist, who had witnessed the proceedings and was aware of the errors, as a witness to explain the errors and provide correct translations. Both of the corrections inured to the benefit of the detainee. However, because the detainee had already left the facility, the session was held without him being present, although the detainee's Personal Representative was present. After being sworn, the staff linguist testified that (see Enclosure (4) to the CSRT Decision Report):

    a. A question posed by the Personal Representative to the detainee asking "when did you depart *for* training in Afghanistan," or words to that effect, was erroneously translated as "when did you depart training in Afghanistan?" The detainee answered the erroneously translated question "after September 11, 2001," or words to that affect. After learning of the error from the staff linguist, the Tribunal did not consider the detainee's answer in reaching its decision on the detainee's status.

    b. Also, Tribunal members posed questions to the detainee asking whether he had ever fought against the United States or the Northern Alliance. The staff linguist indicated that the translator during the hearing translated the Northern Alliance as the United States, leaving out the Northern Alliance. Accordingly, in reaching its decision on the detainee's status, the Tribunal considered that the detainee denied fighting both the United States and the Northern Alliance in all of his answers.

After the Tribunal concluded the hearing, the Tribunal President informed the CSRT Assistant Legal Advisor that he had reconvened the unclassified portion of the Tribunal to rectify the translation errors without the presence of the detainee. The Assistant Legal Advisor informed the Tribunal President that, based on paragraph F(3) of Enclosure (1) to the CSRT Implementation Order of 29 July 2004 signed by the Secretary of the Navy, the detainee should have been given the opportunity to be present at the unclassified Tribunal session held to correct the erroneous translations.

Accordingly, on 26 August 2004, the Tribunal reconvened with all parties present, including the detainee, and again called the staff linguist as a witness to testify about the translation errors in the presence of the detainee (see Enclosure (5) to the CSRT Decision Report). The purpose of the session was explained to the detainee and he indicated that he understood and had no questions about the process. The staff linguist's testimony was consistent with the testimony she gave the day before. The Personal Representative then asked the detainee the same question she had asked him the previous day. In response, the detainee indicated he went to train in Afghanistan one year prior to 11 September. 2001. The Recorder then asked the detainee whether he ever fought against the Northern

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

Alliance or the United States, and the detainee responded no; he went to Afghanistan only to train. The hearing was then closed and the Tribunal reopened deliberations to reconsider its original findings in light of the testimony of the staff linguist on 26 August and the answers the detainee gave at that session. The Tribunal reaffirmed its original decision that the detainee is properly classified as an enemy combatant.

### 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

> a. Exhibits: R-1 through R-11, D-a through D-b
>
> b.  Testimony of the following persons:
>
> See Enclosures (4) and (5)
>
> c.  Unsworn statements of the detainee:
>
> See Enclosures (3) and (5)

### 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested no witnesses.

The Detainee requested no additional evidence be produced.

### 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

a. The Recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the unsworn testimony of the detainee. (A summarized transcript of the detainee's unsworn statement is attached as CSRT Decision Report Enclosure (3), and his written statement is attached as Exhibit D-b.) The detainee testified by reading a prepared statement, which responded to each of the points raised on the Unclassified Summary of Evidence (Exhibit R-1). In sum, he stated he has never admitted to being a member of the Taliban, but used

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

Taliban resources to train him so he could fight in Chechnya. He added that he never fought the United States or the Northern Alliance. He also stated that he received individual training (vice training in a camp setting) on a number of small arms, as well as other military and physical training. He further stated that he traveled to Afghanistan to get training, but not to fight the Northern Alliance. He stated that when he traveled to Konduz, Afghanistan, it was to learn how to use anti-aircraft weaponry to prepare him to fight in Chechnya. He added that after the anti-aircraft weapon training was complete, he returned to Kabul, and then went to Jalalabad after Kabul fell. He then left Jalalabad and went to Tora Bora, and on to Pakistan with the intention of heading home to Saudi Arabia because his mother was sick. He turned himself in to Pakistani authorities after leaving Afghanistan. He concluded by stating that he did not fight against the Northern Alliance or provide any support to the Taliban, and noted that the training area for his mortar training was located approximately one kilometer from the front lines with the Northern Alliance, but he was not fighting – he was training.

c.  The detainee agreed to answer questions posed by the Personal Representative, the Recorder, and Tribunal members. He indicated with respect to the mortar training he received, it was conducted about one kilometer from the front lines, and the person training him was a Taliban soldier. He also indicated some of the people he was with were Taliban soldiers, but others were not – they were people of different nationalities. He also noted that when he went to Tora Bora, he went with about four other Arabs – not Taliban soldiers – and none of them were armed. He said the reason they were going to Tora Bora was to get to Saudi Arabia, and all other routes were closed. He also said he never fired a single shot at the Northern Alliance and did not fight them – he only went to train. He added that even when he was training on the mortar, he never fired it; he was only shown how to use it. He added that he was at the mortar training site for approximately two months.

d.  While the Tribunal found the detainee's statements regarding the weaponry he trained on persuasive, the Tribunal found his statements that he never fired his weapons unpersuasive. The Tribunal did not believe that he spent two months training with a mortar unit, only being told what to do, but never firing a round. Overall, the Tribunal found the detainee's explanations for his actions unpersuasive and his credibility lacking.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 6. Consultations with the CSRT Legal Advisor

The Tribunal consulted the CSRT Assistant Legal Advisor regarding the translation issue discussed in paragraph 2, above.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

### 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a.  The detainee was mentally and physically capable of participating in the proceeding.  No medical or mental health evaluation was deemed necessary.

    b.  The detainee understood the Tribunal proceedings.  He indicated he had no questions regarding his rights and actively participated in the hearing.

    c.  The detainee is properly classified as an enemy combatant because he is a member of, or affiliated with, the Taliban or associated forces that are engaged in hostilities against the United States or its coalition partners.

### 8. Dissenting Tribunal Member's report

None.  The Tribunal reached a unanimous decision.

Respectfully submitted,

COL, USA
Tribunal President

UNCLASSIFIED//~~FOUO~~

**UNCLASSIFIED**

**Summarized Detainee Statement**

Tribunal President: Bandar Ahmad Mubarak Al Jabri, you may now present any evidence you have to the Tribunal. You have the assistance of your Personal Representative in doing so. Do you want to present any information to this Tribunal?

Personal Representative: Mr. President, the Detainee would like to make an oral statement. I am also going to provide him a written, translated statement that he made during our session. I will subsequently submit this document as exhibit "D-b."

**The Detainee is handed a typed statement prepared with the assistance of his Personal Representative for reading and presentation to the Tribunal. The detainee's typed statement is set up in such a way that it addresses each point on the Unclassified Summary of Evidence in order. The written and signed version of the detainee's statement is attached as Exhibit D-b. The detainee's verbal statement, which generally corresponds to his written statement, is set forth below (summarized).**

I am Bandar Al Jabri. I did not admit that I was a member of the Taliban. I used the Taliban to get my training. I did not fight against the United States and the Northern Alliance. I wanted to get all the training so I could fight in Chechnya.

The training that was given to me was not good training. There were no military people providing the training or training me on any weaponry.

I learned how to use the following weapons: Kalashnikov rifle, Bika, pistol, RPG, hand grenade, and the 82mm cannon against the aircraft. Then afterwards, I went to Afghanistan so I could practice on the available weaponry. I also learned to crawl and received physical training. I did not want to use my training against the United States and its allies. I did not want to help or enroll in the Taliban army.

Afterwards, I went with a group of people to Konduz. I knew why I was going there, but did not know why they were going there. I was there to learn how to use the anti-aircraft missile in order to fight in the Chechnya. I came back to Kabul after the training. Then I went to Jalalabad about one day prior to the downfall of Kandahar.

**At this point, the Personal Representative interjected and asked if the word "Kandahar" should be corrected to "Kabul." After confirming that the answer was yes, the Translator made a pen and ink change to the detainee's written statement. The Translator initialed the change.**

Tribunal President: To make it clear, you went to Jalalabad one day prior to the fall of Kabul?

Translator: That is what he said, but the document read Kandahar.

ISN #182
Enclosure (3)
Page 1 of 5

**UNCLASSIFIED**

UNCLASSIFIED

Tribunal President: Okay.

Detainee: Then I left Jalalabad for Tora Bora. From there I went to Pakistan. My intention was to return back to my country, Saudi Arabia. My mother was sick and insisted upon my return immediately. From there, I called the proper authorities or responsible people in Pakistan. In turn, they turned me over to the American Government.

**When the detainee read his answer to point 3.b.5 on the Unclassified Summary of Evidence (*Detainee was trained in the Northern part of Afghanistan on the 40mm anti-aircraft guns*), he referenced the same answer he gave to point 3.b.4. This is best understood by looking at the detainee's written statement, Exhibit D-b. He then continued.**

I did not fight against the United States and its allies, and I gave no assistance to the Taliban. The place of training was about one kilometer from the front lines. I was not fighting, I was just training.

Tribunal President: Does that complete the statement?

Detainee: Yes.

Tribunal President: Will the Detainee answer questions?

Detainee: Yes.

Tribunal President: Personal Representative, do you have any questions for the Detainee?

Personal Representative: Yes, Sir, I just have one question for the Detainee. When did you depart for the training in Afghanistan?

Detainee: I do not remember the date.

Personal Representative: Was it before or after September 11th, 2001.

Detainee: It was after.

**[NOTE: During a recess in the classified portion of the Tribunal, the Tribunal was informed that the Translator had erroneously interpreted the Personal Representative's question posed to the detainee. Thus the question the detainee was asked, and subsequently answered, was "When did you depart training in Afghanistan?" The translation error was rectified during a subsequent unclassified session at which the detainee was present on 26 August 2004, and the Tribunal**

ISN #182
Enclosure (3)
Page 2 of 5

UNCLASSIFIED

**UNCLASSIFIED**

disregarded the detainee's answer to the erroneously translated question.  A full discussion of this issue appears in Enclosure (1) to the CSRT Decision Report.]

Tribunal President:  Recorder, do you have any questions for the Detainee?

Recorder:  Yes, Sir.  You stated you were training about one kilometer from the front lines.

Detainee:  Yes.

Recorder:  Was it at a training camp?

Detainee:  No.

Recorder:  Was there any specific reason why the training was so close to the front lines?

Detainee:  There is no reason.  I trained on the M-82 there because that was the only place I could get the training.

Tribunal President:  Do any Tribunal Members have questions for the Detainee?

Tribunal Member:  I have a couple of questions.  When you were training about one kilometer from the front, who was training you?

Detainee:  Abu Ahmad Al Ilmani.

Tribunal Member:  I don't want the name of the person.  Was this person a Taliban soldier?

Detainee:  Yes, he was Taliban.

Tribunal Member:  So when you were a kilometer from the front, you were with Taliban soldiers?

Detainee:  There were people of different nationalities, but not all Taliban.

Tribunal Member:  Some of the people were Taliban?

Detainee:  Yes.

Tribunal Member:  When you went to Tora Bora whom did you travel with?  I am not asking for their names, but I only want to know if you traveled with Taliban soldiers to Tora Bora?

Detainee:  No, I was by myself.

**UNCLASSIFIED**

**UNCLASSIFIED**

Tribunal Member: So there was no one else traveling with you?

Detainee: It was I and other soldiers. There were approximately four people who were all Arabs.

Tribunal Member: Were they armed?

Detainee: No, Sir. The reason we went in that direction was because we wanted to go to Saudi Arabia and all the other routes were closed.

Tribunal Member: When you were at the front training, did you ever fight the Northern Alliance?

Detainee: No. In addition, when I was there I did not fire one single shot at the Northern Alliance. My going there was simply for the training. Not to fight.

Tribunal Member: So when you trained on the mortar, you never fired the mortar?

Detainee: The training was not practical or hands on. They only showed me how to use it.

Tribunal Member: How long were you at the training site?

Detainee: Approximately two months.

Tribunal Member: Okay, thank you.

Tribunal President: Bandar Al Jabri, do you have any other evidence to present?

Detainee: I have no other evidence.

Tribunal President: Okay, I just want to make sure. Personal Representative, do you have any other evidence you want to present to this Tribunal?

Personal Representative: Yes, Sir. I am submitting Exhibit "D-b" which is the Detainee's written statement. It has been signed by the Detainee. I have previously provided a copy to the Recorder.

Tribunal President: Personal Representative, do you have any further questions?

Personal Representative: No, Sir. I do not.

Tribunal President: Recorder, do you have any further questions?

ISN #182
Enclosure (3)
Page 4 of 5

**UNCLASSIFIED**

UNCLASSIFIED

Recorder: No, Sir.

Tribunal President: Tribunal Members, do you have any final questions?

Tribunal Member: I have one question for the Personal Representative. The handwritten portion at the bottom of Exhibit "D-b," is that the Detainee's signature in Arabic?

Personal Representative: Yes, Sir. There are two elements there. On the first page, it indicates it is page one of two of the document. The signature is on the second page.

Tribunal Member: Thank you.

**That concluded the detainee's presentation of evidence.**

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

COL, USA
Tribunal President

UNCLASSIFIED//~~FOUO~~



At 1051 on 25 August 2004, the President reopened the unclassified session of the Tribunal. The Tribunal members, the Recorder, the Personal Representative, and the Reporter were present. The detainee was absent. The purpose of the session was to resolve certain translation errors that had been brought to the attention of the Tribunal President during a recess of the classified portion of the Tribunal. To address the translation errors, a CSRT staff linguist who had observed the erroneous translations, was called by the Tribunal to testify regarding the matter.

████████████, Arabic Linguist, Office for the Administrative Review of the Detention of Enemy Combatants, Guantanamo Bay Naval Station, Cuba, was called as a witness, sworn, and testified as follows (summarized):

I witnessed the translation errors and can testify regarding what was said.

The actual question that was posed to the Detainee by the Personal Representative was "when did you depart for the training camp." The question posed to the detainee after translation was "when did you depart from or leave the training camp?" The reply was "after September 11th." I think there was a misunderstanding. The Detainee did not say when he actually left for the training camp.

The other thing was the Northern Alliance was frequently translated as the United States. So the Detainee did actually state two or three times that he did not ever fight or pick up a weapon and use it against the Northern Alliance, as well against the United States. I noticed the Detainee was asked that question at the end and the Detainee stated he had not. Also, the Detainee stated he did not realize the training camps were actual training camps against the United States; and also he did not realize that they had any intentions against the Northern Alliance, as well.

Tribunal President: Thank you and we appreciate your testimony.

The witness was excused from the proceedings and left the Tribunal Room. The unclassified session adjourned at 1056 hours, 25 August 2004.

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



COL, USA
Tribunal President

UNCLASSIFIED//~~FOUO~~

ISN #182
Enclosure (4)
Page 1 of 1

**UNCLASSIFIED / ~~FOUO~~**

At 1330 on 26 August 2004, the President reopened the unclassified session of the Tribunal. The Tribunal members, the Recorder, the Personal Representative, the Reporter, <u>and the detainee</u> were present. The purpose of the session was to resolve certain translation errors that had been brought to the attention of the Tribunal President during a recess of the classified portion of the Tribunal. To address the translation errors, a CSRT staff linguist who had observed the erroneous translations, was called by the Tribunal to testify regarding the matter.

████████████████ Arab Linguist, Office for the Administrative Review of the Detention of Enemy Combatants, Guantanamo Bay Naval Station, Cuba, was called as a witness, sworn, and testified in substance as follows:

Witness: I noticed a couple of mistakes yesterday. First, the question was asked when did you leave for the training camp in Afghanistan. It was translated as when did you leave Afghanistan. It was answered I left Afghanistan after September 11th. The other thing was the Northern Alliance was translated as the United States. So when the Detainee was asked had you ever fought against the Northern Alliance; he was really being asked if he had fought against the United States. The Detainee's answer was no.

Tribunal President: Do you have anything further to say?

Witness: No.

Tribunal President: Bandar Al Jabri, it is now your turn to ask any questions you may have.

Detainee: I don't have any questions.

Tribunal President: Personal Representative, do you have any questions?

Personal Representative: No, Sir, other than re-stating my questions from yesterday. When did you depart Saudi Arabia and when did you travel to Afghanistan to begin your training?

Detainee: I left Saudi Arabia before September 11th. One year prior to September 11th.

Tribunal President: Anything else Personal Representative?

Personal Representative: No, Sir.

Tribunal President: Recorder, do you have any further questions?

Recorder: Sir, I would suggest the second question the witness brought up be asked again, which is whether the Detainee ever fought against the Northern Alliance?

ISN #182
Enclosure (5)
Page 1 of 2

**UNCLASSIFIED**

**UNCLASSIFIED / ~~FOUO~~**

Detainee: No. My reason for going to Afghanistan was for training.

Recorder: That is all I have, Sir.

Tribunal President: Any of the Tribunal Members have any questions?

Tribunal Member: Just one question for the witness. You heard the initial translation of the questions, the erroneous translations. Is this how you were able to formulate what the correct translations should have been?

Witness: Yes.

Tribunal President: Is it your opinion that throughout yesterday's open session, whenever the term United States was spoken it really meant Northern Alliance.

Witness: Yes, Sir. Northern Alliance.

Tribunal President: Having cleared the record and answered all the questions pertaining to yesterday's misunderstanding, this session is closed at 1340 hours. The Tribunal members will adjourn to deliberate.

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



COL, USA
Tribunal President

## Detainee Election Form

Date/Time: _19 Aug 04/1730_
Start/End Time: _1600 /1700_

ISN#: _182_

Personal Representative: _Lt Col_ ███████████
[Name/Rank]

Translator Required? _Yes_       Language? _Mod. Arabic_

CSRT Procedures Read to Detainee or Written Copy Read by Detainee? _Yes_

--------------------------------------------------------------------

Detainee Election:

☒ Wants to Participate in Tribunal

☐ Affirmatively Declines to Participate in Tribunal

☐ Uncooperative or Unresponsive

Personal Representative Comments:

_Detainee was very responsive & seemed_
_eager to participate. He will not call_
_witnesses or request documentary evidence._
_He will make ~~an~~ a sworn oral statement_
_& sign a statement to be submitted_
_as an Exhibit. Seems to understand some English._



Personal Representative

EXHIBIT _D-a_

UNCLASSIFIED

**Recorder Exhibit List**
**For**
ISN ███████████

| # | Title | Classification |
|---|---|---|
| R1 | Unclassified Summary | UNCLASSIFIED |
| R2 | Request for Redaction | UNCLASSIFIED |
| R3 | Form 40 dtd 2 Oct 02 | FOUO//LES |
| R4 | Form 40 dtd 27 Apr 04 | FOUO//LES |
| R5 | Form 40 dtd 21 July 03 | FOUO//LES |
| R6 | FBI 302 dtd 29 May 02 | FOUO//LES |
| R7 | FBI 302 dtd 7 Jun 02 | FOUO//LES |
| R8 | JTF-GTMO Baseball Card | SECRET//NOFORN |
| R9 | CITF-CDR Memorandum dtd 7 May 04 | SECRET//NOFORN |
| R10 | IIR 6034111404 | SECRET |
| R11 | IIR 6034067402 | SECRET |

UNCLASSIFIED

أشاره الى موجز بيا نات ألحكومه ألأمريكيه ألمستعرضه في منبر أ لقضاء حول وضع

ألمقاتل

انا ألجبري بندر أحمد مبارك أقدم ألإيضاحات ألتاليه

٣.أ. ١- أنا لم أقر أبدا بأنني عضو في طا لبان أنما قد أستخدمت أمكا نيات طا لبان لغرض

ألتدريب ولم أحارب قط ضد تحالف ألشمال أو ألأمريكان أنما كنت أرغب في أستعمال

ألتدريب ألمقدم لنا لأحارب في ألشيشان٠

٢- ألتدريب ألذي قدم لي كان عمل شكلي أنفرادي ولم يكن معسكر ألجيش للتدريب

ألجماعي وقد وفرو في ألتدريب ألأسلحه وتعلمت أستعمال السلاح المذكور أدناه في

ولم أستعمل أطلا قا ألسلاح ضد تحالف ألشمال.

٣ب. سافرت ألى أفغانستان للتدرب على أستعمال ألسلاح ألمتوفر وليس لغرض محاربة

تحالف ألشمال أو لغرض ألأنتماء او مساعده طالبان٠

٣.٢.(أنضر ٣و٢ أعلاه)

٤. سافرت مع مجموعه من ألأشخاص الى قندوس وكنت أعلم لماذا أنا ذاهب ولم أكن أعلم

لماذا هم ذاهيون .أنا كنت ذاهب لأتعلم أستعمال مضادات ألطائرات(٣=ب=٤) لغرض ألقتال

في ألشيشان.

عدت ألى كابول بعد أتمام ألتدريب وبعدها ذهبت ألى جلال اباد (يوم واحد قبل سقوط

قندهان)

غادرت جلال اباد الى تورا بورا ومنها الى باكستان وكان في نيتي الاستمرار في السفر الى

بلدي السعوديه لان والدتي كانت مريضه وأصرت على عودتي فورا هناك اتصلت

بالمسؤولين الباكستانيين وهم بدورهم سلموني الى القوات الامريكيه

٥-(راجع ٣ب و ٤ اعلاه)

٦- لم اقاتل ضد قوات تحالف الشمال كما لم اقدم اي عون الى طالبان

٧- ان موقع ا لتدريب كان يقع على بعد حوالي كيلومتر واحد من الخطوط الاماميه علما اني

الصفحة الدولى من جموع صفحة

EXHIBIT D-b

S.P

لم اقاتل قط انما كنت اتدرب فقط.

نذر أحمد مبارك الكاجري

ليكسس

M 08-23-2004

الصفحة الثانية

Unclassified

## Combatant Status Review Board

TO: Personal Representative

FROM: OIC, CSRT

Subject: Summary of Evidence for Combatant Status Review Tribunal – Al Jabri, Bandar Ahmad Mubarak

1. Under the provisions of the Department of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates he was associated with the Taliban and its allies and supported the Taliban efforts of engaging in hostilities against the United States or its coalition partners.

    a. Detainee is associated with the Taliban and groups who fought against the US or its coalition partners.

        1. Detainee admits to being affiliated and allied with the Taliban.

        2. Detainee stayed at bunker with people who were fighting against the Northern Alliance.

    b. Detainee supported the Taliban forces in its hostilities against the US or its coalition partners.

        1. Detainee traveled to Afghanistan to receive military training.

        2. Detainee was trained on the AK-47, RPG, hand grenades, PK machine guns and 82mm mortar guns.

        3. Detainee was trained on the Kalashnikov rifle, BK rifle, pistols, rocket propelled grenades, hand grenades, land navigation, low crawling, and physical training.

        4. Detainee traveled with a group of men to Konduz, Afghanistan who were fighting against the Northern Alliance.

Unclassified

EXHIBIT  R-1

Unclassified

5.  Detainee was trained in the Northern part of Afghanistan on the 40mm anti-aircraft guns.

6.  Detainee traveled to the front lines in the battle against the Northern Alliance.

7.  Detainee was assigned to a mortar squad approximately one kilometer from the front line north of Kabul, Afghanistan.

4.  The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant.  The Tribunal President will determine the reasonable availability of evidence or witnesses.

Unclassified

Page _____2____ of __2____



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

August 6, 2004

REQUEST FOR REDACTION OF NATIONAL SECURITY INFORMATION

ISN 182

Pursuant to the Secretary of the Navy Order of 29 July 2004, Implementation of Combatant Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba, Section D, paragraph 2, the FBI requests redaction of the information herein marked[1]. The FBI makes this request on the basis that said information relates to the national security of the United States[2]. Inappropriate dissemination of said information could damage the national security of the United States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

The FBI certifies the aforementioned redaction contains no information that would support a determination that the detainee is not an enemy combatant.

---

[1]Redactions are marked by means of pink/blue highlighter on the OARDEC provided FBI document.

[2]See Executive Order 12958

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

Page ___/___ of ___/___

EXHIBIT R-2

Modern Arabic Translation
OARDEC (#3344)
Al Jabri, Bandar Ahmed Mubarak ████

Relative to the US Government's Summary of Evidence for the Combatant Status Review Tribunal , I, Al Jabri, Bandar Ahmad Mubarak, provide the following information:

3. a.    1. I have never admitted to be to being a member of the Taliban. I used the Taliban's available resources for training but never fought against the Northern Alliance or the US. I wanted to use the training provided to fight in Chechnya.

2. The training received is individually provided. It was not a military camp with group training. Weapons were available for training and I did learn to use these weapons: Kalishnikov rifle, Bika, hand gun, RPG, hand grenade, 82mm canon. I also learned navigation by stars, crawling and other physical training. I never used the weapons against the Northern Alliance.

3. b.    1. I traveled to Afghanistan to receive the available Taliban weapons training but not for the purposes of fighting against the Northern Alliance nor to join or support the Taliban.

2. and 3. (see 3.a.2. above)

4. I did travel with a group of people to Konduz but I only knew why I was going and not why they were going. I was going to receive anti-aircraft artillery training (3. b. 5.) in order to fight in Chechnya. I returned to Kabul after this training and then went to Jalalabad (about one day before ~~Kandahar~~ fell). I left Jalalabad to go to Tora Bora and on to Pakistan with the intention of continuing home to Saudi Arabia because my mother was sick and insisted I come home right away. I contacted Pakistani officials who ultimately turned me over to the Americans.

↙ Kabul Ame 25 Aug 04

5. (see 3. b. 4. above)

6. I did not fight against the Northern Alliance nor did I provide any support to the Taliban.

7. The training area was located approximately one Km from the front line but I was not fighting, I was training.

---

Bandar Ahmad Mubarak al Jabri  ✳

✳ Arabic translation signed by detainee on 23 Aug 04.

Exhibit D-b

UNCLASSIFIED//~~FOUO~~

## Personal Representative Review of the Record of Proceedings

I acknowledge that on 27 August 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #182.

___X___ I have no comments.

_____ My comments are attached.



Name

_27 AUG 04_
Date



Signature

ISN #182
Enclosure (7)