IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALAM ABDULLAH SAID,<br><br>Petitioner,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-2384 (RWR)<br>)<br>)<br>)<br>) |

## DECLARATION OF TERESA A. McPALMER

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1. I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2. I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Salam Abdullah Said that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 24 May 2006

Teresa A. McPalmer
CDR, JAGC, U. S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 0359
08 NOV 2004

~~FOR OFFICIAL USE ONLY~~

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 126**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN # 126 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

~~FOR OFFICIAL USE ONLY~~



Department of Defense
Director, Combatant Status Review Tribunals

4 Oct 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #13

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

**MEMBERS**:

███████████████, Colonel, U.S. Army; President

███████████████, Commander, JAGC, U.S. Naval Reserve; Member (JAG)

███████████████, Commander, U.S. Navy; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy

3 Nov 04

MEMORANDUM

From: Legal Advisor
To:   Director, Combatant Status Review Tribunal

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 126

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal # 13 of 4 October 2004
      (2) Record of Tribunal Proceedings

1. A legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I find that:

   a. The detainee was properly notified of the Tribunal process and actively participated in the unclassified session of the Tribunal proceeding.

   b. The Tribunal was properly convened and constituted by enclosure (1).

   c. The Tribunal complied with the provisions of references (a) and (b).

   d. The detainee did not request witnesses.

   e. The Tribunal's decision that detainee # 126 is properly classified as an enemy combatant was unanimous.

   f. The detainee's Personal Representative was given the opportunity to review the record of proceedings and affirmatively declined to submit comments.

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

T. A. McPALMER
CDR, JAGC, USN



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

15 October 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN# 126

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ███.

DAVID L. TAYLOR
Colonel, USAF

~~SECRET//NOFORN//X1~~

### (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: __#13__

(U) ISN#: __126__

Ref:   (a) (U) Convening Order for Tribunal #13 of 4 October 2004 (U)
       (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
       (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:  (1) (U) Unclassified Summary of Basis For Tribunal Decision (U/~~FOUO~~)
       (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
       (3) (U) Summary of Detainee/Witness Testimony (U/~~FOUO~~)
       (4) (U) Copies of Documentary Evidence Presented (S/NF)
       (5) (U) Personal Representative's Record Review (U/~~FOUO~~)

1. (U) This Tribunal was convened on 12 October 2004 by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 12 October 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #126 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, al Qaida and Taliban, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Colonel, U.S. Army
Tribunal President

DERV FM: Multiple Sources     ~~SECRET//NOFORN//X1~~
DECLASS: X1

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

(Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: #13
ISN #: 126

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida and the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee traveled from his home in Saudi Arabia to Afghanistan via Pakistan in August 2001 to join the Jihad and fight with the Taliban. After receiving 10 days of weapons training in Kandahar, Afghanistan, the Detainee joined the Taliban on the front lines. He carried a Kalashnikov when he withdrew from the front lines to Konduz. The Detainee surrendered between Konduz and Mazar-e-Sharif and was sent to Al-Janki prison in Mazar-e-Sharif. He was present at the prison uprisings in Al-Janki. The Detainee chose to participate in the Tribunal process. He did not request that witnesses be called, did not request documents be produced, and made a sworn verbal statement. In his verbal statement, the Detainee denied being an al Qaida or Taliban member or participating in any military operations against the United States or its coalition partners.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a and R-1 through R-12.

    b. Testimony of the following persons: N/A

    c. Sworn statement of the detainee.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

### 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested no witnesses and requested no additional evidence be produced; therefore, no rulings on these matters were required.

### 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

a. The Recorder offered Exhibit R-1 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee testified that he traveled from Saudi Arabia to Afghanistan to answer a fatwa issued by a sheik. The fatwa indicated that people in Afghanistan needed help. The Detainee traveled alone using a Saudi Arabian passport. He indicated that although he was a student, he was of a social status that he could afford to finance his own trip. While he had no predetermined destination in Afghanistan, the Detainee stated that he wanted to go to Afghanistan to see for himself what the people needed. The Detainee denied receiving any weapons training. After recovering from an illness, the Detainee went to the front lines to see what was happening. When the people started to retreat from the front lines, the Detainee joined them. At this time, an unidentified individual gave the Detainee a Kalashnikov so that he could protect himself while traveling to Konduz. The Detainee stated that he did not know how to use the weapon, nor did he inspect that weapon to see if it had ammunition in it. Upon arriving at Konduz, a Taliban officer took the Kalashnikov away from the Detainee. The Detainee was then captured somewhere between Konduz and Mazar-e-Sharif. He indicated that he did not "surrender" as stated in the Unclassified Summary, as this would imply that he had a weapon with him. The Detainee was taken to the Al-Janki prison. He stated that while he was present at the prison during the uprisings, he did not participate in the riot.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

### 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

UNCLASSIFIED//~~FOUO~~

ISN #126
Enclosure (1)
Page 2 of 3

UNCLASSIFIED//~~FOUO~~

### 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

    b. The Detainee understood the Tribunal proceedings. The Detainee asked no questions regarding his rights and actively participated in the hearing.

    c. The Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida and the Taliban.

### 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

[signature redacted]

Colonel, U.S. Army
Tribunal President

 

UNCLASSIFIED//FOUO

### Summarized Unsworn Detainee Statement

*The Tribunal President read the Hearing Instructions to the Detainee. The Detainee confirmed that he understood the process and had no questions.*

*The Recorder presented the Unclassified Summary of Evidence to the Tribunal and gave a brief description of its contents. A closed session was then requested to present classified evidence to the Tribunal.*

*The Detainee was properly sworn and informed the Tribunal that the Personal Representative would make his statement for him. The Personal Representative was then instructed to respond to the points made in the Unclassified Summary on behalf of the Detainee and the Detainee would comment as needed. The Personal Representative read the numbered paragraphs contained in Exhibit R-1 and provided the Detainee's responses to each.*

Paragraph 3.a.1. The Detainee traveled from Saudi Arabia to Afghanistan via Pakistan in August 2001 to join the Jihad and fight with the Taliban.

I did not say I went there (Afghanistan) for the Jihad or to fight with the Taliban. I went for the fatwa from the clergy to promote and search for things. I didn't hear of fatwa I read of fatwa calling for people going there to help people.

*The Personal Representative requested that the Detainee give the Tribunal a definition of fatwa.*

I don't know how to explain it. I don't have the knowledge... I just know that an important sheik talks.

*Personal Representative asks what this particular fatwa was for.*

This particular fatwa was about helping those who needed help.

Paragraph 3.a.2. The Detainee received 10 days of weapons training while in Kandahar.

Not true. I did not say this to the interrogator or with any interrogator.

Paragraph 3.b. The Detainee participated in military operations against the coalition.

Not true.

Paragraph 3.b.1. The Detainee joined the Taliban on the front line following training.

Not true. But, I did go to the front lines for a visit. I did not have a weapon nor did I do anything at the front line.

ISN# 126
Enclosure (3)
Page 1 of 6

UNCLASSIFIED//FOUO

UNCLASSIFIED//~~FOUO~~

Paragraph 3.b.2. The Detainee was given a Kalashnikov when the front lines withdrew to Konduz.

Correct. They gave me an AK47 to protect myself. I needed an AK47 because we were traveling a long distance and did not know what I would see or run in to. There were robbers. I did not fire the weapon. When I arrived at Konduz, a Taliban official took the AK47.

Paragraph 3.b.3. The Detainee surrendered between Konduz and Mazar-e-Sharif.

True. I was arrested with regular people. There were a lot of people. The word surrendered implies that I had a weapon, but I didn't have any weapon at that time. The word surrendered implies that meaning and it's not true.

Paragraph 3.b.4. The Detainee was sent to the Al-Janki prison in Mazar-e-Sharif, where he was present for the prison uprisings.

True. I was there but I did not take part in the uprising. I heard there were 700 hundred people killed.

***The Detainee concluded his statement and agreed to answer questions from the Tribunal.***

Tribunal Member questions

    Q. Where were you born?

    A. Tabokh.

    Q. How old are you?

    A. Twenty-four approximately.

    Q. Were you ever a member of any armed force and did you ever receive military training?

    A. No.

    Q. Who issued your passport?

    A. The passport itself?

    Q. Yes, which nation?

UNCLASSIFIED//~~FOUO~~

A. Saudi Arabia.

Q. Please describe your route of travel when you went to Afghanistan in answer to the fatwa.

A. Please clarify the question.

Q. Yes. Where did you leave from and how did you travel? Did you take one airplane, two airplanes, did you go by car...?

A. From Jetti to Qatar to Karachi to Quetta.

Q. And who paid for your travel?

A. Myself.

Q. What was your usual occupation? How did you pay for yourself?

A. I am a student but my social standing is very good. I have my own money.

Q. When you visited the front lines where did you stay and with whom did you stay?

A. I stayed with people. I don't know truthfully who they were exactly. But, they were wearing normal Afghan clothes. The place itself, I don't know exactly where it was, on the first line, last line.

Q. Where you were staying, were there any members of the Taliban or al Qaida to your knowledge?

A. I didn't know the people that were staying there.

Q. You mentioned that you were given an AK47 to protect yourself. Who gave you this weapon?

A. People that were moving back, I went with them. I didn't have a weapon. I didn't have anything. So one person came up to me and said how can you travel this distance without having a weapon. I told him I had not been trained and I don't know how to use a weapon. So he gave me a Kalashnikov and said this is to protect yourself until you get there.

Q. Do you know the name of this person?

A. No.

Q. Do you know his affiliation, his nationality?

ISN# 126
Enclosure (3)
Page 3 of 6

UNCLASSIFIED//~~FOUO~~

Case 1:05-cv-02384-UNA   Document 31-2   Filed 06/02/2006   Page 13 of 18

UNCLASSIFIED//~~FOUO~~

A. At that time, it was the beginning of nighttime so it was not clear.

Q. Could you tell by his accent where he came from?

A. A person who speaks modern Arabic or classical Arabic, you can't tell by the accent where he is from.

Q. So he spoke Arabic to you.

A. Yes.

Q. Did he give you bullets, rounds, or ammunition with this weapon?

A. No parts. I did not examine the weapon. I just took it and left.

Q. How long did you have the weapon before you turned it over to the Taliban?

A. About two days. We were walking on foot.

Q. Did you have a job in Saudi Arabia?

A. No.

Q. What were you a student of?

A. High school. I finished high school.

Q. You were not a student at a university or college?

A. It was during the summer. I was preparing my paperwork to begin studying.

Q. Did you travel with anyone else to Afghanistan?

A. No.

Q. Do you have any brothers?

A. I have many brothers.

Q. Were any of you brothers in Afghanistan before you went to Afghanistan?

A. No.

Q. What kind of help did the fatwa ask for and why?

ISN# 126
Enclosure (3)
Page 4 of 6

UNCLASSIFIED//~~FOUO~~

 

UNCLASSIFIED//~~FOUO~~

A. Helping people because they were in need of help. I'm prepared to explain it further if you are prepared to listen. It's a lot of words. During the Afghan Jihad, everyone was helping the Jihad at that time. Even America was helping the Jihad. So after a while, there's fighting between the people there. So the picture to us was tainted and the reputation was not good. And after a while, there was fighting in Afghanistan and then the fighting started to slow down and people were united for one government. We had the sheiks and normal people started saying to us that there are people there who need your help and you should go help them. The situation was now better than it was before. So these are the reasons that caused me to go over there.

Q. So you went there to help them fight?

A. No.

Q. You have not told me why or what help that you were there to give.

A. I didn't know myself what kind of help I would be giving when I went there. I wanted to go there to see what the situation was and what help was needed.

Q. Are you the oldest of your brothers?

A. No.

Q. Why did you feel you must go if none of your brothers went?

A. That's a strange question.

Q. If your brothers did not feel it wasn't important to go help, why did you decide to go?

A. Okay... now, are your brothers all in the military?

Q. No.

A. Everyone has there own point of view.

Q. Okay. If you were there to help people, why would you go to the front line?

A. I was in the clinic in the hospital. I was sick for a while. So I did not know that there was fighting. I thought the situation was normal. They told me at the hospital or clinic that there was fighting. One of the reasons is that no one gave me a good answer. So I went for myself to investigate this issue.

UNCLASSIFIED//~~FOUO~~

Tribunal President question

    Q. Did you have a planned destination when went into Afghanistan? You were heading for a certain place?

    A. No. I was just going to Afghanistan. I did not know.

*The Tribunal President confirms that the Detainee had no further evidence or witnesses to present to the Tribunal. The Tribunal President explains the remainder of the Tribunal process to the Detainee and adjourns the Tribunal.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



Colonel, United States Army
Tribunal President

ISN# 126
Enclosure (3)
Page 6 of 6

UNCLASSIFIED//~~FOUO~~

# DETAINEE ELECTION FORM

Date: 6 Oct 2004
Start Time: 0750
End Time: 0850

ISN#: 126

Personal Representative: ▮
(Name/Rank)

Translator Required? YES      Language? ARABIC

CSRT Procedure Read to Detainee or Written Copy Read by Detainee? YES

**Detainee Election:**

[X] Wants to Participate in Tribunal

[ ] Affirmatively Declines to Participate in Tribunal

[ ] Uncooperative or Unresponsive

**Personal Representative Comments:**

Detainee will participate in the Tribunal. Detainee did not request any witnesses.

Personal Representative: ▮

Exhibit D-a

UNCLASSIFIED

## Combatant Status Review Board

TO: Personal Representative

FROM: OIC, CSRT (26 September 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal - BAHAYSH, Salim Abdallah Said.

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that he is a Taliban fighter, associated with al Qaida, and participated in military operations against the coalition.

   a. The detainee is a Taliban fighter and associated with al Qaida:

      1. The detainee traveled from Saudi Arabia to Afghanistan via Pakistan in August 2001 to join the jihad and fight with the Taliban.

      2. The detainee received 10 days of weapons training while in Kandahar.

   b. The detainee participated in military operations against the coalition.

      1. The detainee joined the Taliban on the front line following training.

      2. The detainee was given a Kalishnikov when the front lines withdrew to Konduz.

      3. The detainee surrendered between Konduz and Mazar-e-Sharif.

      4. The detainee was sent to the Al-Janki prison in Mazar-e-Sharif, where he was present for the prison uprisings.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

Page 1 of 1

Exhibit R1

UNCLASSIFIED//FOUO

## Personal Representative Review of the Record of Proceedings

I acknowledge that on **14** October 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #126.

_X_ I have no comments.

___ My comments are attached.



_____USAF          14 Oct 04
Name                    Date

ISN #126
Enclosure (5)

UNCLASSIFIED//FOUO