IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANWAR HAMDAN MUHAMMED AL-NUR,   )
    )
    )
     Petitioner,   )
    )
    v.   )   Civil Action No. 05-2384 (RWR)
    )
GEORGE W. BUSH, *et al.,*   )
    )
     Respondents.   )
    )

## DECLARATION OF TERESA A. McPALMER

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.    I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.    I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Anwar Hamdan Muhammed al-Nur that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  24 May 2006                                           _Teresa A. McPalmer_
                                                      Teresa A. McPalmer
                                                      CDR, JAGC, U. S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 8 6 2

~~FOR OFFICIAL USE ONLY~~

2 9 JAN 2005

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 226**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN # 226 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED

19 Jan 05

MEMORANDUM

From:  Assistant Legal Advisor
To:     Director, Combatant Status Review Tribunal
Via:    Legal Advisor    ~SLC

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
        FOR DETAINEE ISN # 226

Ref:    (a) Deputy Secretary of Defense Order of 7 July 2004
        (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:   (1) Appointing Order for Tribunal # 21 of 16 November 2004
        (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I
find that:

    a.  The detainee was properly notified of the Tribunal process and, as evidenced by his
non-cooperation, declined to participate.  No evidence suggested that detainee failed to
understand the Tribunal process or that he lacked the mental or physical ability to
participate in the Tribunal process.

    b.  The Tribunal was properly convened and constituted by enclosure (1).

    c.  The Tribunal substantially complied with all provisions of references (a) and (b).
Note that some information in exhibits R-4 through R-6 was redacted.  The FBI properly
certified in exhibit R-2 that the redacted information would not support a determination
that the detainee is not an enemy combatant.

    d.  The detainee did not request that any witnesses or evidence be produced.

    e.  The Tribunal's decision that detainee # 226 is properly classified as an enemy
combatant was unanimous.

2.  The proceedings and decision of the Tribunal as reflected in enclosure (2) are legally
sufficient and no corrective action is required.

UNCLASSIFIED

UNCLASSIFIED

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # 226

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

BREE A. ERMENTROUT
CDR, JAGC, USNR



# Department of Defense
## Director, Combatant Status Review Tribunals

16 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #21

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

**MEMBERS:**

██████████████, Colonel, U.S. Air Force; President

██████████████, Lieutenant Colonel, U.S. Air Force; Member

██████████████, Major, U.S. Air Force Reserve; Member (JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy

SECRET//NOFORN//X1

## (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (3).

(U) TRIBUNAL PANEL: ___#21___

(U) ISN#: ___226___

Ref:   (a) (U) Convening Order for Tribunal #21 of 16 November 2004 (U)
      (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
      (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:   (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
      (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
      (3) (U) Copies of Documentary Evidence Presented (S/NF)
      (4) (U) Personal Representative's Record Review (U/FOUO)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 3 December 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #226 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee was a part of, or supported al Qaida. This evidence as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Tribunal President

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#21_____
ISN #: _____226_____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and was a part of, or supported al Qaida. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The Tribunal conducted the proceeding on 3 December 2004. The Recorder presented Exhibit R-1 through R-3 during the unclassified portion of the Tribunal. The Unclassified Summary of Evidence, Exhibit R-1, indicates, among other things, that the detainee: traveled from Saudi Arabia through Jordan, Syria, and Iran to Heart, Afghanistan then to Kandahar and Kabul, Afghanistan; name was found on a list of captured al Qaida members captured from a senior al Qaida member's computer hard drive; name and other information was found on the hard drive of a computer confiscated from members of the suspected al Qaida cell involved in the October 2002 attack on U.S. Marines on Faylaka Island; name and contents of trust account was found on list of al Qaida Mujahidin recovered from computer media seized during a raid on an al Qaida safe house in Rawalpindi, Pakistan; was captured with other Arabs by Pakistani Security forces in November 2001 crossing the border from Afghanistan. The Recorder called no witnesses.

The detainee did not attend the Tribunal hearing and was unresponsive and uncooperative during the interview process. The Guantanamo Personal Representative indicated that, according to JDIMS, the detainee spoke fluent English and informed the detainee that his unresponsiveness was deemed a declination to participate. The detainee's decision is reflected on the Detainee Election Form (Exhibit D-a) and Guantanamo Personal Representative affidavit (Exhibit D-b). The Personal Representative presented no evidence and called no witnesses.

During the classified portion of the Tribunal hearing, the Recorder presented Exhibits R-4 through R-29. The Personal Representative presented no classified exhibits.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

The classified exhibits support the assertions on the Unclassified Summary of Evidence and the Tribunal found the detainee is properly classified as an enemy combatant.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: R-1 through R-29, D-a, and D-b.

    b. Testimony of the following persons: None.

    c. Statement of the detainee: None.

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The detainee requested no witnesses.

The detainee requested no additional evidence be produced.

## 5. Discussion of Unclassified Evidence

The Recorder offered Exhibit R-1 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 is the FBI redaction letter and provided no useable evidence. Exhibit R-3 was the President's Executive Order 13224, dated 23 September 2001. Because there was no other unclassified evidence for the Tribunal to consider, the Tribunal had to look to the classified exhibits to support the assertions on the Unclassified Summary of Evidence and the Tribunal's conclusions.

## 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT Legal Advisor

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The detainee chose not to participate in the Tribunal proceeding. No evidence was produced that caused the Tribunal to question whether the detainee was mentally and

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

physically capable of participating in the proceeding, had he wanted to do so. Accordingly, no medical or mental health evaluation was requested or deemed necessary.

      b.  The Personal Representative informed the Tribunal that the detainee understood the Tribunal process but chose not to participate, as indicated in Exhibit D-a and Exhibit D-b.

      c.  The detainee is properly classified as an enemy combatant because he was a part of, or supporting al Qaida.

**8.  Dissenting Tribunal Member's report**

None.  The Tribunal reached a unanimous decision.

Respectfully submitted,

████████████

Colonel, U.S. Air Force
Tribunal President

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

## DETAINEE ELECTION FORM

**Date:** 26 Nov 2004

**Start Time:** 0925

**End Time:** 0942

**ISN#:** 226

**Personal Representative:** ▮▮▮▮▮▮▮▮▮▮ MAJOR, USAF
(Name/Rank)

**Translator Required?** YES          **Language?** ARABIC

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** YES

-----------------------------------------------------------------------

## Detainee Election:

[ ]     **Wants to Participate in Tribunal**

[ ]     **Affirmatively Declines to Participate in Tribunal**

[X]     **Uncooperative or Unresponsive**

## Personal Representative Comments:

Detainee didn't say a word the entire interview. Did not nod or indicate in any way his response to yes or no questions. Remained unresponsive and looked at the floor with his head down the entire interview. I explained the entire CSRT process and read him the unclassified summary. I asked if he wanted to participate in the tribunal process and appear before the tribunal (no response). I asked if he wanted to submit a written statement to the tribunal (no response). I asked if he wanted to call any witnesses who could offer testimony on his behalf (no response). After each question (above) I told him that I assume by his absence that his answer is no. I explained that the tribunal would still be held in his absence. JDIMS shows this detainee speaking fluent English and Arabic. FYI: I did use an Arabic interpreter.

Personal Representative: ▮▮▮▮▮▮▮▮▮▮▮▮

UNCLASSIFIED//~~FOUO~~

**Exhibit D-a**

An initial interview was held with detainee Anwar Hamdan Muhammed Al Nur (ISN 226) on 26 Nov 2004.

The detainee was unresponsive and uncooperative in the interview.

It was determined that the detainee spoke the language of the linguist.

The detainee was reminded that the U.S. government established a Combat Status Review Tribunal to review his designation as an enemy combatant.

The detainee was advised that I am not an attorney nor his advocate, but will assist him in the CSRT process if he chooses to participate.

The detainee was advised that a tribunal of military officers will review his enemy combatant designation even if he chooses not to participate.

The detainee was advised that he will have an opportunity to speak on his own behalf and call witnesses and ask questions of the witnesses and tribunal members.

The detainee was advised that he may choose not to appear at the Tribunal hearing or participate in the CSRT process, but that I could present information on his behalf.

Since the detainee was unresponsive and uncooperative in the interview, I assume that he chooses not to participate in the CSRT process and does not want me to present information on his behalf.

I affirm that the information above is complete and accurate to the best of my knowledge.

_____, Major, USAF

26 Nov 2004
Date

Exhibit D-b

UNCLASSIFIED

## Combatant Status Review Board

TO: Personal Representative

FROM: OIC, CSRT (16 November 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – AL NUR, Anwar Hamdan Muhammed

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that the detainee is a member of al Qaida and supported al Qaida and the Taliban in military operations against the United States and its coalition partners.

   a. The detainee is a member of al Qaida and supported al Qaida and the Taliban in military operations against the United States and its coalition partners:

      1. During November 2001, the detainee traveled from Saudi Arabia through Jordan, Syria, and Iran (Tehran and Mashhad) to Herat, Afghanistan, then on to Kandahar and Kabul.

      2. The detainee's name was found on a file in a computer used by suspected al Qaida members listing seventy-eight associates incarcerated in Pakistan.

      3. The detainee's name and other information was found in a 02 September 2002 "chat session" found on the hard drive of a computer confiscated from members of the suspected al Qaida cell involved in the October 2002 attack on U.S. Marines on Faylaka Island.

      4. The detainee's name, hometown, and mobile phone number was included in a list of eighty-four Mujahidin fighters captured as they crossed the border into Nangarhar Province, by the Pakistani Government.

      5. The detainee's name, and other personal information, was found on a hard drive that was associated with Khalid Shaykh Muhammad, a known high-level al Qaida operative, and which was seized during joint raids with the Pakistani Inter-Services Intelligence Directorate on 01 March 2003, in Pakistan.

      6. The detainee worked for the NGO al Wafa in Afghanistan.

UNCLASSIFIED

R-1

UNCLASSIFIED

7.   The al Wafa Humanitarian Organization has been designated as an organization that assists in, sponsors, or provides financial, material, or technological support for, or financial or other services to, or in support of, acts of terrorism.

8.   The detainee's name was found on a list of al Qaida Mujahidin and the contents of his "trust" account was found on files recovered from various computer media seized during raids on an al Qaida safehouses in Rawalpindi, on 01 March 2003 and Karachi on 11 September 2002.

9.   The detainee, along with other Arabs he was traveling with, was captured by the Pakistani Military in November 2001 while trying to cross into Pakistan from Afghanistan.

4.   The detainee has the opportunity to contest his designation as an enemy combatant.  The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

**Memorandum**          UNCLASSIFIED



| To | : | Department of Defense | Date | 11/15/2004 |
|---|---|---|---|---|

Office of Administrative Review
for Detained Enemy Combatants
Capt. Charles Jamison, OIC, CSRT

From  :  FBI GTMO
Counterterrorism Division
Asst. Gen. Counsel ███████████

Subject   REQUEST FOR REDACTION OF
NATIONAL SECURITY INFORMATION
████████████

    Pursuant to the Secretary of the Navy Order of 29 July
2004, Implementation of Combatant Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba,
Section D, paragraph 2, the FBI requests redaction of the
information herein marked[1].  The FBI makes this request on the
basis that said information relates to the national security of
the United States[2].  Inappropriate dissemination of said
information could damage the national security of the United
States and compromise ongoing FBI investigations.

  CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
  DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

    The FBI certifies the aforementioned redaction contains
no information that would support a determination that the
detainee is not an enemy combatant.

    The following documents relative to ISN 226 have been
redacted by the FBI and provided to the OARDEC:

FD-302 dated 04/11/02
FD-302 dated 06/28/02
FD-302 dated 04/28/03

---

[1]Redactions are blackened out on the OARDEC provided FBI document.

[2]See Executive Order 12958

Page 1 of 2

Exhibit R-2

Page 1 of 2   R-2

UNCLASSIFIED

Memorandum from ████████ to Capt. Charles Jamison
Re:  REQUEST FOR REDACTION, 11/15/2004


        If you need additional assistance, please contact Asst.
Gen. Counsel ████████████████████████████,
                              or Intelligence Analyst (IA)
   IA ████████████████████████████████████████

-2-

UNCLASSIFIED

23 September 2001

# Executive Order

**Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism**

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.)(IEEPA), the National Emergencies Act (50 U.S.C. 1601 et seq.), section 5 of the United Nations Participation Act of 1945, as amended (22 U.S.C. 287c) (UNPA), and section 301 of title 3, United States Code, and in view of United Nations Security Council Resolution (UNSCR) 1214 of December 8, 1998, UNSCR 1267 of October 15, 1999, UNSCR 1333 of December 19, 2000, and the multilateral sanctions contained therein, and UNSCR 1363 of July 30, 2001, establishing a mechanism to monitor the implementation of UNSCR 1333,

I, GEORGE W. BUSH, President of the United States of America, find that grave acts of terrorism and threats of terrorism committed by foreign terrorists, including the terrorist attacks in New York, Pennsylvania, and the Pentagon committed on September 11, 2001, acts recognized and condemned in UNSCR 1368 of September 12, 2001, and UNSCR 1269 of October 19, 1999, and the continuing and immediate threat of further attacks on United States nationals or the United States constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and in furtherance of my proclamation of September 14, 2001, Declaration of National Emergency by Reason of Certain Terrorist Attacks, hereby declare a national emergency to deal with that threat.

I also find that because of the pervasiveness and expansiveness of the financial foundation of foreign terrorists, financial sanctions may be appropriate for those foreign persons that support or otherwise associate with these foreign terrorists.

I also find that a need exists for further consultation and cooperation with, and sharing of information by, United States and foreign financial institutions as an additional tool to enable the United States to combat the financing of terrorism.

I hereby order:

> **Section 1.** Except to the extent required by section 203(b) of IEEPA (50 U.S.C. 1702(b)), or provided in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date of this order, all property and interests in property of the following persons that are in the United States or that hereafter come within the United States, or that hereafter come within the possession or control of United States persons are blocked:



UNCLASSIFIED

R-3

(a) foreign persons listed in the Annex to this order;

(b) foreign persons determined by the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, to have committed, or to pose a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States;

(c) persons determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, to be owned or controlled by, or to act for or on behalf of those persons listed in the Annex to this order or those persons determined to be subject to subsection 1(b), 1(c), or 1(d)(i) of this order;

(d) except as provided in section 5 of this order and after such consultation, if any, with foreign authorities as the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, deems appropriate in the exercise of his discretion, persons determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General;

> (i) to assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorism or those persons listed in the Annex to this order or determined to be subject to this order; or

> (ii) to be otherwise associated with those persons listed in the Annex to this order or those persons determined to be subject to subsection 1(b), 1(c), or 1(d)(i) of this order.

**Sec. 2.** Except to the extent required by section 203(b) of IEEPA (50 U.S.C. 1702(b)), or provided in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date:

   (a) any transaction or dealing by United States persons or within the United States in property or interests in property blocked pursuant to this order is prohibited, including but not limited to the making or receiving of any contribution of funds, goods, or services to or for the benefit of those persons listed in the Annex to this order or determined to be subject to this order;

(b) any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in this order is prohibited; and

(c) any conspiracy formed to violate any of the prohibitions set forth in this order is prohibited.

**Sec. 3.** For purposes of this order:

(a) the term "person" means an individual or entity;

(b) the term "entity" means a partnership, association, corporation, or other organization, group, or subgroup;

(c) the term "United States person" means any United States citizen, permanent resident alien, entity organized under the laws of the United States (including foreign branches), or any person in the United States; and

(d) the term "terrorism" means an activity that --

(i) involves a violent act or an act dangerous to human life, property, or infrastructure; and

(ii) appears to be intended --

(A) to intimidate or coerce a civilian population;

(B) to influence the policy of a government by intimidation or coercion; or

(C) to affect the conduct of a government by mass destruction, assassination, kidnapping, or hostage-taking.

**Sec. 4.** I hereby determine that the making of donations of the type specified in section 203(b)(2) of IEEPA (50 U.S.C. 1702(b)(2)) by United States persons to persons determined to be subject to this order would seriously impair my ability to deal with the national emergency declared in this order, and would endanger Armed Forces of the United States that are in a situation where imminent involvement in hostilities is clearly indicated by the circumstances, and hereby prohibit such donations as provided by section 1 of this order.

Furthermore, I hereby determine that the Trade Sanctions Reform and Export Enhancement Act of 2000 (title IX, Public Law 106-387) shall not affect the imposition or the continuation of the imposition of any unilateral agricultural sanction or unilateral medical sanction on any person determined to be subject to this order because imminent involvement of the Armed Forces of the United States in hostilities is clearly indicated by the circumstances.

**Sec. 5.** With respect to those persons designated pursuant to subsection 1(d) of this order, the Secretary of the Treasury, in the exercise of his discretion and in

consultation with the Secretary of State and the Attorney General, may take such other actions than the complete blocking of property or interests in property as the President is authorized to take under IEEPA and UNPA if the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, deems such other actions to be consistent with the national interests of the United States, considering such factors as he deems appropriate.

**Sec. 6.** The Secretary of State, the Secretary of the Treasury, and other appropriate agencies shall make all relevant efforts to cooperate and coordinate with other countries, including through technical assistance, as well as bilateral and multilateral agreements and arrangements, to achieve the objectives of this order, including the prevention and suppression of acts of terrorism, the denial of financing and financial services to terrorists and terrorist organizations, and the sharing of intelligence about funding activities in support of terrorism.

**Sec. 7.** The Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA and UNPA as may be necessary to carry out the purposes of this order.

The Secretary of the Treasury may redelegate any of these functions to other officers and agencies of the United States Government.

All agencies of the United States Government are hereby directed to take all appropriate measures within their authority to carry out the provisions of this order.

**Sec. 8.** Nothing in this order is intended to affect the continued effectiveness of any rules, regulations, orders, licenses, or other forms of administrative action issued, taken, or continued in effect heretofore or hereafter under 31 C.F.R. chapter V, except as expressly terminated, modified, or suspended by or pursuant to this order.

**Sec. 9.** Nothing contained in this order is intended to create, nor does it create, any right, benefit, or privilege, substantive or procedural, enforceable at law by a party against the United States, its agencies, officers, employees or any other person.

**Sec. 10.** For those persons listed in the Annex to this order or determined to be subject to this order who might have a constitutional presence in the United States, I find that because of the ability to transfer funds or assets instantaneously, prior notice to such persons of measures to be taken pursuant to this order would render these measures ineffectual. I therefore determine that for these measures to be effective in addressing the national emergency declared in this order, there need be no prior notice of a listing or determination made pursuant to this order.

3.a.7



UNCLASSIFIED

**Sec. 11.**

(a) This order is effective at 12:01 a.m. eastern daylight time on September 24, 2001.

(b) This order shall be transmitted to the Congress and published in the Federal Register.

GEORGE W. BUSH
THE WHITE HOUSE,
September 23, 2001

**ANNEX**

Al Qaida/Islamic Army

Abu Sayyaf Group

Armed Islamic Group (GIA)

Harakat ul-Mujahidin (HUM)

Al-Jihad (Egyptian Islamic Jihad)

Islamic Movement of Uzbekistan (IMU)

Asbat al-Ansar

Salafist Group for Call and Combat (GSPC)

Libyan Islamic Fighting Group

Al-Itihaad al-Islamiya (AIAI)

Islamic Army of Aden

Usama bin Laden

Muhammad Atif (aka, Subhi Abu Sitta, Abu Hafs Al Masri)

Sayf al-Adl

Shaykh Sai'id (aka, Mustafa Muhammad Ahmad)

Abu Hafs the Mauritanian (aka, Mahfouz Ould al-Walid, Khalid Al-Shanqiti)

UNCLASSIFIED

UNCLASSIFIED

Ibn Al-Shaykh al-Libi

Abu Zubaydah (aka, Zayn al-Abidin Muhammad Husayn, Tariq)

Abd al-Hadi al-Iraqi (aka, Abu Abdallah)

Ayman al-Zawahiri

Thirwat Salah Shihata

Tariq Anwar al-Sayyid Ahmad (aka, Fathi, Amr al-Fatih)

Muhammad Salah (aka, Nasr Fahmi Nasr Hasanayn)

Makhtab Al-Khidamat/Al Kifah

Wafa Humanitarian Organization

Al Rashid Trust

3.a.7

Mamoun Darkazanli Import-Export Company

UNCLASSIFIED

UNCLASSIFIED//~~FOUO~~

# Personal Representative Review of the Record of Proceedings

I acknowledge that on  December 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #226.

 I have no comments.

_____ My comments are attached.

_____          7 DEC 04
Name                                      _____
                                          Date

_____
Signature

ISN #226
Enclosure (4)

UNCLASSIFIED//~~FOUO~~