PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SALIM SAID, et al.,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:05 CV 2384 (RWR) (AK) |
| ) | |
| **GEORGE W. BUSH, et al.,** ) | |
| ) | |
| Respondents. ) | |

**PETITIONERS' MOTION FOR ORDER DIRECTING
RESPONDENTS TO COMPLY WITH PROTECTIVE ORDER
WITH RESPECT TO ATTORNEY-CLIENT MATERIALS**

Petitioners Salim Said, Anwar Handan Al Shimmiri, Saad Al Qahtani, Bandar Jaabir and Mohammed Zahrani ("Petitioners") by their counsel, hereby move for an order requiring Respondents to comply with the Protective Order entered on April 12, 2006, with respect to attorney-client materials and communications. In support of this Motion, Petitioners submit the accompanying memorandum of law and exhibits thereto, and state as follows:

1. On June 8, 2006, during a visit to Guantánamo to meet with Petitioners, counsel were subjected to an exhaustive and comprehensive review of the contents of their legal files by guards at Camp Echo. Certain legal materials were confiscated and never returned to counsel.

2. On June 6 and 8, 2006, Petitioners' counsel learned that letters directed to Petitioners Al Jaabri and Al Qahtani, which arrived at Guantánamo on May 17, 2006, had never been delivered to these Petitioners.

3. Respondents' actions in reading and confiscating legal materials and in failing to deliver attorney-client mail violated the Protective Order in this case and Exhibit A thereto, the Revised Procedures for Counsel Access to Detainees.

- 2 -

4. By letter dated June 28, 2006, Petitioners' counsel asked Respondents' counsel to confirm that Respondents would comply with the Protective Order, including the Revised Procedures for Counsel Access to Detainees.

5. On June 29, 2006, Petitioners' counsel received a letter from Respondents' counsel stating that:

    a. The confiscated materials "are currently in transit from Guantanamo to the Court Security Office"; and

    b. Respondents had refused to deliver the letters to Petitioners Al Jaabri and Al Qahtani because Respondents had determined that legal mail to these Petitioners was "prohibited" as of May 17, 2006 (more than one month after the Protective Order was entered).

6. Petitioners' counsel had no notice, prior to June 29, 2006, that Respondents were refusing to deliver legal mail to Petitioners Al Jaabri and Al Qahtani.

7. On July 6, 2006, Petitioners' counsel proposed that the parties enter into a stipulation confirming future compliance with the Protective Order. To date, Respondents' counsel have not responded to the July 6 letter or proposed stipulation.

- 3 -

WHEREFORE, Respondents respectfully request that this Court issue an order requiring Respondents to (1) limit the inspection of attorneys' materials at Guantánamo to searches for contraband; and (2) deliver all mail to the Petitioners in accordance with the Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantánamo Bay, Cuba.

Respectfully submitted,

/s/ David W. DeBruin
One of the Attorneys for the Petitioners        Dated: July 17, 2006

| | |
|---|---|
| Thomas P. Sullivan | David W. DeBruin (DDC Bar No. 337626) |
| Jeffrey D. Colman | JENNER & BLOCK LLP |
| Patricia A. Bronte | 601 Thirteenth Street, N.W., Suite 1200 |
| Maya D. Nath | Washington, D.C. 20005-3823 |
| JENNER & BLOCK LLP | Tel: (202) 639-6000 |
| One IBM Plaza | Fax: (202) 639-6066 |
| Chicago, IL 60611 | |
| Tel: (312) 222-9350 | |
| Fax: (312) 527-0484 | |

*Of Counsel*
Barbara Olshanksy (BO3635)
Gitanjali S. Gutierrez (GG1234)
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SALIM SAID, et al.,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | **No. 1:05 CV 2384 (RWR) (AK)** |
| ) | |
| **GEORGE W. BUSH, et al.,** ) | |
| ) | |
| **Respondents.** ) | |

**MEMORANDUM IN SUPPORT OF PETITIONERS'
MOTION FOR ORDER DIRECTING
RESPONDENTS TO COMPLY WITH PROTECTIVE ORDER
WITH RESPECT TO ATTORNEY-CLIENT MATERIALS**

Petitioners, by their counsel, respectfully move for an order, consistent with this Court's Minute Order of April 12, 2006, requiring Respondents to (1) limit the inspection of attorneys' materials at Guantánamo to searches for contraband; and (2) deliver all mail to the Petitioners in accordance with the Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantánamo Bay, Cuba.

**STATEMENT OF FACTS**

Lawyers at Jenner & Block in Chicago represent the five (5) Petitioners in this case. On April 12, 2006, this Court entered a Protective Order and Procedures for Counsel Access to Petitioners at the United States Naval Base in Guantanamo Bay, Cuba (the "Protective Order"). Dkt. No. 15. Pursuant to this Protective Order, four of Petitioners' lawyers (Thomas P. Sullivan, Jeffrey D. Colman, Patricia A. Bronte, and Maya D. Nath) have visited and sent mail to the clients detained at Guantánamo Bay Naval Station ("GTMO"). In accordance with two orders of this Court, and for the first time during their 4½-year detention, four of the five Petitioners were

CHICAGO_1427339_2

permitted to meet with their lawyers from June 6 to 9, 2006. *See* Dkt. No. 23 (Mag. Judge Kay's order dated May 23, 2006); Judge Roberts's minute order dated May 26, 2006.[1]

On June 8, 2006, guards at Camp Echo read – and discussed among themselves and with unknown other persons – the legal materials of Petitioners' counsel. Bronte Decl. (attached as Exhibit A) at ¶ 3. Although there were only three attorneys, the guards' exhaustive search of their files lasted at least 45 minutes. *Id.* Rather than simply inspecting the attorneys' files for contraband, the guards thoroughly read almost each page of the files. *Id.* At certain points during their review, the guards contacted unidentified persons by radio and read or summarized the content of individual documents in the attorneys' files. *Id.* The guards also confiscated certain portions of the attorney files and never returned them. *Id.*[2]

Furthermore, on May 17, 2006, Joint Task Force-Guantánamo ("JTF") received two separate letters – already cleared by the privilege team – from counsel to their clients, Bandar Al Jaabri and Saad Al-Qahtani. *Id.* at ¶ 5. When counsel met with these clients three weeks later, however, neither Petitioner had received his letter. *Id.* at ¶ 6. Mr. Al-Qahtani also reported to counsel that he has not received mail of any kind since August of 2004, even though numerous letters had been sent to him by family members in the prior 22 months. *Id.* at ¶¶ 7-8.

On June 28, 2006, counsel sent to Respondents' attorneys a letter outlining the above concerns and seeking adequate assurances that Respondents would comply with the Protective

---

[1] Counsel's visit was cut short and counsel were unable to visit Mr. Zahrani because of the tragic events of June 10, 2006, when three Guantánamo prisoners died.

[2] Respondents' attorney later agreed that certain of these confiscated items – privileged summaries of legal developments in these Guantánamo cases – would be sent to the Court Security Office without further review by any military personnel at Guantánamo. Bronte Decl. at ¶ 4; Exhibit C. JTF also confiscated copies of news articles relating to the Guantánamo detentions, which Mr. Colman had inadvertently failed to remove from his briefcase. When this was pointed out to him, Mr. Colman agreed not to take the articles to his client meeting. Bronte Decl. at ¶ 4. Although the articles were related to the client representation, this motion does not seek any relief with respect to them.

2

Order.  A copy of the June 28 letter is attached as Exhibit B.  Respondents' attorneys responded on June 29 by stating that (a) the confiscated legal materials "are currently in transit from Guantanamo to the Court Security Office," and (b) Respondents had refused to deliver counsel's letters to Petitioners Al Jaabri and Al Qahtani because they were "prohibited," having arrived at GTMO before May 23, 2006, when this Court granted Petitioners' Emergency Motion for an Order Directing Respondents to Comply with Protective Order and To Facilitate Attorney Meetings with Petitioners.  Respondents stated that the client letters were sent back to the Court Security Office.  Respondents also "dispute[d] the suggestion . . . that international law or other principles somehow impose requirements for the delivery of non-legal mail in the habeas context."[3]  A copy of the letter of Respondents' attorney is attached as Exhibit C.  This letter was the first notice to Petitioners' counsel that Respondents had refused to deliver the attorney letters and returned them to the Court Security Office.  Bronte Decl. at ¶ 10.

On July 6, 2006, Petitioners' counsel reiterated their request for a formal assurance that Respondents would comply with the Protective Order and respect the attorney-client privilege.  The July 6 letter included a proposed stipulation in an attempt to avoid unnecessary motion practice on this subject.  A copy of the July 6 letter and proposed stipulation is attached as Exhibit D.  Respondents have not responded to the July 6 letter or proposed stipulation.  Bronte Decl. at ¶ 11.

---

[3] Respondents are simply wrong.  Under customary international law, depriving a prisoner of any communication with his family constitutes cruel, inhuman, and degrading treatment.  *See, e.g., Suarez Rosero Case*, Inter-American Court of Human Rights (Ser. C) No. 35, ¶ 91 (1997) (prisoner's 36-day deprivation of communication with family constituted "cruel, inhuman and degrading treatment"); U.N. Commission on Human Rights Resolutions 1998/38, ¶ 5 ("Remind[ing] all States that prolonged incommunicado detention may facilitate the perpetration of torture and can in itself constitute a form of cruel, inhuman or degrading treatment[.]").

## ARGUMENT

In this Motion, Petitioners ask that Respondents be ordered to comply with the Protective Order entered on April 12, 2006, and to respect the time-honored protection of the attorney-client privilege.[4]

The Protective Order was crafted to provide a general guideline for attorney-client access in light of security concerns related to the representation of prisoners at Guantánamo Bay. *Al Odah v. United States*, 346 F. Supp. 2d 1, 13-15 (D.D.C. 2004) (Kollar-Kotelly, J.). Respondents have violated the terms of the Protective Order by causing guards at Camp Echo to read and confiscate counsel's legal materials and by refusing to deliver legal mail to Petitioners.

First, the Protective Order does not permit security personnel to read, disclose, or discuss the content of counsel's legal materials during attorney visits to GTMO. Dkt. No. 15, Ex. A. Petitioners' counsel are responsible for ensuring that the materials they bring to client meetings qualify as "legal mail" under the Access Procedures, which defines "legal mail" to include letters, privileged documents, and public filings relating to the representation of Petitioners. *Id.* at 2, 8. Upon their arrival at JTF-GTMO, counsel and translators are subject to inspection for contraband such as weapons, chemicals, drugs and similar items. *Id.* at 12-13. No further inspection is authorized by the Protective Order, which is designed to maintain the protections of the attorney-client privilege and the attorney work product doctrine with respect to counsel's representation of Petitioners. *See id.* at 10-11 (prohibiting privilege team from disclosing any of

---

[4] On July 7, 2006, Respondents filed a motion requesting authorization for a "filter team" to review the materials, including attorney-client communications, that were confiscated by the Naval Criminal Investigative Service several weeks ago. (Dkt. No. 34.) This motion addresses similar conduct by Respondents – unilateral and previously undisclosed interference with the attorney-client relationship. Regardless of the outcome of Respondents' motion, however, Petitioners respectfully request this Court's ruling on this motion to ensure future compliance with the Protective Order. Petitioners intend to respond separately to Respondents' motion.

4

counsel's information unless it "relate[s] to imminent acts of violence" or would "result in immediate and substantial harm to the national security"). And even if Respondents believe that counsel may have violated the Protective Order, nothing in the Protective Order suggests that JTF guards may employ self-help and confiscate the allegedly improper materials.

Second, the Protective Order specifies that JTF must deliver legal mail to Petitioners within two business days of receiving it. Dkt. No. 15, Ex. A, page 6. Petitioners Al Jaabri and Al-Qahtani had not received counsel's introductory letters as of *three weeks* after the letters were delivered to JTF. Petitioners' counsel learned the "reason" for this only after protesting the non-delivery of the letters: Respondents believed that Petitioners' counsel were "prohibited" from sending letters to Petitioners Al Jaabri and Al Qahtani "under the counsel access procedures" until May 23, 2006, when the Court granted Petitioners' Emergency Motion for Order Directing Respondents to Comply with Protective Order and to Facilitate Attorney Meetings with Petitioners.

This "reason" makes no sense factually or legally. Despite Respondents' objections on next friend and other grounds, this Court entered a minute order on April 12, 2006, stating "To permit counsel access to petitioners, it is hereby ORDERED that a Protective Order shall be entered." The Protective Order was entered the same day. Respondents decided unilaterally – and without notifying Petitioners' counsel or the Court – that they would simply ignore the Order and refuse to deliver counsel's letters to their clients. Nothing in the Protective Order remotely suggests that Respondents were free to block counsel from communicating with their clients, much less that they could block client access in secret.

Respondents have interfered with the relationship between Petitioners and their attorneys – a relationship already made difficult by Petitioners' indefinite detention for 4½ years, lack of

5

telephone access, language and cultural barriers, delays inherent in translating and transmitting letters through the privilege team, and logistical difficulties of arranging personal meetings. Besides being a blatant violation of the Protective Order, Respondents' interference violates the attorney-client privilege and Petitioners' rights to the assistance of counsel and to privacy.

As the oldest privilege for confidential communications recognized by law, the attorney-client privilege "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (*quoting Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "The privacy of communications between attorney and client is crucial" to the attorney-client relationship. *Al Odah*, 346 F. Supp. 2d at 10. Petitioners have well established rights to the meaningful assistance of counsel in bringing habeas proceedings before District Courts of the United States. *See Rasul v. Bush*, 542 U.S. 466, 484 (2004) (right of Guantánamo prisoners to bring *habeas* claims); *Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) (right to counsel); *see also Hamdan v. Rumsfeld*, 2006 U.S. LEXIS 5185, at *51 and n.15 (U.S. June 29, 2006) (holding that Detainee Treatment Act's *habeas* stripping provisions do not apply to pending case). The fact that Petitioners are being held as alleged enemy combatants rather than as criminal defendants does not render unreasonable their expectation of privacy in communications with counsel. *Al Odah*, 346 F. Supp. 2d at 15 (denying government's request for classification review of legal mail and real time monitoring of attorney-client meetings because they would "impermissibly burden the attorney-client relationship and abrogate the attendant attorney-client privilege"); *accord Lonegan v. Hasty,* 2006 U.S. Dist. LEXIS 41807, at *47 (E.D.N.Y. June 22, 2006) (holding that suspected terrorists and their attorneys are entitled to Fourth Amendment protections).

6

Respondents' confiscation of legal materials and refusal to deliver legal mail is a direct intrusion on Petitioners' relationship with their attorneys and demonstrates Respondents' refusal to abide by the clear dictates of this and other federal courts.

## CONCLUSION

For the reasons set forth herein, this Court should enter an order requiring Respondents to (1) limit the search of attorneys' materials at Guantánamo to searches for contraband; and (2) deliver all mail to Petitioners in accordance with the procedures outlined in the Protective Order and in accordance with customary international law.

Respectfully submitted,

/s/ David W. DeBruin
One of the Attorneys for the Petitioners        Dated: July 17, 2006

| | |
|---|---|
| Thomas P. Sullivan | David W. DeBruin (DDC Bar No. 337626) |
| Jeffrey D. Colman | JENNER & BLOCK LLP |
| Patricia A. Bronte | 601 Thirteenth Street, N.W., Suite 1200 |
| Maya D. Nath | Washington, D.C. 20005-3823 |
| JENNER & BLOCK LLP | Tel: (202) 639-6000 |
| One IBM Plaza | Fax: (202) 639-6066 |
| Chicago, IL 60611 | |
| Tel: (312) 222-9350 | |
| Fax: (312) 527-0484 | |

*Of Counsel*
Barbara Olshanksy (BO3635)
Gitanjali S. Gutierrez (GG1234)
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

CHICAGO_1427339_2

# CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the Motion For Order Directing Respondents To Comply With Protective Order With Respect To Attorney-Client Materials, the memorandum and exhibits in support thereof, and the draft order were served upon the Court Security Office by Federal Express, next-day delivery, on the 17th day of July, 2006, and served upon the following persons by electronic filing and e-mail on the 19th day of July, 2006:

>Andrew I. Warden (andrew.warden@usdoj.gov)
>Preeya M. Noronha (preeya.noronha@usdoj.gov)
>Civil Division
>Federal Programs Branch
>20 Massachusetts Ave., NW
>Washington, DC  20530

/s/ David W. DeBruin :

CHICAGO_1427339_2