# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SALIM SAID, ET AL., | ) | |
| Petitioners, | ) | |
| v. | ) | Civil Action No. 05-CV-2384 (RWR) |
| | ) | |
| GEORGE WALKER BUSH, ET. AL., | ) | |
| Respondents | ) | |
| | ) | |

Pursuant to 28 U.S.C.§ 1746, I, Patrick McCarthy, hereby declare that to the best of my

knowledge, information, and belief, the following is true, accurate, and correct:

1.  I am a Commander in the United States Navy with over eighteen (18) years of active

duty service.  I currently serve as the Staff Judge Advocate, Joint Task Force -

Guantanamo Bay, Cuba (JTF-GTMO).  I am responsible for all legal advice and the

completion of all legal responsibilities on behalf of JTF-GTMO.  I have served in this

position since May 2, 2006.

2.  My responsibilities include facilitating habeas corpus counsel access to their clients

who are detained by JTF-GTMO and compliance by such counsel with JTF-GTMO

security procedures and force protection safeguards.

3.  On June 8, 2006, as I was entering Camp Echo, one of the detention areas of Camp

Delta, Guantanamo Bay, Cuba, I came upon a discussion between Camp Echo guard staff

and habeas corpus attorneys who were being screened prior to their entry into the camp to

meet with their client.  In fact, as I entered the camp, guards were attempting to contact

my office to alert my staff that there was a problem with the materials counsel were

attempting to take into the camp.  It is normal procedure for the guard staff to seek

guidance whenever they find something out of the ordinary when dealing with habeas

corpus counsel. As I approached the guards, I was advised that the guards had discovered Internet news articles and summaries of ongoing Guantanamo cases, that were unrelated to the habeas counsel's clients, among the materials the attorneys were attempting to take into the camp. The guard staff further advised me that they had confiscated the foregoing items as contraband. At that time, I asked the attorney, who had been speaking to the guard staff to identify himself. He advised me his name was "Colman." I then asked Mr. Colman to describe the materials in question. He confirmed the guard's description, stating that the case summaries were actually summaries of ongoing habeas cases prepared by the Center for Constitutional Rights. Based on this description of the materials, I advised Mr. Colman, during a very polite conversation, that such material was not directly related to his client's case and, in accordance with the Protective Order of November 8, 2004, and JTF-GTMO security procedures and force protection safeguards, the material would not be permitted into the camp. I then advised Mr. Colman that the Camp Echo guard staff would retain the confiscated materials. Shortly thereafter, those materials were delivered to a member of my staff, under a cover sheet. Subsequently, the materials were placed into an envelope, sealed, and transported to Washington, D.C., for delivery to the Court Security Officer, without further discussion, disclosure, or examination of the contents of those materials.

4. The guards' actions were undertaken according to standard operating procedures, which require the guards to search visiting counsel, as well as their bags and briefcases, for contraband prior to meeting with any detainees. If any contraband is discovered during the search, it is confiscated and counsel is informed that the contraband will be held pending further investigation.

5. The guards at Camp Echo take the time necessary to screen all incoming persons into the camp as is required by the given circumstances. The length of time required to screen attorneys and those accompanying them varies, but is in direct relation to the amount of material the attorneys seek to bring into the camp. The more materials that attorneys seek to bring into the camp, the longer the period of time required for the screening. With respect to the incident involving Mr. Colman's party, the guards discovered that one of three individuals in the party, Mr. Colman, was attempting to bring a substantial amount of contraband material into Camp Echo in violation of the Protective Order and JTF-GTMO security procedures and force protection safeguards. According to the guards, this material included various news articles related to Guantanamo that Mr. Colman said he mistakenly failed to remove from his briefcase prior to entry into Camp Echo. In light of that discovery, the guards proceeded with a thorough contraband inspection to ensure that none of the other persons in Mr. Colman's party were in violation of the Protective Order and JTF-GTMO security procedures and force protection safeguards. During the course of this search, guards discovered additional materials, that is, summaries of ongoing Guantanamo cases that appeared to be contraband under the terms of the Protective Order and JTF-GTMO security procedures and force protection safeguards. Accordingly, the actions taken by the guard force were reasonable under the circumstances. I am unsure of the precise time that was required to properly screen Mr. Colman's party on June 8, 2006, however, our conversation lasted between 10 and 20 minutes. I do not believe the guards took anything approaching 45 minutes to do the search, although the entire process, including my conversation with Mr. Colman, could have taken 30 to 40 minutes.

6. The Office of the Staff Judge Advocate, JTF-GTMO, delivers legal mail addressed to detainees after it has been screened as provided for in the Protective Order of November 8, 2004. On July 10, 2006, the Office of the Staff Judge Advocate received two letters through the legal mail system addressed to petitioner Bandar Al Jaabir (ISN#182). The letters were delivered that day. On June 21, 2006, the Office of the Staff Judge Advocate received a legal mail envelope addressed to petitioner Saad Al Qahtaani (ISN # 200). That letter was delivered on June 23, 2006. On July 10, 2006, the office of the Staff Judge Advocate received another legal mail envelope for petitioner Saad Al Qahtaani (ISN #200) that was delivered to the detainee that same day. Finally, 5 legal mail envelopes for petitioner Saad Al Qahtaani (ISN# 200) were received on July 17, 2006, and those envelopes were delivered on July 18, 2006.

7. In addition to the legal mail that petitioner Saad Al Qahtaani (ISN# 200) received in June and July of this year, JTF-GTMO mail records show that he also received non-legal mail in both October 2003 and in August 2005, which was delivered.


I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct, to the best of my knowledge, information and belief.

Dated: August 2, 2006

_____
Patrick McCarthy
Commander, JAGC, U.S. Navy
Staff Judge Advocate, JTF-GTMO