*Approved for Public Filing by CSO*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SALIM SAID, et al.,** | ) | |
| | ) | |
| **Petitioners,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:05 CV 02384 (RWR) (AK)** |
| | ) | |
| **GEORGE W. BUSH, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

### PETITIONERS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ORDER DIRECTING RESPONDENTS TO COMPLY WITH PROTECTIVE ORDER WITH RESPECT TO ATTORNEY-CLIENT MATERIALS

After attempting to resolve this matter amicably, Petitioners moved for an order directing Respondents to comply with the Protective Order entered in this case with respect to attorney-client materials. In their response, Respondents mischaracterize Petitioners' motion as requesting "extraordinarily broad" relief (Resp. at 9), and Respondents misread the Protective Order as imposing few or no obligations on Respondents while permitting them unfettered discretion to read and confiscate Petitioners' legal documents and to obstruct written communications between Petitioners and their counsel (*id.* at 9-17). Respondents' arguments have no merit.

First, contrary to Respondents' characterization, Petitioners do not ask that the "inspecting guard force . . . willfully shut its eyes to any written material in counsel's possession as they conduct contraband inspections." (Resp. at 13.) Instead, Petitioners request that the guards refrain from closely reading counsel's legal materials and confine themselves to inspecting the form of counsel's documents for the presence of contraband. (Draft Order at ¶ 2.) Although Respondents deny that any guard read counsel's legal documents, Petitioners' counsel

heard a guard relating information from the documents to other JTF personnel. (Pet. Mem., Ex. A, ¶ 3.) Scanning the form of written materials, rather than reading them, would allow JTF personnel to identify any contraband materials while respecting the time-honored attorney-client privilege.

Respondents also criticize Petitioners for failing to justify to JTF or the Court that particular legal documents are indeed protected by the attorney-client privilege. (Resp. at 14.) This criticism misconstrues the nature of the relief sought by Petitioners. Petitioners are not asking the Court to review *in camera* every single document that counsel desire to take into attorney-client meetings. Nor are Petitioners required to disclose attorney-client communications in order to demonstrate that they are "directly related" to Petitioners' representation, as Respondents suggest. (*Id.*) A litigant need not disclose privileged information in order to justify a claim of privilege. *See* Fed. R. Civ. Proc. 26(b)(5). Petitioners' motion seeks the Court's guidance on the *procedure* by which JTF conducts contraband searches, not on the correctness of the non-lawyer guards' determinations regarding individual documents. The Protective Order is clear: Petitioners' counsel are responsible for ensuring that the documents they take to client meetings are "legal mail," and Respondents' agents may inspect the form of – but not read – those documents for the presence of contraband. (Protective Order, Dkt. No. 15, Ex. A at pages 2, 8, 12-13.)[1]

Moreover, it is clear that JTF's intrusive searches on June 8, 2006 were not an isolated occurrence. On August 3, 2006, another detainee lawyer, Clive Stafford Smith, arrived at Camp Echo to visit his client, Mr. Mohammed. The guards reviewed Mr. Stafford Smith's legal

---

[1] Contrary to Respondents' claim (Resp. at 10-11), Petitioners recognize that documents could constitute contraband. (*See* Draft Order, ¶ 2, permitting guards to inspect but not read "counsel's documents and files".) That does not, however, give Respondents a license to scrutinize and discuss the content and substance of counsel's privileged documents.

2

documents in detail and challenged the propriety of bringing three documents into the client meeting: one because it was an *amicus* brief filed on behalf of Mr. Mohammed in the *Hamdan* case; a second because it was counsel's affidavit regarding Mr. Mohammed that contained a section entitled "Torture and Abuse of my Client"; and a third because it bore the heading "Privileged & Confidential." (Clive Stafford Smith Decl., ¶ 2, attached as Exhibit A.) The guard's stated basis for rejecting the second document demonstrates that JTF personnel are reading counsel's documents and not merely searching for contraband or reviewing the form of the documents. Similarly, Petitioners' counsel was required on August 1 to explain to a guard how a certain brief in this very case was related to counsel's representation of Petitioner Al Qahtani, because the brief's caption named "Salim Said, et al." instead of enumerating all five petitioners. (Bronte 2d Decl., ¶ 3, attached as Exhibit B.) These issues were resolved only after counsel were compelled to disclose privileged and work product information to Respondents' agents. (*Id.* at ¶¶ 3-4; Exhibit A, ¶¶ 3-4.)

Second, Respondents claim they were free to obstruct the delivery of legal mail to Petitioners Al Qahtani and Al Jaabir, even after the Court entered the Protective Order, because Respondents continued to challenge counsel's right of access to Petitioners. This claim can bear no scrutiny. On April 12, despite Respondents' "next friend" arguments, the Court entered the Protective Order "[t]o permit counsel access to petitioners[.]" (Dkt. No. 15.) Within days thereafter, counsel filed the Memorandum of Understanding and Acknowledgment confirming their agreement to abide by the Protective Order. (Dkt. Nos. 16, 18, 20.) Nothing more was required under the Protective Order before counsel communicated with Petitioners by mail. (Dkt. No. 15, Ex. A, ¶¶ III.B, III.C.1, IV.A.) Yet Respondents now assert that they were entitled to ignore the Court's minute order and the Protective Order itself (*see* Ex. A, ¶ IV.A.4), merely

3

because Respondents sent an e-mail on May 10, 2006 in which they refused to "consent to counsel meetings with" certain Petitioners because of the "next friend" issue. (Resp. at 16 and Ex. B.)[2] Even if Respondents had been justified in re-hashing their "next friend" argument after the Court rejected it, that litigation strategy did not permit Respondents to ignore the Court's orders. Respondents had no justification for refusing to deliver counsel's letters to Petitioners Al Qahtani and Al Jaabir.

Respondents also claim that Petitioners' request regarding legal mail is now moot. (Resp. at 17.) Unfortunately, that is not the case. Counsel learned on August 1, 2006, that Respondents are continuing to obstruct attorney-client communications. Petitioner Al Qahtani wrote three letters to counsel between June 13 and July 17, 2006. (Exhibit B, ¶ 6.) Despite his requests, however, JTF refused to collect Mr. Al Qahtani's mail at any time during that period. (*Id.*) Accordingly, Mr. Al Qahtani delivered all three letters to the guard on July 18, 2006. (*Id.*) To date, counsel has not received these letters. (*Id.*) And even if Respondents were now delivering legal mail to and from Petitioners promptly, this issue remains justiciable because it is "capable of repetition yet evading review." *Dobbs v. Neverson*, 393 A.2d 147, 155 (D.D.C. 1978) (granting review of appeal regarding prisoner's habeas corpus claim despite mootness).

<u>Third</u>, Respondents claim that their (undisclosed) records show delivery of family mail to Petitioner Al Qahtani sometime in August 2005. (Resp. at 17-18.) This vague claim is contrary to the direct statements of Mr. Al Qahtani, who confirmed on August 1, 2006 that he has received no mail from his family since August 2004. (Exhibit B, ¶ 5.) Approximately one year

---

[2] Respondents claim that this e-mail should have alerted Petitioners to Respondents' refusal to deliver the attorney-client letters. (Resp. at 16.) On the contrary, the e-mail discusses "counsel meetings with petitioners" but says nothing whatsoever about "counsel access" in general or attorney-client correspondence. (*Id.*, Ex. B.) If Respondents intended to inform counsel that their letters to Petitioners would not be delivered, Respondents should have said so.

ago, a guard informed Mr. Al Qahtani that he had mail, but no mail was ever given to him and, when he asked another guard about it, he was told that there was never any mail for him.  (*Id.*) Respondents' assertion that Mr. Al Qahtani received mail in August 2005 suggests that at least one letter was withheld from him.  Although Petitioners are pleased to hear Respondents' assurance that a "detainee's mail privileges cannot be removed for any reason, including disciplinary or interrogation purposes" (Resp. at 19), Respondents should have given this assurance when counsel requested it before filing this motion (*see* Pet. Mem., Exs. B and C), and Respondents should be required to live up to this commitment.

In addition to arguing that they have delivered Mr. Al Qahtani's family mail, Respondents also argue that this Court has no power to order them to do so.  (Resp. at 19-20.) Like their argument that the Court lacks *habeas* jurisdiction after *Hamdan*, this argument is simply wrong.  As the Department of Defense has recognized, the Supreme Court held in *Hamdan* that Guantánamo prisoners are entitled to the protections of Common Article 3 of the Geneva Conventions, which prohibits cruel and degrading treatment.  *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2795 (U.S. June 29, 2006).  Depriving a prisoner of any family communications constitutes cruel and degrading treatment.  (*See* Pet. Mem. at 3 n.3.)  Mr. Al Qahtani respectfully requests that the Court order Respondents to follow their own procedures and delivery to him the letters sent by his family.

Accordingly, Petitioners respectfully request that the Court grant Petitioners' Motion for

Order Directing Respondents to Comply with Protective Order with Respect to Attorney-Client

Materials.


Respectfully submitted,

/s/ David W. DeBruin
One of the Attorneys for the Petitioners          Dated:  August 14, 2006

Thomas P. Sullivan                                David W. DeBruin (DDC Bar No. 337626)
Jeffrey D. Colman                                 JENNER & BLOCK LLP
Patricia A. Bronte                                601 Thirteenth Street, N.W., Suite 1200
Maya D. Nath                                      Washington, D.C.  20005-3823
JENNER & BLOCK LLP                                Tel: (202) 639-6000
One IBM Plaza                                     Fax: (202) 639-6066
Chicago, IL  60611
Tel: (312) 222-9350
Fax: (312) 527-0484


*Of Counsel*
Barbara Olshanksy (BO3635)
Gitanjali S. Gutierrez (GG1234)
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of Petitioners' Reply Memorandum in Support of Motion for Order Directing Respondents to Comply with Protective Order with Respect to Attorney-Client Materials and the exhibits thereto were served upon the following person by electronic filing and e-mail on the 14th day of August, 2006:

Preeya M. Noronha
Trial Attorney
Civil Division
Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC  20530
email: preeya.noronha@usdoj.gov

/s/ David W. DeBruin