# EXHIBIT A

## DECLARATION OF CLIVE STAFFORD SMITH

I, Clive Stafford Smith, declare as follows:

1. I am an attorney for Binyam Mohamed, one of the prisoners at Guantánamo Bay Naval Station in Cuba. I am submitting this declaration in support of Petitioners' Reply Memorandum in Support of Motion for Order Directing Respondents to Comply with Protective Order with Respect to Attorney-Client Materials in Case No. 1:05 CV 2384 (RWR) (AK).

2. On the morning of August 3, 2006, I arrived at Camp Echo to visit my client Mr. Mohamed. Before allowing me to enter the camp, guards reviewed my legal documents in detail and challenged the propriety of my bringing three documents into the client meeting:

    (a) an amicus brief that I had filed on Mr. Mohamed's behalf in the *Hamdan v. Rumsfeld* case, to which the guards objected because it had not been filed in Mr. Mohamed's case;

    (b) an affidavit in my name pertaining to Mr. Mohamed that I needed to discuss in detail with him, to which the guards objected because it contained a section entitled "Torture and Abuse of my Client"; and

    (c) a page of my notes regarding issues that I needed to discuss with Mr. Mohamed, to which the guards objected because the top of the page contained the notation "Privileged & Confidential" (because, of course, it contained privileged and confidential materials that I wished to discuss).

3. I asked for someone to review this decision, and a more senior officer (I believe the Sergeant of the Guard ("SOG")) came. We discussed these documents. I pointed out that, because the documents were privileged, the SOG had no right to know how these documents related to my representation of Mr. Mohamed. I said that I was explaining the relevance of each

solely to expedite matters. After I did so, the SOG agreed that I was entitled to bring these documents into my meeting with Mr. Mohamed.

4.  At lunchtime on the same day, I was denied permission to leave legal documents with my client for his review. I left Camp Echo and went to the Staff Judge Advocate's office ("SJAs") to discuss the various documents, because I needed to leave the materials with Mr. Mohamed, and I had been told that I could not. Again I went through each document with the SJAs (pointing out that I should not have to, because each was privileged). We all agreed that the documents were privileged and proper for the purpose of my client meeting in Camp Echo, with the exception of a draft bill proposed by the Bush Administration for creating military commissions, which for some reason the SJAs felt did not fall within privilege (I should note that my client has been charged in the military commissions, so the SJAs position seems untenable to me). One of the SJAs suggested that, in future, we should stamp each page of our documents "Detainee Legal Materials" or words to that effect.

5.  I then returned to Camp Echo and informed the guards of the SJA decision about the documents. Nevertheless, once again, the guards performed a review of my legal documents that was essentially page-by-page before allowing me to meet with Mr. Mohamed.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing statements are true and correct.

_____
Clive Stafford Smith

Dated: August 14, 2006

2