# Exhibit E

Case 1:05-cv-02384-UNA    Document 81-5    Filed 01/28/2008    Page 1 of 4

### The New York Times
nytimes.com



PRINTER-FRIENDLY FORMAT SPONSORED BY

December 22, 2007

# 9/11 Panel Study Finds That C.I.A. Withheld Tapes

By MARK MAZZETTI

WASHINGTON — A review of classified documents by former members of the Sept. 11 commission shows that the panel made repeated and detailed requests to the Central Intelligence Agency in 2003 and 2004 for documents and other information about the interrogation of operatives of Al Qaeda, and were told by a top C.I.A. official that the agency had "produced or made available for review" everything that had been requested.

The review was conducted earlier this month after the disclosure that in November 2005, the C.I.A. destroyed videotapes documenting the interrogations of two Qaeda operatives.

A seven-page memorandum prepared by Philip D. Zelikow, the panel's former executive director, concluded that "further investigation is needed" to determine whether the C.I.A.'s withholding of the tapes from the commission violated federal law.

In interviews this week, the two chairmen of the commission, Lee H. Hamilton and Thomas H. Kean, said their reading of the report had convinced them that the agency had made a conscious decision to impede the Sept. 11 commission's inquiry.

Mr. Kean said the panel would provide the memorandum to the federal prosecutors and congressional investigators who are trying to determine whether the destruction of the tapes or withholding them from the courts and the commission was improper.

A C.I.A. spokesman said that the agency had been prepared to give the Sept. 11 commission the interrogation videotapes, but that commission staff members never specifically asked for interrogation videos.

The review by Mr. Zelikow does not assert that the commission specifically asked for videotapes, but it quotes from formal requests by the commission to the C.I.A. that sought "documents," "reports" and "information" related to the interrogations.

Mr. Kean, a Republican and a former governor of New Jersey, said of the agency's decision not to disclose the existence of the videotapes, "I don't know whether that's illegal or not, but it's certainly wrong." Mr. Hamilton, a former Democratic congressman from Indiana, said that the C.I.A. "clearly obstructed" the commission's investigation.

A copy of the memorandum, dated Dec. 13, was obtained by The New York Times.

Among the statements that the memorandum suggests were misleading was an assertion made on June 29, 2004, by John E. McLaughlin, the deputy director of central intelligence, that the C.I.A. "has taken and

completed all reasonable steps necessary to find the documents in its possession, custody or control responsive" to formal requests by the commission and "has produced or made available for review" all such documents.

Both Mr. Kean and Mr. Hamilton expressed anger after it was revealed this month that the tapes had been destroyed. However, the report by Mr. Zelikow gives them new evidence to buttress their views about the C.I.A.'s actions and is likely to put new pressure on the Bush administration over its handling of the matter. Mr. Zelikow served as counselor to Secretary of State Condoleezza Rice from 2005 to the end of 2006.

In an interview on Friday, Mr. McLaughlin said that agency officials had always been candid with the commission, and that information from the C.I.A. proved central to their work.

"We weren't playing games with them, and we weren't holding anything back," he said. The memorandum recounts a December 2003 meeting between Mr. Kean, Mr. Hamilton and George J. Tenet, then the director of central intelligence. At the meeting, it says, Mr. Hamilton told Mr. Tenet that the C.I.A. should provide all relevant documents "even if the commission had not specifically asked for them."

According to the memorandum, Mr. Tenet responded by alluding to several documents that he thought would be helpful to the commission, but made no mention of existing videotapes of interrogations.

The memorandum does not draw any conclusions about whether the withholding of the videotapes was unlawful, but it notes that federal law penalizes anyone who "knowingly and willfully" withholds or "covers up" a "material fact" from a federal inquiry or makes "any materially false statement" to investigators.

Mark Mansfield, the C.I.A. spokesman, said that the agency had gone to "great lengths" to meet the commission's requests, and that commission members had been provided with detailed information obtained from interrogations of agency detainees.

"Because it was thought the commission could ask about the tapes at some point, they were not destroyed while the commission was active," Mr. Mansfield said.

Intelligence officials have said the tapes that were destroyed documented hundreds of hours of interrogations during 2002 of Abu Zubaydah and Abd al Rahim al-Nashiri, two Qaeda suspects who were taken into C.I.A. custody that year.

According to the memorandum from Mr. Zelikow, the commission's interest in obtaining accounts from Qaeda detainees in C.I.A. custody grew out of its attempt to reconstruct the events leading up to the Sept. 11 attacks in the United States.

Its requests for documents from the C.I.A. began in June 2003, when it first sought intelligence reports describing information obtained from prisoner interrogations, the memorandum said. It later made specific requests for documents, reports and information related to the interrogations of specific prisoners, including Abu Zubaydah and Mr. Nashiri.

In December 2003, the commission staff sought permission to interview the prisoners themselves, but was

permitted instead to give questions to C.I.A. interrogators, who then posed the questions to the detainees. The commission concluded its work in June 2004, and in its final report, it praised several agencies, including the C.I.A., for their assistance.

Abbe D. Lowell, a veteran Washington lawyer who has defended clients accused of making false statements and of contempt of Congress, said the question of whether the agency had broken the law by omitting mention of the videotapes was "pretty complex," but said he "wouldn't rule it out."

Because the requests were not subpoenas issued by a court or Congress, C.I.A. officials could not be held in contempt for failing to respond fully, Mr. Lowell said. Apart from that, however, it is a crime to make a false statement "in any matter within the jurisdiction of the executive, legislative or judicial branch."

The Sept. 11 commission received its authority from both the White House and Congress.

On Friday, the leaders of the Senate Judiciary Committee sent a letter to Attorney General Michael B. Mukasey and to Mike McConnell, the director of national intelligence, asking them to preserve and produce to the committee all remaining video and audio recordings of "enhanced interrogations" of detainees in American custody.

Signed by Senator Patrick Leahy, Democrat of Vermont, and Senator Arlen Specter, Republican of Pennsylvania, the letter asked for an extensive search of the White House, C.I.A. and other intelligence agencies to determine whether any other recordings existed of interrogation techniques "including but not limited to waterboarding."

Government officials have said that the videos destroyed in 2005 were the only recordings of interrogations made by C.I.A. operatives, although in September government lawyers notified a federal judge in Virginia that the agency had recently found three audio and video recordings of detainees.

Intelligence officials have said that those tapes were not made by the C.I.A., but by foreign intelligence services.

*Scott Shane contributed reporting.*

Copyright 2007 The New York Times Company

Privacy Policy | Search | Corrections | RSS | First Look | Help | Contact Us | Work for Us | Site Map