# Exhibit F

**The New York Times**
nytimes.com



PRINTER-FRIENDLY FORMAT SPONSORED BY

December 19, 2007

## Bush Lawyers Discussed Fate of C.I.A.Tapes

By MARK MAZZETTI and SCOTT SHANE

WASHINGTON — At least four top White House lawyers took part in discussions with the Central Intelligence Agency between 2003 and 2005 about whether to destroy videotapes showing the secret interrogations of two operatives from Al Qaeda, according to current and former administration and intelligence officials.

The accounts indicate that the involvement of White House officials in the discussions before the destruction of the tapes in November 2005 was more extensive than Bush administration officials have acknowledged.

Those who took part, the officials said, included Alberto R. Gonzales, who served as White House counsel until early 2005; David S. Addington, who was the counsel to Vice President Dick Cheney and is now his chief of staff; John B. Bellinger III, who until January 2005 was the senior lawyer at the National Security Council; and Harriet E. Miers, who succeeded Mr. Gonzales as White House counsel.

It was previously reported that some administration officials had advised against destroying the tapes, but the emerging picture of White House involvement is more complex. In interviews, several administration and intelligence officials provided conflicting accounts as to whether anyone at the White House expressed support for the idea that the tapes should be destroyed.

One former senior intelligence official with direct knowledge of the matter said there had been "vigorous sentiment" among some top White House officials to destroy the tapes. The former official did not specify which White House officials took this position, but he said that some believed in 2005 that any disclosure of the tapes could have been particularly damaging after revelations a year earlier of abuses at Abu Ghraib prison in Iraq.

Some other officials assert that no one at the White House advocated destroying the tapes. Those officials acknowledged, however, that no White House lawyer gave a direct order to preserve the tapes or advised that destroying them would be illegal.

The destruction of the tapes is being investigated by the Justice Department, and the officials would not agree to be quoted by name while that inquiry is under way.

Spokesmen for the White House, the vice president's office and the C.I.A. declined to comment for this article, also citing the inquiry.

The new information came to light as a federal judge on Tuesday ordered a hearing into whether the tapes' destruction violated an order to preserve evidence in a lawsuit brought on behalf of 16 prisoners at Guantánamo Bay, Cuba. The tapes documented harsh interrogation methods used in 2002 on Abu Zubaydah

and Abd al-Rahim al-Nashiri, two Qaeda suspects in C.I.A. custody.

The current and former officials also provided new details about the role played in November 2005 by Jose A. Rodriguez Jr., then the chief of the agency's clandestine branch, who ultimately ordered the destruction of the tapes.

The officials said that before he issued a secret cable directing that the tapes be destroyed, Mr. Rodriguez received legal guidance from two C.I.A. lawyers, Steven Hermes and Robert Eatinger. The officials said that those lawyers gave written guidance to Mr. Rodriguez that he had the authority to destroy the tapes and that the destruction would violate no laws.

The agency did not make either Mr. Hermes or Mr. Eatinger available for comment.

Current and former officials said the two lawyers informed the C.I.A.'s top lawyer, John A. Rizzo, about the legal advice they had provided. But officials said Mr. Rodriguez did not inform either Mr. Rizzo or Porter J. Goss, the C.I.A. director, before he sent the cable to destroy the tapes.

"There was an expectation on the part of those providing legal guidance that additional bases would be touched," said one government official with knowledge of the matter. "That didn't happen."

Robert S. Bennett, a lawyer for Mr. Rodriguez, insisted that his client had done nothing wrong and suggested that Mr. Rodriguez had been authorized to order the destruction of the tapes. "He had a green light to destroy them," Mr. Bennett said.

Until their destruction, the tapes were stored in a safe in the C.I.A. station in the country where the interrogations took place, current and former officials said. According to one former senior intelligence official, the tapes were never sent back to C.I.A. headquarters, despite what the official described as concern about keeping such highly classified material overseas.

Top officials of the C.I.A's clandestine service had pressed repeatedly beginning in 2003 for the tapes' destruction, out of concern that they could leak and put operatives in both legal and physical jeopardy.

The only White House official previously reported to have taken part in the discussions was Ms. Miers, who served as a deputy chief of staff to President Bush until early 2005, when she took over as White House counsel. While one official had said previously that Ms. Miers's involvement began in 2003, other current and former officials said they did not believe she joined the discussions until 2005.

Besides the Justice Department inquiry, the Congressional intelligence committees have begun investigations into the destruction of the tapes, and are looking into the role that officials at the White House and Justice Department might have played in discussions about them. The C.I.A. never provided the tapes to federal prosecutors or to the Sept. 11 commission, and some lawmakers have suggested that their destruction may have amounted to obstruction of justice.

Newsweek reported this week that John D. Negroponte, who was director of national intelligence at the time the tapes were destroyed, sent a memorandum in the summer of 2005 to Mr. Goss, the C.I.A. director,

advising him against destroying the tapes. Mr. Negroponte left the job this year to become deputy secretary of state, and a spokesman for the director of national intelligence declined to comment on the Newsweek article.

The court hearing in the Guantánamo case, set for Friday in Washington by District Judge Henry H. Kennedy Jr. over the government's objections, will be the first public forum in which officials submit to questioning about the tapes' destruction.

There is no publicly known connection between the 16 plaintiffs — 14 Yemenis, an Algerian and a Pakistani — and the C.I.A. videotapes. But lawyers in several Guantánamo cases contend that the government may have used information from the C.I.A. interrogations to identify their clients as "unlawful combatants" and hold them at Guantánamo for as long as six years.

"We hope to establish a procedure to review the government's handling of evidence in our case," said David H. Remes, a lawyer representing the 16 detainees.

Jonathan Hafetz, who represents a Qatari prisoner at Guantánamo and filed a motion on Tuesday seeking a separate hearing, said the videotapes could well be relevant.

"If the government is relying on the statement of a witness under harsh interrogation, a videotape of the interrogation would be very relevant," said Mr. Hafetz, of the Brennan Center for Justice at New York University law school.

In addition to the Guantánamo court filings, the American Civil Liberties Union has asked a federal judge to hold the C.I.A. in contempt of court for destroying the tapes. The A.C.L.U. says the destruction violated orders in a Freedom of Information Act case brought by several advocacy groups seeking materials related to detention and interrogation.

*David Johnston contributed reporting.*

Copyright 2007 The New York Times Company
Privacy Policy | Search | Corrections | RSS | First Look | Help | Contact Us | Work for Us | Site Map