# Exhibit J

Case 1:05-cv-02384-UNA   Document 81-10   Filed 01/28/2008   Page 1 of 6

TOP SECRET//HCS//ORCON/NOFORN//MR

NOV - 9 2007



U.S. Department of Justice

United States Attorney

Eastern District of Virginia

2100 Jamieson Avenue   (703)299-3700
Alexandria, Virginia 22314

October 25, 2007

FILED WITH THE
COURT SECURITY OFFICER
CSO: Marisso
DATE: 10/26/07

Hon. Karen J. Williams
Chief Judge
United States Court of Appeals
  for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, VA 23219-3517

Hon. Leonie M. Brinkema
United States District Judge
Eastern District of Virginia
401 Courthouse Square
Alexandria, Virginia 22314-5799

Hand-delivered via Court Security Officer

Re:   United States v. Zacarias Moussaoui
      Fourth Circuit Docket Nos. 03-4792, 06-4494
      District Court Case No. 01-455-A

Dear Chief Judge Williams and Judge Brinkema:

The Government respectfully submits this letter to inform the Court that two *ex parte* declarations previously submitted by the Central Intelligence Agency ("CIA") in this case contain factual errors concerning whether interrogations of certain enemy combatants were audio or video recorded. The errors, described more fully below, do not prejudice the defendant in light of his guilty plea, extensive admissions in the penalty phase, and the jury's decision not to impose a death sentence. We advise both Courts because the declarations in question were filed in the District Court and included in appendices filed in the Fourth Circuit.

Derived from: Multiple Sources
Declassify on: 25X1-Human

TOP SECRET//HCS//ORCON/NOFORN//MR

Recently, we learned that the CIA obtained three recordings (two video tapes and one short audio tape) of interviews of ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ We are unaware of recordings involving the other enemy combatant witnesses at issue in this case ████████████████████████████████████ Further, the CIA came into possession of the three recordings under unique circumstances involving separate national security matters unrelated to the Moussaoui prosecution.

On September 13, 2007, an attorney for the CIA notified us of the discovery of a video tape of the interrogation of ████████████████████████████████████████████ ████████████████████████████████████████████████████ On September 19, 2007, we viewed the video tape and a transcript ████████████████ of the interview. The transcript contains no mention of Moussaoui or any details of the September 11 plot. In other words, the contents of the interrogation have no bearing on the Moussaoui prosecution.[2] The existence of the video tape, however, is at odds with statements in two CIA declarations submitted in this case, as discussed in detail below.

After learning of the existence of the first video tape, we requested the CIA to perform an exhaustive review to determine whether it was in possession of any other such recordings for any of the enemy combatant witnesses at issue in this case. CIA's review, which now appears to be complete, uncovered the existence of a second video tape, as well as a short audio tape, both of which pertained to interrogations ████████████████████████████████████ On October 18, 2007, we viewed the second video tape and listened to the audio tape, while reviewing transcripts

---

[1] ████████ was one of the enemy combatant witnesses whom Moussaoui wanted to call to testify on his behalf; ███████████████████████████████ ███████████████████████████████████████████████████████████

[2] The recording from ████████████████████████████████████████

[3] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

~~TOP SECRET//HCS//ORCON/NOFORN//MR~~

▮▮▮▮▮▮▮▮▮ Like the first video tape, the contents of the second video tape and the audio tape have no bearing on the Moussaoui prosecution — they neither mention Moussaoui nor discuss the September 11 plot. We attach for the Courts' review *ex parte* a copy of the transcripts for the three recordings.[5]

At our request, CIA also provided us with intelligence cables pertaining to the interviews recorded on the two video tapes. Because we reviewed these cables during our discovery review, we wanted to ensure that the cables accurately captured the substance of the interrogations. Based on our comparison of the cables to the ▮▮▮▮▮▮▮ videotapes, and keeping in mind that the cables were prepared for the purposes of disseminating intelligence, we found that the intelligence cables accurately summarized the substance of the interrogations in question.

The fact that audio/video recording of enemy combatant interrogations occurred, and that the United States was in possession of three of those recordings is, as noted, inconsistent with factual assertions in CIA declarations dated May 9, 2003 (the "May 9 Declaration"), and November 14, 2005 (the "November 14 Declaration"). The May 9 Declaration arose after the Fourth Circuit directed the District Court to consider substitutions under the Classified Information Procedures Act ("CIPA") in lieu of enemy combatant testimony sought by the defendant. In an ensuing CIPA hearing, on May 7, 2003, Judge Brinkema ordered the Government to determine, *inter alia*, whether interrogations ▮▮▮▮▮▮▮ were recorded. *See* 5/7/03 Tr. 11-13, 69. Two days later, the Government filed the May 9 Declaration, which was *ex parte* and accompanied by a motion under CIPA § 4 to make a limited disclosure to the defense of only the answers to the District Court's questions (but not the full explanations contained in the declaration). Judge Brinkema granted the § 4 motion, permitting the Government to make the following disclosure, among others, to the defense:

---

[4] The transcript of the audio tape previously existed and was contained within an intelligence cable.

[5] Although we have provided defense counsel with a copy of this letter, we have not provided them with a copy of the transcripts for two reasons. First, the interviews address other national security matters for which defense counsel lack a need to know. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

~~Derived from: Multiple Sources~~
~~Declassify on: 25X1 Human~~
~~TOP SECRET//HCS//ORCON/NOFORN//MR~~

TOP SECRET//HCS//ORCON/NOFORN//MR

Question: Whether the interrogations ▓▓▓▓ are being recorded in any format?

Answer: No.

See Docket No. 905 (Attachment A).[6]

The November 14 Declaration arose after the Fourth Circuit published its decision in *United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004), and after Moussaoui pleaded guilty. Following these events, and in anticipation of the penalty-phase trial, the District Court ordered the Government to disclose various information ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ including whether interrogations were recorded. See 5/2/05 Order (Docket No. 1275). Judge Brinkema subsequently reconsidered most of that order, at the Government's request (see Docket No. 1282), but still directed the Government to "confirm or deny that it has video or audio tapes of these interrogations," see 11/3/05 Order (Docket No. 1359), at 4. The November 14 Declaration ensued, in which a CIA executive stated that the "U.S. Government does not have any video or audio tapes of the interrogations of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." See 11/14/05 Declaration (Docket No. 1369), at 3.

Unbeknownst to the authors of the declarations, the CIA possessed the three recordings at the time that the Declarations were submitted. We asked the CIA to ascertain the reason for such an error. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As best as can be determined, it appears that the authors of the Declarations relied on assurances of the component of the CIA that ▓▓▓▓▓▓ unknowing that a different component of the CIA had contact with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

As noted above, the errors in the CIA declarations at issue, although unfortunate, did not prejudice Moussaoui, who pled guilty, reiterated his guilt in substantial admissions in the penalty phase, and ultimately received a life sentence after the jury declined to sentence him to death.

---

[6] This response was cited by the District Court in an opinion, dated May 15, 2003. See Docket No. 925, at 9. Both the response and the May 15 opinion were included in the classified Supplemental Joint Appendix filed with the Fourth Circuit at the same time. See SC 249, 273. The May 9 Declaration was included in the classified Supplemental *Ex Parte* Appendix filed with the Fourth Circuit on May 23, 2003, in docket number 03-4162. See SGX, at 17-23.

Derived from: Multiple Sources
Declassify on: 25X1-Human

TOP SECRET//HCS//ORCON/NOFORN//MR

~~TOP SECRET//HCS//ORCON/NOFORN//MR~~    Page 5 of 5

We bring the errors to the Court's attention, however, as part of our obligation of candor to the Court.

The Government will promptly apprise the Court of any further developments.

Sincerely,

Chuck Rosenberg
United States Attorney

By: *(signature)*

David Novak
David Raskin
Assistant United States Attorneys

cc:   Justin Antonipillai, Esq.
      Barbara Hartung, Esq.
      Appellate Counsel for Zacarias Moussaoui
      (without transcripts)

~~Derived from: Multiple Sources~~
~~Declassify on: 25X1-Human~~

~~TOP SECRET//CRU-GST//HCS//ORCON/NOFORN//MR~~