PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SALIM SAID, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 1:05 CV 2384 (RWR) |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

### PETITIONER'S MEMORANDUM IN RESPONSE TO
### RESPONDENTS' NOTICE OF REPORT REGARDING PRESERVATION

Petitioner Saad Al Qahtani, by his counsel, submits this Memorandum in response to

Respondents' Notice of Report Regarding Preservation, Dkt. 85 (the "Government Notice"), and

in further support of Petitioner's Motion to Preserve Remaining Exculpatory Evidence, Dkt. 83

(the "Motion"). The Government Notice purports to report "on the recent steps [Respondents]

have taken to ensure the preservation of material relating to all detainees detained by the Joint

Task Force-Guantánamo[.]" (Dkt. 85 at 13.) In fact, the Government Notice vividly

demonstrates that Respondents' opposition to the Motion is unfounded and that this Court should

act to prevent further destruction of evidence relevant to this case.

Respondents previously argued that the Court should deny Petitioner's Motion because it

was "unnecessary and potentially disruptive" of the Department of Justice ("DOJ") investigation

into the destruction of interrogation videotapes by the Central Intelligence Agency ("CIA").

(Dkt. 80 at 3.) Now, in the Government Notice, Respondents admit that their destruction of

evidence is even more widespread than previously reported. In addition, the Government Notice

and the recently submitted Declaration of John H. Durham make clear that the DOJ is not, in

fact, investigating whether Respondents violated the duty to preserve evidence relevant to

anticipated litigation – which was the basis of Petitioner's Motion.  As a result, the relief

Petitioner requests is indeed necessary and plainly would not interfere with the Government's

separate investigation of its own criminal conduct.

**I.      The Buzby Declaration Admits That Respondents Permitted The Destruction Of Relevant Evidence To Continue At Least Until January 16, 2008.**

Respondents assert that the Department of Defense ("DOD") and CIA "have taken new

and additional steps" – in the form of DOD and CIA directives issued on December 19 and 20,

2007, respectively – to preserve evidence relating to Guantánamo prisoners.  (Dkt. 85 at 13-14.)

Respondents have not disclosed the actual directives to the Court or Petitioner's counsel, and the

Government Notice does not identify the prior steps, if any, that Respondents took to comply

with their duty to preserve evidence relating to Petitioner's detention during the six years leading

up to the directives.  Despite its vagueness, the Government Notice reveals that the Government

continues to flout its duty in this case.  "It is the duty of the United States, no less than any other

party before this court, to ensure, through its agents, that documents relevant to a case are

preserved.  Indeed, . . . a good argument can be made that, as the enforcer of the laws, the United

States should take this duty more seriously than any other litigant."  *United Medical Supply Co.

v. United States*, 77 Fed. Cl. 257, 274 (2007).

Respondents admit that they routinely destroyed videotapes of various areas of the

Guantánamo prison, including Camp 4 where Petitioner is detained, through the automatic

overwrite feature of Respondents' video equipment.  (Dkt. 85 at 22-28.)  Respondents are

deliberately vague about the contents of the videotapes, noting that they recorded "*largely*

mundane day-to-day activities" (*id.* at 15, emphasis added),[1] but the Government Notice leaves

open the possibility that these or other destroyed videotapes depicted prisoner interrogations or

mistreatment by guards.  (*See id.* at 22-28.)  Even more troubling, this destruction of videotapes

continued until January 16, 2008 (*id.* at 22), long after:

- Respondents reasonably anticipated this litigation, no later than January 2002;

- Respondents assured the Court on July 17, 2006, that a preservation order was "unnecessary" because Respondents would never "destroy[] or sanction[] the destruction" of relevant evidence (Dkt. 37 at 6-7); and

- This Court's order of July 25, 2006, requiring Respondents to "preserve and maintain all evidence . . . without limitation, now or ever in respondents' possession, custody or control, regarding the detained petitioners in this case" (Dkt. 41).

Indeed, the videotape destruction continued for almost one month after the DOD directive to

preserve evidence (Dkt. 85 at 14) and after Petitioner's counsel notified Respondents of her

concern about the preservation of remaining evidence (Dkt. 82 at Ex. N).[2]  The Government

Notice does not purport to be a complete report of all videotapes – much less all relevant

evidence – that has been destroyed.  (Dkt. 85 at 14-15, 28.)  Accordingly, the Government

Notice does not provide the limited information and reasonable assurances of preservation that

Petitioner's counsel requested on December 19, 2007.

    Apparently no one thought to issue a "litigation hold" to Respondents' employees and

agents until six years after Petitioner arrived at Guantánamo.  Petitioner and the Court – and

apparently Respondents' counsel in this case – were unaware that the CIA's interrogation

videotapes existed.  Someone at the CIA decided that the Government had no duty to preserve

---

[1] *See also* Dkt. 85 at 24, emphasis added ("*Much* of the information recorded showed routine or mundane day-to-day activities[.]").
[2] Petitioner filed his reply brief with the Court Security Officer on January 29, 2008, but Respondents' counsel has not yet permitted the reply brief to be filed through the ECF system.

the videotapes, and they were destroyed in 2005. Petitioner and the Court – and apparently Respondents' counsel – were unaware that Guantánamo videotapes were being destroyed through routine overwriting. Petitioner and the Court remain unaware of other relevant evidence that may have been lost or destroyed as a result of the lack of a litigation hold.

If the Government had not shrouded its evidence in secrecy, it is likely that Respondents' counsel would have preserved the videotapes. In order to avoid further spoliation, the first step is for Respondents' counsel to ask their clients to disclose what evidence has been destroyed and what remains. Respondents need not produce any evidence at this time, but they should be required to identify it and to promise to preserve it. Far from being "unnecessary," a further preservation order from this Court is essential so that the spoliation of the past does not continue.

## II.    Respondents Have Failed To Demonstrate Good Cause For The Inaction That Respondents Urge On The Court.

Respondents argue that this Court should ignore their spoliation of evidence because the DOJ has decided belatedly to investigate Respondents' criminal misconduct. (Dkt. 85 at 11, 15.) This argument has no basis in fact or law. The Declaration of John H. Durham, to which Respondents allude, shows that his criminal investigation does not overlap with the issues raised in Petitioner's Motion. According to the declaration, the DOJ is investigating "whether the destruction of the videotapes violated any order issued by any federal judicial officer . . . ." (Durham Decl. ¶¶ 4-6, filed in *Abdullah v. Bush*, No.05 CV 0023 (RWR), Dkt. 85-2 at 3-4.)[3] Nothing in Mr. Durham's declaration suggests that the criminal investigation includes an inquiry into whether Respondents violated the duty to preserve evidence that arises anytime a party

---

[3] Mr. Durham mistakenly believes that this Court issued a preservation order on July 25, 2005, five months before this action was filed. (*Id.* at 9.) In fact, the Court's order was entered one year later, on July 25, 2006. (Dkt. 41.) In any event, Petitioner's Motion did not allege that Respondents violated the preservation order by destroying the CIA videotapes.

reasonably anticipates litigation – which Respondents breached in this case.  Likewise, nothing

in Petitioner's prayer for relief requests that Respondents' employees reveal their motives or

intent – the focus of Mr. Durham's investigation.  (*Compare* Dkt. 82, Ex. N *with* Durham Decl.

¶ 6.)  As a result, granting Petitioner's Motion would pose no risk of interference with the DOJ

investigation.  *See Horn v. District of Columbia*, 210 F.R.D. 13, 15-16 (D.D.C. 2002) (refusing

to stay civil discovery because government's affidavit did not show that issues in criminal

investigation were "related" and "substantially similar" to those in civil case).

        In addition, Respondents erroneously assume that civil litigation should be stayed

whenever the government commences a related criminal investigation.  "However, there is no

presumption favoring a pre-indictment stay of a parallel civil action until the conclusion of

criminal proceedings."  *United States ex rel. Westrick v. Second Chance*, 2007 U.S. Dist. LEXIS

23917, at *7 (D.D.C. Mar. 31, 2007) (attached as Exhibit T).  Indeed, courts in this district are

especially wary of Government requests to stay a civil action in favor of a criminal investigation

commenced only after the civil action was filed.  *See Barry Farm Resident Council, Inc. v. U.S.*

*Dep't of the Navy*, 1997 U.S. Dist. LEXIS 2754, at *10-11 (D.D.C. Feb. 14, 1997) (refusing

government's motion to stay civil action by environmental organizations pending subsequent

criminal investigation of government employees) (attached as Exhibit U).  This action was filed

in December 2005.  Some of Respondents' agents and lawyers knew years earlier that the CIA

was planning to destroy the secret interrogation videotapes.  DOJ's 2008 decision to investigate

the 2005 execution of that plan should not be allowed to thwart this Court's justified concern

about the integrity of these proceedings.

        Moreover, Mr. Durham's concern that government employees "might attempt to use the

civil process to cloak themselves with immunity, thus precluding criminal prosecution" (Durham

Decl. ¶ 10) is "disingenuous and far-fetched." *Barry Farm*, 1997 U.S. Dist. LEXIS 2754 at *7.

As the *Barry Farm* court noted:

> [T]o avoid the possibility that a court might deem any statement made in the
> course of the civil investigation to be coerced, the [Government] could inform its
> employees about the pending criminal investigation and advise them that they
> may exercise their privilege against self-incrimination without fear of dismissal.

*Id.* at *8.  The same is true here.  Indeed, it is unlikely that any federal employee is unaware of

the DOJ criminal investigation, which has made headlines around the country.  Respondents

have failed to demonstrate any "hardship or inequality" that would justify the Court's turning a

blind eye to the mounting indications that Respondents continue to destroy evidence relevant to

this case.  *Second Chance*, 2007 U.S. Dist. LEXIS 23917 at *8.

Three other factors militate against Respondents' suggestion that the Court ignore the

spoliation issue in this case until the DOJ completes its investigation and possible prosecutions.

First, the public interest in this *habeas* proceeding – now pending for more than two years and

involving fundamental constitutional and common law rights – "seems to outweigh speculation

about if and when an indictment will be returned."  *Second Chance*, 2007 U.S. Dist. LEXIS

23917 at *10-11.  Second, this is not a case in which one party is attempting to obtain discovery

through the civil process that would be unavailable but useful in defending against a criminal

prosecution.  Petitioner is not the target of the DOJ probe, and indeed, Petitioner is seeking

assurances of evidence preservation, not production of the evidence itself.  *See Barry Farm*,

1997 U.S. Dist. LEXIS 2754 at *10-11 (noting no abuse of civil discovery process to obtain

advantage in criminal case "where the first legal proceedings were initiated by private plaintiffs

in this civil case").  Third, Respondents' speculation about the possibility of future prosecutions

cannot justify the open-ended suspension of this Court's supervisory role that Respondents

request.  *See Second Chance*, 2007 U.S. Dist. LEXIS 23917 at *14-15 (refusing to stay civil

action indefinitely when no indictment had been returned).  Yielding to the DOJ investigation for

an indefinite period would provide Respondents "with yet a new excuse for not proceeding

forthrightly and with diligence" once the Supreme Court rules on whether Petitioner's right to

seek *habeas* relief survives the Military Commissions Act.  *See Barry Farm*, 1997 U.S. Dist.

LEXIS 2754 at *6.  Respondents have detained Petitioner without charge for more than six

years, and the Court should not permit any unnecessary delay in preserving whatever evidence

Respondents still possess.

<u>Conclusion</u>

For all of the foregoing reasons, Petitioner respectfully requests that this Court grant his

Motion and order Respondents and their counsel (a) to preserve all remaining evidence that is

potentially relevant to Saad's challenge to the legality of his detention, and (b) to disclose to the

Court and Petitioner's counsel information regarding the preservation, loss, or destruction of

potentially relevant evidence, subject to any security measures the Court deems appropriate.

Dated:  February 19, 2008                              Respectfully submitted,


                                                       _____/s/ David W. DeBruin_____
                                                       One of the Attorneys for the Petitioner
                                                       Saad Al Qahtani

David W. DeBruin (DDC Bar No. 337626)        Patricia A. Bronte
JENNER & BLOCK LLP                           Sapna G. Lalmalani
601 Thirteenth Street, N.W., Suite 1200      JENNER & BLOCK LLP
Washington, DC  20005-3823                   330 North Wabash Ave.
Tel: (202) 639-6000                          Chicago, IL  60611
Fax: (202) 639-6066                          Tel: (312) 923-8357
                                             Fax: (312) 840-7757
*Of Counsel*
Gitanjali S. Gutierrez (GG1234)
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

### CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2008, I caused the foregoing Petitioner's

Memorandum in Response to Respondents' Notice of Report Regarding Preservation to be

delivered to the below-listed counsel of record in the above-captioned matter through the

CM/ECF system:

> Judry Laeb Subar
> Terry Marcus Henry
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Avenue NW
> Washington, DC 20530

>    __/s/ David DeBruin_____
> David DeBruin

# EXHIBIT T

LEXSEE 2007 US DIST LEXIS 23917

**UNITED STATES, ex rel. WESTRICK, Plaintiff, v. SECOND CHANCE, et al., Defendants.**

**Civil Action No. 04-280 (RWR)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2007 U.S. Dist. LEXIS 23917*

**March 31, 2007. Decided**
**March 31, 2007, Filed**

**COUNSEL:** [*1] For AARON J. WESTRICK, Ph.D, Plaintiff: Stephen M. Kohn, LEAD ATTORNEY, KOHN, KOHN & COLAPINTO, P.C., Washington, DC; David K. Colapinto, KOHN, KOHN & COLAPINTO, LLP, Washington, DC.

For UNITED STATES OF AMERICA, ex rel., Plaintiff: Alicia J. Bentley, LEAD ATTORNEY, U.S. DEPARTMENT OF JUSTICE, Washington, DC; Dennis L. Phillips, LEAD ATTORNEY, United States Department of Justice, Washington, DC; Callie R. Owen, U.S. DEPARTMENT OF JUSTICE, Washington, DC; Keith V. Morgan, U.S. ATTORNEY'S OFFICE, Washington, DC.

For SECOND CHANCE BODY ARMOR INC, Defendant: William James Cople, III, LEAD ATTORNEY, SPRIGGS & HOLLINGSWORTH, Washington, DC; Robert E. Johnston, SPRIGGS & HOLLINGSWORTH, Washington, DC.

For SECOND CHANCE SHIELD INC, Defendant: William James Cople, III, LEAD ATTORNEY, SPRIGGS & HOLLINGSWORTH, Washington, DC; Robert E. Johnston, SPRIGGS & HOLLINGSWORTH, Washington, DC.

For SECOND CHANCE BODY ARMOR CANADA CO, Defendant: William James Cople, III, LEAD ATTORNEY, SPRIGGS & HOLLINGSWORTH, Washington, DC; Robert E. Johnston, SPRIGGS & HOLLINGSWORTH, Washington, DC.

For IAG MANUFACTURING, S.A.R.L., Defendant: William James Cople, III, LEAD ATTORNEY, SPRIGGS & [*2] HOLLINGSWORTH, Washington, DC; Robert E. Johnston, SPRIGGS & HOLLINGSWORTH, Washington, DC.

For TOYOBO AMERICA, INC., Defendant: Konrad L. Cailteux, WEIL, COTSHAL & MANGES, LLP, New York, NY; Michael J. Lyle, WEIL, GOTSHAL & MANGES, L.L.P., Washington, DC.

For TOYOBO CO. LTD, Defendant: Konrad L. Cailteux, WEIL, COTSHAL & MANGES, LLP, New York, NY; Michael J. Lyle, WEIL, GOTSHAL & MANGES, L.L.P., Washington, DC.

For SECOND CHANCE BODY ARMOR, UK, Defendant: William James Cople, III, LEAD ATTORNEY, SPRIGGS & HOLLINGSWORTH, Washington, DC; Robert E. Johnston, SPRIGGS & HOLLINGSWORTH, Washington, DC.

For SECOND CHANCE INTERNATIONAL, INC., Defendant: William James Cople, III, LEAD ATTORNEY, SPRIGGS & HOLLINGSWORTH, Washington, DC; Robert E. Johnston, SPRIGGS & HOLLINGSWORTH, Washington, DC.

For SECOND CHANCE BODY ARMOR UK, LTD, Defendant: William James Cople, III, LEAD ATTORNEY, SPRIGGS & HOLLINGSWORTH, Washington, DC; Robert E. Johnston, SPRIGGS & HOLLINGSWORTH, Washington, DC.

For THOMAS E. BACHNER, JR., Defendant: Stephen Robert Spivack, LEAD ATTORNEY, BRADLEY ARANT ROSE & WHITE, LLP, Washington, DC; Eric A. Frechtel, BRADLEY ARANT ROSE & WHITE, LLP, [*3] Washington, DC; James S. Brady, LAW FIRM OF MILLER JOHNSON, Grand Rapids, MI; Monica L. Cook, LAW FIRM OF MILLER JOHNSON, Grand Rapids, MI.

For RICHARD C. DAVIS, Defendant: Drew William Marrocco, LEAD ATTORNEY, SONNENSCHEIN NATH & ROSENTHAL, Washington, DC; Joshua G. Berman, LEAD ATTORNEY, SONNENSCHEIN NATH & ROSENTHAL, LLP, Washington, DC.

For JAMES LARRY MCCRANEY, Defendant: David Schertler, LEAD ATTORNEY, SCHERTLER & ONORATO, L.L.P., Washington, DC; Arden R. Pathak, Montgomery, AL; Christopher W. Weller, Montgomery, AL; George L. Beck, Jr., Montgomery, AL; Lisa Freiman Fishberg, SCHERTLER & ONORATO, LLP, Washington, DC; Terrie S. Biggs, Montgomery, AL.

For KAREN MCCRANEY, Defendant: David Schertler, LEAD ATTORNEY, SCHERTLER & ONORATO, L.L.P., Washington, DC; Arden R. Pathak, Montgomery, AL; Christopher W. Weller, Montgomery, AL; George L. Beck, Jr., Montgomery, AL; Lisa Freiman Fishberg, SCHERTLER & ONORATO, LLP, Washington, DC; Terrie S. Biggs, Montgomery, AL.

For JAMES LARRY MCCRANEY, Cross Claimant: Lisa Freiman Fishberg, SCHERTLER & ONORATO, LLP, Washington, DC.

For KAREN MCCRANEY, Cross Claimant: Lisa Freiman Fishberg, SCHERTLER & ONORATO, LLP, Washington, [*4] DC.

**JUDGES:** RICHARD W. ROBERTS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RICHARD W. ROBERTS

**OPINION**

### *MEMORANDUM OPINION AND ORDER*

The government, by relator Aaron J. Westrick, filed a complaint against defendants Second Chance Body Armor, Inc. and related entities (collectively "Second Chance"), Toyobo Co., Ltd, Toyobo America, Inc. (collectively "Toyobo"), and individual defendants Thomas Bachner, Jr., Richard Davis, Karen McCraney, and James McCraney, alleging violations of the False Claims Act ("FCA"), *31 U.S.C. §§ 3729-33*, as well as common law claims in connection with the sale of allegedly defective Zylon body armor. The individual defendants moved for a stay of the civil proceedings in anticipation of a criminal indictment. Davis also filed a motion for an extension of time to answer the government's amended complaint citing the difficulty of defending against both civil and criminal proceedings. Because a criminal indictment has not proven to be imminent and pre-indictment stays are not favored, defendants' motions for

a stay will be denied without prejudice to re-file if a criminal indictment is returned.

*BACKGROUND*

In February 2004, Aaron Westrick, [*5] a former employee of Second Chance, filed a qui tam action against Second Chance and Toyobo under the FCA. The Justice Department's civil enforcement divisions intervened under *31 U.S.C. § 3730(a)(2)*, and filed an amended complaint on September 19, 2005, adding four Second Chance executives as individual defendants-- Bachner, Davis and the McCraneys. The amended complaint asserted claims against all defendants for (1) violations of the FCA, including presentation of false or fraudulent claims, false statements and conspiracy to defraud, (2) common law fraud, and (3) unjust enrichment. Claims for payment by mistake and breach of contract were asserted against only Second Chance. The allegations concerned concealment of and misrepresentations about lethal defects in bullet-resistant vests manufactured for use by law enforcement officers throughout the country.

In the fall of 2005, a Justice Department criminal prosecutor, Assistant United States Attorney James Flood, represented that there was an ongoing criminal investigation of Davis and the McCraneys, involving substantially the same allegations of fraudulent behavior as those made in the civil case, and that [*6] an indictment would be filed in the "near future." (Davis Mot. to Stay, Berman Decl. P 4; McCraney Mot. to Stay, Beck Decl. P 4.) The Department of Justice informed Davis on February 22, 2006 that evidence was being presented to a grand jury and an indictment would be forthcoming. In March 2006, Flood reiterated to Davis' and the McCraneys' attorneys that evidence would soon be submitted to the grand jury and that criminal charges were "certain and imminent." (Davis Mot. to Stay, Berman Decl. P 6; McCraney Mot. to Stay, Beck Decl. P 6.) Finally, on April 12, 2006, Flood stated in a telephone call with Bachner's attorney that Bachner was also under criminal investigation for the matters alleged in the civil lawsuit. (Bachner Mot. to Stay, Brady Decl. P 4.)

The defendants moved to stay the civil case pending the disposition of any related criminal proceedings arguing that their *Fifth Amendment* self-incrimination privilege will be implicated and that having to defend against simultaneous civil and criminal actions will be overwhelming. No criminal indictment has been returned against any of the defendants. [1]

1 Davis also moved for an extension of time to answer the government's amended complaint, requesting that his answer be due ten days after the disposition of his motion to stay. (Davis Mot. for

Case 1:05-cv-02384-UNA    Document 88    Filed 02/20/2008    Page 12 of 19

Page 3
2007 U.S. Dist. LEXIS 23917, *

Extension of Time at 1.) Davis' motion for extension of time will be granted.

[*7] DISCUSSION

The decision to grant or deny a motion to stay proceedings is left to the sound discretion of the court, "in the light of the particular circumstances of the case." *Sec. and Exchange Comm'n v. Dresser Indus., Inc.,* 202 U.S. App. D.C. 345, 628 F.2d 1368, 1375 (D.C. Cir. 1980); *see also Gordon v. Fed. Deposit Ins. Corp.,* 138 U.S. App. D.C. 308, 427 F.2d 578, 580 (noting that because "the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied)[,]" a court "in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side"). However, there is no presumption favoring a pre-indictment stay of a parallel civil action until the conclusion of criminal proceedings. *See Dresser,* 628 F.2d at 1374 (citing Standard *Sanitary Mfg. Co. v. United States,* 226 U.S. 20, 52, 33 S. Ct. 9, 57 L. Ed. 107, 1912 Dec. Comm'r Pat. 652 (1912)) (affirming district court's denial of a pre-indictment motion to quash administrative subpoena); *Fed. Savings & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 903 (9th Cir. 1989) (noting that the court did not abuse its discretion [*8] by denying a pre-indictment stay given that "[t]he case for staying civil proceedings is a far weaker one where no indictment has been returned, and no *Fifth Amendment* privilege is threatened" (internal citation omitted)). "[T]he mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceedings, does not establish the requisite good cause for a stay." *Horn v. Dist. of Columbia,* 210 F.R.D. 13, 15 (D.D.C. 2002) (internal citation omitted) (denying government's request for a stay of civil discovery of police files pending criminal investigation of plaintiffs).

A number of factors have commonly been weighed when a party has moved for a stay of civil proceedings in light of parallel criminal proceedings. Courts have considered whether the issues in the civil action are related to the issues in the criminal investigation; the convenience of the courts in the civil and criminal matters; what hardship or inequality the parties would face if required to move forward on the civil case while the criminal case was proceeding; and whether the duration of the requested stay is within [*9] reasonable limits. *See, e.g., Barry Farm Resident Council, Inc. v. U.S. Dept. of Navy,* Nos. 96-1450, 96-1700, 1997 U.S. Dist. LEXIS 2754, 1997 WL 118412, at *1 (D.D.C. Feb. 18, 1997) (citing *Molinaro,* 889 F.2d at 903) (listing "the interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to them if it is delayed; the public interest in the pending civil and criminal litigation; the interests of and burdens on the defendant; . . . and the convenience of the court in the management of its cases and the efficient use of judicial resources"); *Birge v. Dollar Gen. Corp.,* Civil Action No. 04-2531, 2005 U.S. Dist. LEXIS 36835, 2005 WL 3448044, at *2 (W.D. Tenn. Dec. 14, 2005) (listing as factors "(1) the extent to which the issues in the civil and criminal proceedings overlap; (2) the status of the criminal proceedings; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the hardship on the defendant; [and] (5) the convenience of both the civil and criminal courts").

Here, the government does not contest that there is an overlap between the facts important [*10] to the civil action and to any potential criminal indictment. (Gov't Opp'n to Defs.' Mot. to Stay at 11.) That, in part, has prompted the individual defendants to complain that they face a difficult choice. If they invoke their *Fifth Amendment* right to decline to respond to civil discovery to protect against those responses producing evidence that could lead to their criminal convictions, those invocations could be used to establish their civil liability. If they respond to civil discovery to avoid the use of an invocation of the *Fifth Amendment* being used as probative of consciousness of civil liability, then incriminating responses could lead to their criminal convictions.

The threat here of an imminent indictment has not come to pass in the year it has loomed. The government's civil enforcement interest in proceeding expeditiously with the case it has already brought against defendants alleged to have put the lives of law enforcement officers in grave danger at this point is as significant as the prejudice to their case that would result from further delay caused by the criminal prosecutors' inaction. The public interest in proceeding with an important civil enforcement matter [*11] that has already been filed seems to outweigh speculation about if and when an indictment will be returned. This case has been on the court's docket now for three years, and prudent docket management weighs against it languishing further.

"[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Dresser,* 628 F.2d at 1375-76. It is a weaker case where, as here, no indictment has been returned, *id.* at 1376; *Molinaro,* 889 F.2d at 903 (relying on *Dresser* to note that "[t]he possibility that criminal indictments would be brought against Molinaro may have made responding to civil charges more difficult for him, but the court did not abuse its discretion by deciding that this difficulty did not outweigh the other interests involved"), and the threat of an imminent indictment has

proven illusory. Even when a criminal indictment has been handed down, some courts have found unpersuasive defendants' arguments that the exercise of their *Fifth Amendment* rights would be [*12] prejudiced. *See Barry Farm Resident Council, Inc., 1997 U.S. Dist. LEXIS 2754, 1997 WL 118412, at *3* (quoting *United States v. Lot 5, 23 F.3d 359, 364 (11th Cir. 1994)* ("[B]lanket assertion of the privilege [against self-incrimination] is an inadequate basis for the issuance of a stay."))

"In general, absent a showing of undue prejudice upon defendant[s] or interference with [their] constitutional rights, there is no reason why plaintiff should be delayed in [its] efforts to diligently proceed to sustain [its] claim." *Hicks v. City of New York, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003)* (internal quotations omitted). Here, where no indictment has yet been filed, its imminence has been disproven, and the civil case could be unfairly prejudiced by further delay, the balance tilts in favor of the plaintiff. *See Barry Farm Resident Council, 1997 U.S. Dist. LEXIS 2754, 1997 WL 118412, at *3* (finding that because no criminal indictments had been filed, any harm alleged by civil defendant was "entirely speculative" and further stating that "[i]f and when criminal indictments are filed, and *Fifth Amendment* issues arise, there will be time enough to deal with the problems [*13] they might cause").

Where a civil action initiated by the government has no distinct statutory or enforcement aim and appears to be purely opportunistic or manipulative, this factor weighs heavily in favor of a stay. *Cf. Gordon, 427 F.2d at 580* (quoting *United States v. Kordel, 397 U.S. 1, 11, 90 S. Ct. 763, 25 L. Ed. 2d 1 (1970)* ("It would stultify enforcement of federal law to require a governmental [regulatory] agency . . . invariably to choose either to forgo recommendation of criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.")) Absent such exceptional circumstances or behavior, however, the government and its agencies are permitted to pursue valid civil relief--even for money damages only--prior to, simultaneous with, or subsequent to criminal investigation or indictment. *Dresser, 628 F.2d at 1376.* Although the same government is the party in interest in both the civil proceeding and the criminal investigation, nothing supports an inference here that the government has used or will use the civil action to gain an advantage in the criminal case. *See Kordel, 397 U.S. at 11-12* [*14] (identifying circumstances, including when the government brings a civil action solely to obtain evidence for its criminal prosecution or failed to advise a civil defendant that a criminal investigation is pending, in which a

criminal indictment following a civil action might be unconstitutional or improper).

While allowing civil discovery to proceed may afford the government the opportunity to gain evidence that it may not be entitled to under the more restrictive criminal discovery rules, *see Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992)*, if and when discovery becomes necessary, protective orders and other remedial measures may be taken. *Gordon, 427 F.2d at 580-81.*

The movants request "a stay of all proceedings in the instant civil litigation until the completion of any criminal proceedings that may be initiated against" them. (Davis Mot. to Stay at 1; McCraney Mot. to Stay at 1; Bachner Mot. to Stay at 2.) Although "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself," a court may abuse [*15] its discretion if it grants "a stay of indefinite duration in the absence of a pressing need." *Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936).* Given that no indictment has been returned and the civil case has been pending for more than a year, staying the civil action until the completion of any criminal proceeding would lead to unwarranted delay of this action.

## CONCLUSION AND ORDER

The pre-indictment status of the criminal investigation militates against entering a stay of all or a portion of the proceedings. However, if the status of the criminal proceedings changes or if it appears the government is using the parallel actions to gain undue advantage, the movants may re-file their motion to stay. Accordingly, it is hereby

ORDERED that Davis' Motion [96] to Stay, Bachner's Motion [107] to Stay, and the McCraneys' Motion [109] to Stay be, and hereby are, DENIED. It is further

ORDERED that Davis' Motion [115] for Extension of Time to Answer the United States' Amended Complaint be, and hereby is, GRANTED. His answer shall be filed within ten days.

SIGNED this 31st day of March, 2007.

/s/ RICHARD W. ROBERTS

United States District [*16] Judge

# EXHIBIT U

LEXSEE 1997 US DIST LEXIS 2754

**BARRY FARM RESIDENT COUNCIL, INC., et al., Plaintiffs, v. UNITED STATES DEPARTMENT OF THE NAVY, et al., Defendants. BARRY FARM RESIDENT COUNCIL, INC., et al., Plaintiffs, v. UNITED STATES DEPARTMENT OF THE NAVY, et al., Defendants.**

Consolidated Cases Nos. 96-01450, 96-01700 (HHG)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*1997 U.S. Dist. LEXIS 2754; 45 ERC (BNA) 1599*

February 14, 1997, Decided
February 18, 1997, FILED

**DISPOSITION:** [*1] Motion for a stay of the civil proceeding denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, citizen and environmentalist groups, filed an action against defendants, U.S. Department of the Navy and U.S. General Services Administration (collectively the government), to compel them to comply with the Clean Water Act and to remedy their hazardous contamination of a river. The government filed a motion to stay the proceedings.

**OVERVIEW:** Around the same time that the citizen and environmentalist groups filed an action against the government for violation of the Clean Water Act regarding a naval site alleged to have contaminated a nearby river, a criminal investigation was launched regarding similar allegations. The government filed a motion to stay the civil proceedings until the criminal investigation was completed. The court denied the motion, finding that a stay would further delay a solution to the problem and would deprive the citizens who used the land near the river from its use in an uncontaminated state for a long period. The court determined that the continuance of the civil action would not interfere with the criminal investigation and that safeguards could be taken to prevent naval employees from feeling coerced into giving statements in the civil case rather than exercise their *Fifth Amendment* right against self-incrimination. Finally, the court found no evidence that discovery rules in the civil case would have been abused for assistance in the criminal case.

**OUTCOME:** The court denied the government's motion to stay the proceedings.

**LexisNexis(R) Headnotes**

*Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview*
[HN1] Nothing in the Constitution or the laws requires a stay of civil proceedings pending the outcome of parallel criminal proceedings. The civil and regulatory laws of the United States frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous. In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence. Moreover, the case for staying civil proceedings is a far weaker one when no indictment has been returned.

*Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview*
[HN2] In determining whether to stay a civil proceeding pending the outcome of a related criminal proceeding, courts customarily weigh the following factors: the interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to them if it is delayed; the public interest in the pending civil and criminal litigation; the interests of and burdens on the defendant; the interest of persons not parties to the civil litigation; and the convenience of the court in the management of its cases and the efficient use of judicial resources. Not all of these factors have equal weight.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Self-Incrimination Privilege*
*Labor & Employment Law > Wrongful Termination*
[HN3] The exercise of *Fifth Amendment* rights cannot lead to dismissal from employment.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Self-Incrimination Privilege*
[HN4] There is no violation of due process where a party is faced with the choice of testifying or invoking the *Fifth Amendment*. Any witness in a civil or criminal trial who is himself under investigation or indictment is confronted with the dilemma of choosing to testify or to invoke his privilege against self-incrimination. Nevertheless, he must make the choice despite any extra legal problems and pressures that might follow.

*Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview*
[HN5] The extent to which *Fifth Amendment* rights are implicated is a significant factor for the court to consider in deciding whether to stay civil proceedings pending the outcome of criminal proceedings, but it is only one consideration to be weighed against others.

**COUNSEL:** Counsel for Plaintiffs: Fern L. Shepard, Lynn Sferrazza, Damon P. Whitehead, Sierra Club Legal Defense Fund, Washington, D.C.

Counsel for Government: Russell M. Young, Mary F. Edgar, Environmental Defense Section, U.S. Department of Justice, Washington, D.C. Of Counsel: Richard Eddy, Rebecca Gilchrist, Lt. Comdr., U.S. Department of the Navy, Victoria Ruttenberg, U.S. General Services Administration.

**JUDGES:** HAROLD H. GREENE, United States District Judge

**OPINION BY:** HAROLD H. GREENE

**OPINION**

*OPINION*

The plaintiffs, two neighborhood associations of citizens who live at the edge of the Anacostia River, and two environmental organizations, brought this action to compel the Department of the Navy and the General Services Administration to comply with the Clean Water Act and to remedy hazardous contamination of the river.

The conditions sought to be remedied are said to stem from the history of manufacturing at the Washington Navy Yard. The government has moved to stay the proceedings pending the conclusion of an investigation into potential criminal violations of federal environmental laws at the same federal facility. The Court will deny [*2] the stay, largely on two grounds: first, the two federal agencies have studied the underlying problems for many years without taking action, and a stay would further delay solutions to the problem; and second, there is no reason why the civil action should pose significant problems to the progress of the criminal investigation.

I

*Background*

The Washington Navy Yard, which became operational as a shipbuilding site in 1799, was the site of weapons manufacturing for over one hundred years, but it is now used primarily as a federal office complex. Studies by the Environmental Protection Agency, and the Navy and GSA themselves, have revealed contamination of soil, groundwater, and river sediment in the Anacostia River in the vicinity of the Navy Yard and the Southeast Federal Center. Indeed, both the Navy and GSA have been aware of the contaminated conditions at these sites since the late 1980s. Although the United States commendably, finally did initiate an investigation of potential criminal violations at these sites, it does not follow that civil proceedings should be stayed pending completion of this investigation.

[HN1] Nothing in the Constitution or the laws requires a stay of civil [*3] proceedings pending the outcome of parallel criminal proceedings. *SEC v. Dresser Indus., 202 U.S. App. D.C. 345, 628 F.2d 1368, 1375 (D.C. Cir.), cert. denied, 449 U.S. 993, 66 L. Ed. 2d 289, 101 S. Ct. 529 (1980)*. As our Court of Appeals recognized in *Dresser*,

> The civil and regulatory laws of the United States frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous. In the absence of *substantial prejudice* to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence.

*628 F.2d at 1374* (emphasis added). Moreover, "the case for staying civil proceedings is 'a far weaker one' when [as here] 'no indictment has been returned.'" *FSLIC v. Molinaro, 889 F.2d 899, 903 (9th Cir. 1989)* (quoting *Dresser, 628 F.2d at 1376*).

1997 U.S. Dist. LEXIS 2754, *; 45 ERC (BNA) 1599

[HN2] In determining whether to stay a civil proceeding pending the outcome of a related criminal proceeding, courts customarily weigh the following factors: the interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to them if it is delayed; the [*4] public interest in the pending civil and criminal litigation; the interests of and burdens on the defendant; the interest of persons not parties to the civil litigation; and the convenience of the court in the management of its cases and the efficient use of judicial resources. *FSLIC v. Molinaro, 889 F.2d at 903; Arden Way Associates v. Boesky, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987).* [1] The Court considers first the factor of delay.

    1  Not all of these factors have equal weight.

    II

*Delay*

As indicated, plaintiffs are two neighborhood associations, Barry Farm Resident Council and the Kingman Park Civic Association, composed of citizens who live at the edge of the Anacostia River, and two environmental organizations, the Anacostia Watershed Society and the Friends of the Earth, dedicated to restoring the Anacostia River. Plaintiffs enjoy park lands adjacent to the river for family outings, viewing wildlife, and walking, and use the river itself for boating, kayaking, and fishing. If this civil suit [*5] is stayed pending the outcome of criminal proceedings when no indictment has as yet been filed, plaintiffs may well have to wait for a long time before they are able to enjoy the river in an uncontaminated state. Indeed they claim risks to their health and their children's health from contact with contaminated soil and water for a considerable period of time if the suit is stayed.

Numerous studies have demonstrated that the soil and groundwater at the Navy Yard and Southeast Federal Center contain hazardous substances which have serious environmental and health effects. The government argues that the Navy and GSA are voluntarily engaged in resolving the environmental problems related to the complaint and that the stay would therefore not prolong the period of time before the area is cleaned up. However, the progress of the Navy and GSA in addressing the contamination at the Navy Yard, of which they have been aware for years, has been extremely slow.

A review of the documents reveals that at least as early as September 1989 GSA was aware of PCB contamination at the Southeast Federal Center site. The GSA has completed three environmental impact statements and numerous environmental [*6] assessments of the contamination at the Southeast Federal Center site. Simi-

larly the Navy has completed study upon study of environmental contamination at the Washington Navy Yard. For example, the Navy's 1988 Preliminary Assessment Report indicates that the Navy was aware of oil-contaminated soil and ground water. The Navy now proposes to begin a Remedial Investigation/Feasibility Study on one area of concern in Fiscal Year 1997, two additional areas of concern in Fiscal Year 1998, and the remaining five areas in "later years."

In filing this lawsuit, plaintiffs have attempted to compel the Navy and GSA to act upon their studies and actually to clean up the contaminated sites. The Court refuses to be a participant in further delay by granting defendants' motion to stay the proceedings. Based on the history of this matter, the Court is simply not convinced that the defendants will "voluntarily" address the hazardous waste situation to the same extent and in the same time period that would be required under a court order. At bottom, the grant of the stay motion will provide the Navy and GSA with yet a new excuse for not proceeding forthrightly and with diligence.

    III

*Interference* [*7] *with Criminal Proceeding*

The Navy and GSA also claim that to deny the stay will prevent them from presenting an effective defense in the civil case. The harm that the Navy and GSA allegedly face is that employees at the Navy Yard with information relevant to the defense of the civil case may choose to invoke the *Fifth Amendment's* protection against self-incrimination, and may refuse to cooperate with government defense counsel's investigation. The two departments similarly claim to be concerned that statements made to those investigating the civil cases could be deemed "coerced statements" that violate the *Fifth Amendment* protection against self-incrimination, and that they, therefore, would be excluded from evidence in a later criminal proceeding.

The Court finds this entire line of argument disingenuous and far-fetched. It is worth repeating that no criminal indictments have been filed as yet. The alleged harm to these non-parties (*i.e.*, the Navy and GSA employees) and to the civil defendants is entirely speculative. If and when criminal indictments are filed, and *Fifth Amendment* issues arise, there will be time enough to deal with the problems they might cause.

As the defendants [*8] themselves have proposed, to avoid the possibility that a court might deem any statement made in the course of the civil investigation to be coerced, the Navy and GSA could inform its employees about the pending criminal investigation and advise them that they may exercise their privilege against self-incrimination without fear of dismissal.

1997 U.S. Dist. LEXIS 2754, *; 45 ERC (BNA) 1599

Navy and GSA employees will not face an inherently coercive situation because [HN3] the exercise of *Fifth Amendment* rights cannot lead to dismissal from employment. *See Slochower v. Board of Higher Education, 350 U.S. 551, 557-58, 100 L. Ed. 692, 76 S. Ct. 637 (1956).* These circumstances are unlike those in *Garrity v. State of New Jersey, 385 U.S. 493, 496, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967),* where the Supreme Court found unconstitutionally coercive a state statute mandating that a state employee who invoked the *Fifth Amendment* and refused to testify in a criminal proceeding about employment-related matters would automatically be terminated.

Although some employees who invoke the privilege against self-incrimination may perceive that they have identified themselves as criminally culpable, this does not rise to the level of "coercion": [HN4] [*9]

> There is no violation of due process where a party is faced with the choice of testifying or invoking the *Fifth Amendment.* . . . Any witness in a civil or criminal trial who is himself under investigation or indictment is confronted with the dilemma of choosing to testify or to invoke his privilege against self-incrimination. Nevertheless, he must make the choice despite any extra legal problems and pressures that might follow.

*SEC v. Grossman, 121 F.R.D. 207, 210 (S.D.N.Y. 1987)* (quoting *Gellis v. Casey, 338 F. Supp. 651, 653 (S.D.N.Y. 1972)* (denying motion to stay civil proceedings pending outcome of related criminal proceedings)). Furthermore, "[HN5] the extent to which *Fifth Amendment* rights [of Navy and GSA employees] are implicated is a significant factor for the [Court] to consider, but it is only one consideration to be weighed against others." *Keating v. Office of Thrift Supervision, 45 F.3d 322, 326 (9th Cir.), cert. denied, 133 L. Ed. 2d 49, 116 S. Ct. 94 (1995).*

In similar cases, the courts have refused to stay civil proceedings pending the outcome of related criminal proceedings, finding unpersuasive defendants' arguments that the exercise [*10] of their *Fifth Amendment* rights would somehow prejudice them. *See United States v. Lot 5, 23 F.3d 359, 364 (11th Cir. 1994), cert. denied, 513 U.S. 1076, 130 L. Ed. 2d 627, 115 S. Ct. 722 (1995)* ("blanket assertion of the privilege [against self-incrimination] is an inadequate basis for the issuance of a stay").

Defendants also argue that the civil proceedings should be stayed because potential criminal defendants could obtain more information through civil discovery than they are entitled to under the criminal rules of discovery. However, there is no need for discovery as yet as plaintiffs have filed for summary judgment on the public record. If discovery becomes necessary, the Court has the ability to impose protective orders to prevent potential future criminal defendants from obtaining information to which they are not entitled. A concern with an abuse of liberal civil discovery arises if a criminal defendant later initiates a civil suit in a "tactical maneuver to enable [him] to gain advance information of the criminal case." *Campbell v. Eastland, 307 F.2d 478, 483 (5th Cir. 1962), cert. denied, 371 U.S. 955, 9 L. Ed. 2d 502, 83 S. Ct. 502 (1963).* This is clearly not the [*11] situation here, where the first legal proceedings were initiated by private plaintiffs in this civil case.

The government further contends, in a similar vein, that if employees are warned that they may exercise the privilege against self-incrimination without fear of dismissal, they are confronted with the perceived unfairness of either answering questions and perhaps incriminating themselves, or exercising their *Fifth Amendment* rights and thereby identifying themselves as targets of the criminal investigation. Although this may indeed lower the morale of some employees, the choice between testifying or invoking the *Fifth Amendment,* as earlier stated, "may be unpleasant, but it is not illegal." *SEC v. Grossman, 121 F.R.D. at 210* (citation omitted). [2]

> 2 The Court has also weighed the factor of the efficient use of judicial resources. The Court finds that it would be more efficient to proceed with the civil case than to stay it for at least six months, as the defendants have requested, and probably much longer, when the Court cannot be certain that the criminal investigation will ever result in any indictments.

[*12] Upon consideration of the relevant factors, the Court determines that the harm plaintiffs will incur should this action be stayed and the public interest [3] in restoring the Anacostia River to a more pristine form greatly outweighs any burden on the defendants or defendants' employees. The motion for a stay of the civil proceeding will therefore be denied.

> 3 There is a significant public interest in the enforcement of all criminal laws, including environmental laws. By contrast, the public interest in a civil lawsuit between private parties, such as a contract dispute, is usually quite small. However, there is a considerably greater public interest in a civil proceeding to compel compliance with the environmental laws. Indeed, the public interest in these civil environmental proceedings is virtually

1997 U.S. Dist. LEXIS 2754, *; 45 ERC (BNA) 1599

identical to the public interest in enforcement of the criminal environmental laws.

February *14*, 1997

HAROLD H. GREENE

United States District Judge

## ORDER

Upon consideration of the parties' filings [*13] and the record in this case, it is, for the reasons stated in the Opinion issued this date, this *14th* day of February 1997, hereby,

ORDERED that defendants' motion to stay these proceedings be and it is DENIED; and it is further

ORDERED that defendants have thirty days from the date of this order to respond to plaintiffs' motion for summary judgment.

HAROLD H. GREENE

United States District Judge