IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: )<br> )<br> ) Misc. No. 08-442 (TFH)<br>GUANTANAMO BAY )<br>DETAINEE LITIGATION ) 02-CV-0828, 04-CV-1136, 04-CV-1164,<br> ) 04-CV-1194, 04-CV-1254, 04-CV-1937,<br> ) 04-CV-2022, 04-CV-2035, 04-CV-2046,<br> ) 04-CV-2215, 05-CV-0023, 05-CV-0247,<br> ) 05-CV-0270, 05-CV-0280, 05-CV-0329,<br> ) 05-CV-0359, 05-CV-0392, 05-CV-0409,<br> ) 05-CV-0492, 05-CV-0520, 05-CV-0526,<br> ) 05-CV-0569, 05-CV-0634, 05-CV-0748,<br> ) 05-CV-0763, 05-CV-0764, 05-CV-0765,<br> ) 05-CV-0833, 05-CV-0877, 05-CV-0881,<br> ) 05-CV-0883, 05-CV-0886, 05-CV-0889,<br> ) 05-CV-0892, 05-CV-0993, 05-CV-0994,<br> ) 05-CV-0995, 05-CV-0998, 05-CV-0999,<br> ) 05-CV-1048, 05-CV-1124, 05-CV-1189,<br> ) 05-CV-1220, 05-CV-1234, 05-CV-1236,<br> ) 05-CV-1244, 05-CV-1347, 05-CV-1353,<br> ) 05-CV-1429, 05-CV-1457, 05-CV-1458,<br> ) 05-CV-1487, 05-CV-1490, 05-CV-1497,<br> ) 05-CV-1504, 05-CV-1505, 05-CV-1506,<br> ) 05-CV-1509, 05-CV-1555, 05-CV-1590,<br> ) 05-CV-1592, 05-CV-1601, 05-CV-1602,<br> ) 05-CV-1607, 05-CV-1623, 05-CV-1638,<br> ) 05-CV-1639, 05-CV-1645, 05-CV-1646,<br> ) 05-CV-1649, 05-CV-1678, 05-CV-1704,<br> ) 05-CV-1725, 05-CV-1971, 05-CV-1983,<br> ) 05-CV-2010, 05-CV-2083, 05-CV-2088,<br> ) 05-CV-2104, 05-CV-2112, 05-CV-2185,<br> ) 05-CV-2186, 05-CV-2199, 05-CV-2200,<br> ) 05-CV-2249, 05-CV-2348, 05-CV-2349,<br> ) 05-CV-2367, 05-CV-2370, 05-CV-2371,<br> ) 05-CV-2378, 05-CV-2379, 05-CV-2380,<br> ) 05-CV-2381, 05-CV-2384, 05-CV-2385,<br> ) 05-CV-2386, 05-CV-2387, 05-CV-2398,<br> ) 05-CV-2444, 05-CV-2477, 05-CV-2479,<br> ) 06-CV-0618, 06-CV-1668, 06-CV-1674,<br> ) 06-CV-1684, 06-CV-1688, 06-CV-1690,<br> ) 06-CV-1691, 06-CV-1725, 06-CV-1758,<br> ) 06-CV-1759, 06-CV-1761, 06-CV-1765,<br> ) 06-CV-1766, 06-CV-1767, 07-CV-1710,<br> ) 07-CV-2337, 07-CV-2338, 08-CV-0864,<br> ) 08-CV-987<br> ) | |

## **NOTICE**

At the status conference held before this Court on July 8, 2008, counsel for the parties and the Court discussed various issues concerning the disposition of habeas petitions brought by or on behalf of detainees at Guantanamo Bay, Cuba. Many of those issues were addressed in a letter to the Court that we had previously treated as confidential but that, as discussed at the July 8 conference, is now in the public domain. We attach a copy of that letter, to make it a part of the record in these matters. At the invitation of the Court at the July 8 status conference, the Government respectfully seeks to clarify a few points with respect to issues raised at that conference.

1.  Petitioners and respondents have suggested very different approaches to this litigation. Petitioners would have all factual returns filed within a matter of days, and then have the various individual Guantanamo Bay habeas cases proceed on separate, entirely undefined, tracks before each of the various judges of this Court. Under Respondents' approach, the Government would file the best return it can based on current intelligence information and taking into account the legal developments of the past four years. To do so would require a short lead time, after which the Government would file 50 factual returns or motions for leave to amend factual returns per month beginning the first week in September. Although petitioners' approach may superficially appear more expeditious (in that it would require the immediate filing of returns containing only the factual material already assembled in Combatant Status Review Tribunal ("CSRT") records from four years ago), over the long term it is a recipe for unnecessary delay. The Government respectfully submits that filing a complete return initially setting forth

the best and most current evidence supporting a detainee's detention as an enemy combatant, taking into account the material available to the Government today, and making revisions or deletions based on intervening legal decisions, will be more efficient and expeditious in the long run.  Under our approach, petitioners would know the Government's best case at the outset, and litigation could proceed expeditiously without wasteful and repetitive litigation about whether or when the Government may expand its initial proffer in individual cases, without the prospect of erroneously releasing enemy combatants based on a stale assessment of the evidence, and without the ensuing appellate litigation that such an approach would inevitably generate. Respondents' approach is particularly justified given that decisions about the enemy combatant status of a detainee have, at their foundation, crucial public policy concerns related to the protection of the public.  As the Supreme Court's plurality opinion in *Hamdi* noted, "[t]he purpose of detention [of lawful and unlawful combatants] is to prevent captured individuals from returning to the field of battle and taking up arms once again."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (O'Connor, J.).

      2.      As discussed at the July 8 conference, these cases present significant issues with regard to the appropriate procedural framework under which they should be decided – issues common to every Guantanamo habeas case pending before the Court.  As the Supreme Court made clear in *Boumediene v. Bush*, 128 S.Ct. 2229 (2008), and the Court noted at the July 8 conference, the "content of the law that governs petitioners' detention ... is a matter yet to be determined." 128 S.Ct. at 2277.  Rather than have hundreds of cases proceed with no legal guidance, the most expeditious approach would be for the parties to brief these procedural framework issues for the Court – including the question of whether they are amenable to

common resolution – and for the Court to determine how much guidance it may appropriately give at the outset. At a minimum, such briefing will help crystalize these issues, so that the Court may then consider the appropriateness of deciding them once, rather than many times, and sooner rather than later. Even were the Court to ultimately conclude that it could not appropriately opine on some of these issues, such preliminary briefing at the outset would be beneficial for individual Judges to consider if they must ultimately address these issues. Moreover, entertaining such briefing is consistent with this Court's July 1, 2008 Resolution that the coordinating judge rule on common procedural issues "[t]o the extent possible." 7/1/2008 Resolution at ¶ 4. In contrast, petitioners' proposed approach, under which the coordinating judge would not even *attempt to consider* any common procedural issues, is inconsistent with that Resolution.

3. At the July 8 conference, petitioners suggested that the Court enter orders requiring thirty days pre-transfer notice in those cases in which it has not already been ordered at this time. Respondents oppose that suggestion. Several of the judges of this Court denied such motions early on in this litigation, even before Congress enacted the Detainee Treatment Act and the Military Commissions Act. *See, e.g., Al-Anazi v. Bush*, 370 F.Supp.2d 188 (D.D.C. 2005( (Bates, J.). In any event, the Supreme Court's recent decision in *Munaf v. Geren*, 128 S.Ct. 2207 (2008)**,** warrants the revisiting of the issue even by those judges who initially granted such motions, as explained more fully in briefs to be filed today in *Mohammon v. Bush*, 05-2386 (RBW); *Dokhan v. Bush*, 08-987 (JDB); and *Mohammed v. Bush*, 05-1347(GK).

4. As mentioned at the July 8 conference, respondents have no objection to the Court's suggestion that cases in which petitioners have been approved for release from United

States custody and transfer to a foreign nation be consolidated before a single judge. However, despite the discretionary decision that these petitioners may be released from United States custody and transferred to a foreign country, they nonetheless have been determined to be enemy combatants by the United States, and there are many unique fact-specific, or country-specific circumstances that will be presented in these cases. Thus, although Respondents do not object to consolidation, the Government reserves its rights with regard to all unresolved issues as to such detainees, including but not limited to questions about the effect of decisions of the Department of Defense approving a detainee for release or transfer, about the authority of the Department of Defense to hold such a detainee as an enemy combatant, about the assurances necessary to effectuate release from United States custody and transfer to a foreign country, and about the proper role of the judiciary in reviewing transfer determinations. *See Munaf v. Green*, 128 S.Ct. at 2226.

Dated: July 9, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

  /s/ *Judry L. Subar*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar 347518)
TERRY M. HENRY
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
ANDREW I. WARDEN (IN Bar No. 23840-49)
PAUL E. AHERN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.

Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents